# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

_____

|  |  |  |
|---|---|---|
| FREEDOM FROM RELIGION | ) | |
| FOUNDATION, INC., ANNE NICOL | ) | |
| GAYLOR, ANNIE LAURIE GAYLOR, | ) | |
| PAUL GAYLOR, DAN BARKER, | ) | |
| PHYLLIS ROSE, and JILL DEAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-588 |
| | ) | |
| PRESIDENT GEORGE W. BUSH, | ) | |
| WHITE HOUSE PRESS SECRETARY | ) | |
| DANA PERINO, WISCONSIN GOVERNOR | ) | |
| JIM DOYLE, and SHIRLEY DOBSON, | ) | |
| CHAIRMAN OF THE NATIONAL DAY | ) | |
| OF PRAYER TASK FORCE, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## THE FEDERAL DEFENDANTS' MOTION TO DISMISS

GREGORY G. KATSAS
Assistant Attorney General

JAMES GILLIGAN
Assistant Branch Director

BRAD P. ROSENBERG
Trial Attorney

COUNSEL FOR DEFENDANTS
PRESIDENT GEORGE W. BUSH AND
WHITE HOUSE PRESS SECRETARY
DANA PERINO

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      PLAINTIFFS LACK STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      The Individual Plaintiffs Lack Standing to Challenge
                the National Day of Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                1.      The Individual Plaintiffs Fail to Allege That They Were
                        Exposed in a Direct and Unwelcome Manner to the
                        National Day of Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

                2.      The Individual Plaintiffs Fail to Allege an
                        Actual or Imminent Injury. . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      FFRF Lacks Standing to Challenge the National Day of Prayer. . . . . . . . . . . . . 15

II.     THE NATIONAL DAY OF PRAYER STATUTE IS CONSTITUTIONAL. . . . . . . . . . 18

        A.      The Supreme Court Has Referenced the National Day of Prayer
                as Constitutional in the Context of Another Establishment Clause Challenge. . . 18

        B.      The National Day of Prayer Is Part of Our Country's Religious History. . . . . . . 21

        C.      Under the Supreme Court's Test in Lemon v. Kurtzman,
                the National Day of Prayer Statute Is Constitutional. . . . . . . . . . . . . . . . . . . . . 25

                1.      The National Day of Prayer Has a Secular Purpose. . . . . . . . . . . . . . . . 26

                2.      The National Day of Prayer's Primary Effect Is
                        Neither to Advance Nor Inhibit Religion. . . . . . . . . . . . . . . . . . . . . 30

                3.      The National Day of Prayer Statute Does Not Foster
                        An Excessive Entanglement With Religion. . . . . . . . . . . . . . . . . . . . 32

III.   THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIM TO THE EXTENT
       IT RELATES TO PAST PRESIDENTIAL PROCLAMATIONS.  . . . . . . . . . . . . . . . . 34

       A.    Plaintiffs' Claims Regarding the 2008 Presidential Proclamation
             Present Insurmountable Justiciability Problems.  . . . . . . . . . . . . . . . . . . . . . . . . 34

             1.    Plaintiffs' Claims Regarding the 2008 Presidential
                   Proclamation Are Moot. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

             2.    This Court Should Not Take the Extraordinary Step of Issuing a
                   Declaratory Judgment That Runs Personally Against the
                   President of the United States. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

       B.    The President's 2008 Prayer Proclamation Was Constitutional. . . . . . . . . . . . . 41

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

## TABLE OF AUTHORITIES

**CASES:**

Abington Sch. Dist. v. Schempp, 374 U.S. 203 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227 (1937). . . . . . . . . . . . . . . . 35

Allen v. Wright, 468 U.S. 737 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 12

American Jewish Cong. v. City of Chicago, 827 F.2d 120 (7th Cir. 1987). . . . . . . . . . . . . . 21, 31

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Books v. City of Elkhart, Ind., 235 F.3d 292 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . passim

Books v. Elkhart County, Ind., 401 F.3d 857 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . 13

Bowen v. Kendrick, 487 U.S. 589 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't
   of Health and Human Svcs., 532 U.S. 598 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

City of Los Angeles v. Lyons, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Clinton v. Jones, 520 U.S. 681 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

County of Allegheny v. ACLU, 492 U.S. 573 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

DaimlerChrysler Corp. v. Cuno, 547 U.S. 332 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

DeBoer v. Village of Oak Park, 267 F.3d 558 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 20, 21

Deveraux v. City of Chicago, 14 F.3d 328 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 35, 39

Doe v. County of Montgomery, Ill., 41 F.3d 1156 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . 6, 8, 13

Doe v. Madison School Dist. No. 321, 177 F.3d 789 (9th Cir. 1999) (en banc). . . . . . . . . . . . . . 7

E.E.O.C. v. Concentra Health Servs., Inc., 496 F.3d 773 (7th Cir. 2007). . . . . . . . . . . . . . . . 9, 10

Edwards v. Aguillard, 482 U.S. 578 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Engel v. Vitale, 370 U.S. 421 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fleischfresser v. Dirs. of Sch. Dist. 200, 15 F.3d 680 (7th Cir. 1994). . . . . . . . . . . . . . . . . 26, 30

Franklin v. Massachusetts, 505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 37, 38, 39

Freedom From Religion Found., Inc. v. City of Green Bay,
        581 F. Supp. 2d 1019 (E.D. Wis. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Freedom From Religion Found., Inc. v. City of Marshfield, 203 F.3d 487 (7th Cir. 2000). . . . . 30

Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463 (7th Cir. 2000). . . . . . . . . 8, 13, 17

Gallaher & Speck, Inc. v. Ford Motor Co., 226 F.2d 728 (7th Cir. 1955). . . . . . . . . . . . . . . . . 28

Gonzales v. N. Twp. of Lake County, 4 F.3d 1412 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . 8, 13

Gorski v. Troy, 929 F.2d 1183 (7th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Henson v. CSC Credit Services, 29 F.3d 280 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333 (1977). . . . . . . . . . . . . . . . . . . . . . . 17

Ind. Democratic Party v. Rokita, 458 F. Supp. 2d 775 (S.D. Ind. 2006). . . . . . . . . . . . . . . . 13, 16

Indianapolis Minority Contractors Ass'n, Inc. v. Wiley,
        No. IP 94-1175-C-T/G, 1998 WL 1988826 (S.D. Ind. May 13, 1998). . . . . . . . . . . . . . 15

Jimmy Swaggart Ministries v. Bd. of Equalization of Cal., 493 U.S. 378 (1990). . . . . . . . . . . . 33

Lee v. Weisman, 505 U.S. 577 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lemon v. Kurtzman, 403 U.S. 602 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21, 25, 32

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 13, 40

Lynch v. Donnelly, 465 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Marsh v. Chambers, 463 U.S. 783 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Metzl v. Leininger, 850 F. Supp. 740 (N.D. Ill. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Mississippi v. Johnson, 71 U.S. 475 (1866). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Newdow v. Bush, 391 F. Supp. 2d 95 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

iv

Nixon v. Fitzgerald, 457 U.S. 731 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

N. Shore Gas Co. v. Salomon, Inc., 152 F.3d 642 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 39

Organ. of Minority Vendors v. Ill. Cent. Gulf R.R., 579 F. Supp. 574 (N.D. Ill. 1983). . . . . . . . 15

Plotkin v. Ryan, No. 99 C 53, 1999 WL 965718 (N.D. Ill. Sept. 29, 1999). . . . . . . . . . . . . 15, 16

Plotkin v. Ryan, 239 F.3d 882 (7th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Pocket Veto Case, 279 U.S. 655 (1929). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Preiser v. Newkirk, 422 U.S. 395 (1975).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Protestant Mem'l Med. Ctr., Inc. v. Maram, 471 F.3d 724 (7th Cir. 2006).. . . . . . . . . . . . . 35, 37

Raines v. Byrd, 521 U.S. 811 (1997).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rostker v. Goldberg, 453 U.S. 57 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 26

Seminole Tribe v. Florida, 517 U.S. 44 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sherman v. Cmty. Consol. Dist. 21, 980 F.2d 437 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . 20

Sierra Club v. Franklin County Power of Ill., LLC,
        ___ F.3d ___, 2008 WL 4693519 (7th Cir. Oct. 27, 2008). . . . . . . . . . . . . . . . . . . . . . . 17

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Spann v. Colonial Village, Inc., 899 F.2d 24 (D.C. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 16

Swan v. Clinton, 100 F.3d 973 (D.C. Cir. 1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Tamayo v. Blagoyevich, 526 F.3d 1074 (7th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Tobin for Governor v. Ill. State Bd. of Elect., 268 F.3d 517 (7th Cir. 2001). . . . . . . . . . 35, 36, 37

United States v. Indianapolis Baptist Temple, 224 F.3d 627 (7th Cir. 2000). . . . . . . . . . . . . . . 33

United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29 (1963).. . . . . . . . . . . . . . . . . . . . . . . . 18

Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,
        454 U.S. 464 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Van Orden v. Perry, 545 U.S. 677 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 25, 30

Van Zandt v. Thompson, 839 F.2d 1215 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Village of Bellwood v. Dwivedi, 895 F.2d 1521 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . 16

Vision Church v. Village of Long Grove, 468 F.3d 975 (7th Cir. 2006).. . . . . . . . . . . . . . passim

Walz v. Tax Comm'n, 397 U.S. 664 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Warth v. Seldin, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 17

Wisconsin v. Pelican Ins. Co., 127 U.S. 265 (1888). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Wynne v. Town of Great Falls, S.C., 376 F.3d 292 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . 7

Zorach v. Clauson, 343 U.S. 306 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 31

**STATUTES, LEGISLATIVE MATERIALS, AND REGULATORY MATERIALS:**

U.S. Const. art. I.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

U.S. Const. art. VII. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Declaration of Independence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 2201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

36 U.S.C. § 119. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14, 31, 40

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Act of Mar. 3, 1865, ch. 100, § 5, 13 Stat. 517 (1865). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Pub. L. No. 512, 64 Stat. 158 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Pub. L. No. 82-324, 66 Stat. 64 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pub. L. No. 100-307, 102 Stat. 456 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Pub. L. No. 107-293, 116 Stat. 2058 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

134 Cong. Rec. H2761-02 (May 2, 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

S. Rep. No. 82-1389 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Fed. R. Civ. P. 8(a)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

58 Fed. Reg. 26,499 (Apr. 30, 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

59 Fed. Reg. 18,287 (Apr. 12, 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

60 Fed. Reg. 14,351 (Mar. 14, 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

61 Fed. Reg. 15,175 (Apr. 2, 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

62 Fed. Reg. 19,663 (Apr. 18, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

63 Fed. Reg. 24,383 (Apr. 29, 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

64 Fed. Reg. 25,189 (May 5, 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

65 Fed. Reg. 26,481 (May 4, 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

66 Fed. Reg. 22,103 (Apr. 27, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

68 Fed. Reg. 23,829 (Apr. 30, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

69 Fed. Reg. 25,291 (Apr. 30, 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

70 Fed. Reg. 23,921 (May 3, 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

71 Fed. Reg. 26,675 (May 3, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

73 Fed. Reg. 3375 (Jan. 14, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 3855 (Jan. 16, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 19,387 (Apr. 4, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 21,213 (Apr. 15, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 24,135 (Apr. 29, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 24,137 (Apr. 29, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 29,383 (May 15, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 30,725 (May 22, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

73 Fed. Reg. 58,863 (Oct. 3, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 60,603 (Oct. 8, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

73 Fed. Reg. 72,301 (Nov. 21, 2008).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

**OTHER AUTHORITIES:**

5 The Founders' Constitution (P. Kurland & R. Lerner eds., 1987). . . . . . . . . . . . . . . . . . . . . . 22

Gettysburg Address (1863). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Inaugural Addresses of the Presidents of the United States,
    S. Doc. No. 101-10 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

First Inaugural Address of William J. Clinton,
    29 Weekly Comp. Pres. Doc. 77 (Jan. 20, 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Second Inaugural Address of William J. Clinton,
    33 Weekly Comp. Pres. Doc. 63 (Jan. 20, 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

First Inaugural Address of George W. Bush,
    37 Weekly Comp. Pres. Doc. 209 (Jan. 20, 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mayflower Compact, reprinted in 1B Schwartz, The Roots of the Bill of Rights (1980). . . . . . . 21

The Random House Dictionary of the English Language, unabridged (2d ed. 1987). . . . . . . . . 14

S. Epstein, Rethinking the Constitutionality of Ceremonial Deism,
    96 Colum. L. Rev. 2083 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

## PRELIMINARY STATEMENT

The tradition of a National Day of Prayer traces its roots to the founding of our Nation. The Continental Congress proclaimed a National Day of Prayer on July 12, 1775.[1]  And the First Congress urged President Washington "to proclaim 'a day of public thanksgiving and prayer, to be observed by acknowledging with grateful hearts, the many and signal favours of Almighty God."[2]  President Washington responded by proclaiming November 26, 1789, a day of thanksgiving to "offer[ ] our prayers and supplications to the Great Lord and ruler of Nations, and beseech Him to pardon our national and other transgressions. . . ."[3] More recently — though still half a century ago — Congress passed a statute directing the President to proclaim each year "a National Day of Prayer, on which the people of the United States may turn to God in prayer and mediation at churches, in groups, and as individuals."[4]  Congress later amended that statute in 1988 to require that the National Day of Prayer be observed on the first Thursday of May of each year.[5]

Plaintiffs take issue with the tradition embodied by the National Day of Prayer.  However, they do not allege that they have been exposed to any prayers, public or private, that allegedly occurred on that day.  They do not allege that they have been injured by the National Day of Prayer.  They do not allege that the National Day of Prayer has had any impact on their lives in

---

[1] See 134 Cong. Rec. H2761-02 (May 2, 1988).

[2] Lynch v. Donnelly, 465 U.S. 668, 675 n.2 (1984) (citing A. Stokes & L. Pfeffer, Church and State in the United States 87 (rev. 1st ed. 1964)).

[3] Id. (citing 1 J. Richardson, A Compilation of the Messages and Papers of the Presidents 1789-1897, p. 64 (1899)).

[4] Pub. L. No. 82-324, 66 Stat. 64 (1952).

[5] See Pub. L. No. 100-307, 102 Stat. 456 (1988).

1

any way.  They do not allege how they came to be aware of the National Day of Prayer, much less whether they were even aware of its existence on the day of the event itself.

Plaintiffs nonetheless wish to obtain an advisory opinion from this Court on the constitutionality of the National Day of Prayer, including President Bush's most recent prayer proclamation issued pursuant to the National Day of Prayer statute.  This they cannot do.  Having alleged no injury arising from — much less any connection to — the National Day of Prayer, plaintiffs lack standing to sue in this Court.  Setting that aside, plaintiffs' challenge to the constitutionality of the National Day of Prayer statute, including its requirement that the President issue proclamations thereunder, fails to state a claim.  The Supreme Court has opined positively on the acceptability of the National Day of Prayer,[6] which is consistent with many of our nation's historical traditions that recognize and accommodate the role of religion in our society.  The National Day of Prayer has an established secular purpose, does nothing to advance religion, and does not foster an excessive entanglement with religion.[7]

Plaintiffs also seek a declaratory judgment regarding prior prayer proclamations issued pursuant to the National Day of Prayer statute.  But those claims are moot:  Any declaratory judgment by this Court on the constitutionality of the President's 2008 proclamation would involve a past event about which the Court can provide no relief.  Moreover, the declaratory judgment that plaintiffs seek would run against the President of the United States of America — something that the Supreme Court has described as being so "extraordinary" that it "should . . .

---

[6] Lynch, 465 U.S. at 677-78.

[7] See Lemon v. Kurtzman, 403 U.S. 602 (1971).

2

raise[ ] judicial eyebrows."[8]  The Court should decline to take so extraordinary a step as to issue a declaratory judgment against the President personally when doing so would be of no practical benefit to the complaining parties.  And in any event, there simply is nothing in the President's 2008 proclamation that can be construed to violate the Establishment Clause.

For the foregoing reasons, as set forth in greater detail below, this Court should dismiss plaintiffs' Complaint for lack of justiciability and standing or, in the alternative, for failure to state a claim.

## BACKGROUND

Plaintiffs consist of six individuals, all of whom reside in Madison, Wisconsin, as well as the Freedom From Religion Foundation, Inc. (hereinafter, "FFRF").  Compl. ¶¶ 4, 7-12. Plaintiffs are self-described "non-believer[s]," Compl. ¶¶ 7-13, while FFRF "is a membership organization working for the separation of church and state and to educate on matters of nontheism," Compl. ¶ 4; see also Compl. ¶ 102.  Plaintiffs have sued President George W. Bush and White House Press Secretary Dana Perino (hereinafter, the "federal defendants").  Compl. ¶¶ 13-16.  Plaintiffs have also sued the Governor of Wisconsin and Shirley Dobson, who plaintiffs allege is the Chair of the "National Day of Prayer Task Force."  Compl. ¶¶ 17-19.

Specifically, the National Day of Prayer statute that plaintiffs challenge provides that:

> The President shall issue each year a proclamation designating the first Thursday in May as a National Day of Prayer on which the people of the United States may turn to God in prayer and mediation at churches, in groups, and as individuals.

36 U.S.C. § 119 (U.S.C.A. 2008).  Plaintiffs allege that the President is responsible for issuing prayer proclamations, see, e.g., Compl. ¶¶ 14, 21, 24, 25, 27-31, 33-25, 47, 52, 56, 64, 93, 113,

---

[8] Franklin v. Massachusetts, 505 U.S. 788, 802 (plurality opinion).

while Secretary Perino is merely responsible for "disseminating" those proclamations, <u>e.g.</u>, Compl. ¶¶ 26, 95, 100, 103, 108.  The only presidential prayer proclamation that plaintiffs identify in their Complaint, however, is the 2008 proclamation.  <u>See</u> Compl. ¶ 29 & Ex. 1.  Plaintiffs' Complaint also identifies 2008 prayer proclamations issued by the governors of the 50 states.  <u>See</u> Compl. ¶¶ 57-85 & Exs. 3-52.

Plaintiffs allege that "[o]fficial prayer proclamations are intended to be, and are received by citizens, including the plaintiffs, as exhortations to pray."  Compl. ¶ 92; <u>see also</u> Compl. ¶¶ 91, 93.  Plaintiffs assert that "[t]he individual plaintiffs in this lawsuit, as well as members of FFRF in all 50 United States, are subjected to these unwanted proclamations to pray and resulting public celebration of religion in the public realm, including dissemination by Secretary Perino."  Compl. ¶ 95; <u>see also</u> Compl. ¶ 99 ("Official days of prayer are intended to be known by, and acted upon by each individual citizen, regardless of their creed or non-belief").  However, plaintiffs do not allege how they received these presidential (or gubernatorial) prayer proclamations, much less when those prayer proclamations were "received."  Nonetheless, plaintiffs allege that the proclamations "create a hostile environment for non-believers, who are made to feel as if they are political outsiders."  Compl. ¶ 94; <u>see also</u> Compl. ¶ 89.  Plaintiffs similarly allege that prayer proclamations adversely affect FFRF's organizational interests, and require "the dedication of corrective resources and time by FFRF, and they frustrate the accomplishment of FFRF's mission to keep separate church and state."  Compl. ¶ 107; <u>see also</u> Compl. ¶¶ 103, 105.  Finally, plaintiffs assert that "[t]he actions of defendants are injurious to the interests of the plaintiffs individually, and to FFRF in its representative and organizational capacity, because the defendants' actions subject the plaintiffs to official admonitions and exhortations to pray, and expose them to unwanted endorsements of religion, which violate the

Establishment Clause."  Compl. ¶ 114.  Plaintiffs do not allege any other "injury," or any specific injury to themselves.

As to the National Day of Prayer Task Force (hereinafter "NDP Task Force"), plaintiffs assert that it is "an entity created for the express purpose of organizing and promoting National Day of Prayer observances conforming to a Judeo-Christian system of values."  Compl. ¶ 19. Plaintiffs do not allege, however, that the National Day of Prayer task force is affiliated with or a part of the federal government.  Instead, they allege that President Bush's prayer proclamations violate the Establishment Clause "by aligning and partnering with the NDP Task Force as the official organizer of the National Day of Prayer."  Compl. ¶ 27.  To that end, plaintiffs assert that the President's 2008 prayer proclamation incorporated the NDP Task Force's "theme," which plaintiffs allege is a "government preference for and endorsement of the religious creed of the NDP Task Force."  Compl. ¶ 31; see generally Compl. ¶¶ 28-35.[9]

As to each of the federal defendants, plaintiff seeks declaratory judgments "that Public Law 100-307, mandating Presidential Proclamations of a National Day of Prayer," and "specific Presidential Prayer Proclamations violate the Establishment Clause."  Compl. ¶¶ 14, 16. See also Compl., Prayer for Relief ¶¶ A, B.  Plaintiffs also seek declaratory judgments that prayer proclamations issued by Wisconsin Governor Doyle violate the Establishment Clause of the U.S. Constitution and the Wisconsin Constitution; that the actions of Shirley Dobson, "in concert with state and federal officials, constitute joint action that violates the Establishment Clause, including through joint and collaborative action with President Bush, Secretary Perino," and various state officials; and that Governor Doyle and Shirley Dobson violated 42 U.S.C. § 1983.  See Compl.,

───────────────

[9] Plaintiffs assert similar allegations as to prayer proclamations issued by the governors of many of the states.  See Compl. ¶¶ 65-83.

5

Prayer for Relief ¶¶ C-E; <u>see also</u> Compl. ¶¶ 109-112.  Plaintiffs do not, however, seek any monetary damages or injunctive relief.[10]

**ARGUMENT**

**I.    PLAINTIFFS LACK STANDING.**

"The judicial power of the United States . . . is not an unconditioned authority to determine the constitutionality of legislative or executive acts," but is limited by Article III of the Constitution "to the resolution of 'cases' and 'controversies.'"  <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church and State</u>, 454 U.S. 464, 471 (1982).  In turn, litigants' standing to sue "is an essential and unchanging part of the case-or-controversy requirement," <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992), "determining the power of the court to entertain the suit," <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975).

To meet "the irreducible constitutional minimum of standing," a plaintiff must establish: (1) an "actual or imminent" injury; (2) that is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that would "likely . . . be redressed by a favorable decision."  <u>Lujan</u>, 504 U.S. at 560-61 (internal quotation marks and citations omitted; alterations in original).  As the parties invoking the Court's jurisdiction, plaintiffs bear the burden "clearly to allege facts demonstrating" each of these three elements.  <u>Warth</u>, 422 U.S. at 518; <u>Doe v. County of Montgomery, Ill.</u>, 41 F.3d 1156, 1159 (7th Cir. 1994) ("The party invoking federal jurisdiction bears the burden of establishing the elements of standing").  "[T]he standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted."  <u>Allen v. Wright</u>, 468

---

[10] Plaintiffs do seek the recovery of attorney's fees from Governor Doyle and Shirley Dobson, but not from the federal defendants.  <u>See</u> Compl., Prayer for Relief ¶ F.

6

U.S. 737, 752 (1984). The inquiry must be "especially rigorous when," as here, "reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." Raines v. Byrd, 521 U.S. 811, 819-20 (1997).

As explained below, plaintiffs lack standing to bring this action, as they have failed to allege any exposure to or injury arising from the National Day of Prayer statute or proclamations issued thereunder.

### A.   The Individual Plaintiffs Lack Standing to Challenge the National Day of Prayer.

#### 1.   The Individual Plaintiffs Fail to Allege That They Were Exposed in a Direct and Unwelcome Manner to the National Day of Prayer.

In the Establishment Clause context, a plaintiff must allege a personal connection to the allegedly offensive conduct, such as direct and unwelcome contact, in order to have standing. In cases involving prayer in a public school setting, for example, "plaintiffs who have had a sufficient personal connection to establish standing include students (or their parents) who attend the school and regular attendees of the legislative body." Newdow v. Bush, 391 F. Supp. 2d 95, 103 (D.D.C. 2005) (citing Lee v. Weismann, 505 U.S. 577, 584 (1992) (currently enrolled students had standing to challenge graduation prayer); Wynne v. Town of Great Falls, S.C., 376 F.3d 292, 294 (4th Cir. 2004) (plaintiff regularly attended, for roughly two years, monthly town council meetings where prayer was read)). A plaintiff does not have standing, however, to object to prayers at events that the plaintiff does not attend. See Doe v. Madison School Dist. No. 321, 177 F.3d 789, 797 (9th Cir. 1999) (en banc) (no standing for parent of former student to challenge prayer at graduation).

Cases involving the display of religious objects similarly emphasize direct and unwelcome contact with sectarian symbols, messages, or conduct.  In Books v. City of Elkhart, Ind., for example, the Seventh Circuit held "that a plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located."  235 F.3d 292, 301 (7th Cir. 2000).  By contrast, in Freedom From Religion Foundation, Inc. v. Zielke, plaintiffs failed to allege that they were exposed to a religious monument during their normal routines. 845 F.2d 1463, 1468 (7th Cir. 1988).  The Seventh Circuit, in affirming this Court's dismissal of plaintiffs' complaint for lack of standing, rejected plaintiffs' claim that they suffered a "rebuke to [their] religious beliefs, respecting religion by virtue of being subjected to a governmental endorsement of unequivocally religious precepts and confusions," finding that "this is exactly the type of psychological harm that the Supreme Court has held cannot confer standing on an aggrieved party."  Id. at 1468 (internal quotation marks omitted) (citing Valley Forge, 454 U.S. at 486-87 n.22).  See also Van Orden v. Perry, 545 U.S. 677, 682 (2005) (plurality opinion) (frequent visitor to capitol grounds had standing to challenge the placement of a Ten Commandments monument on those grounds); County of Montgomery, 41 F.3d at 1161 (standing properly alleged for plaintiffs who asserted "they must come into direct and unwelcome contact with [a religious sign at a county courthouse] in order to fully participate in their local government and fulfil their legal obligations"); Gonzales v. N. Twp. of Lake County, Ind., 4 F.3d 1412, 1416 (7th Cir. 1993) (plaintiffs had standing to challenge a crucifix "memorial" in a public park because plaintiffs "avoid[ed] the area of the park where the crucifix is displayed" and one plaintiff, a park employee, had "quit his job after the cross was erected").  But see County of Montgomery, 41 F.3d at 1161 (no standing for an attorney to challenge religious sign at

8

courthouse where attorney did not have an office in the county, failed to identify any case that
required his presence at the courthouse, and had never even been to the courthouse).

Plaintiffs' Complaint fails to allege any <u>facts</u> demonstrating that the plaintiffs had any
connection to, or were otherwise exposed in any way to, the National Day of Prayer, much less
that they suffered any continuing direct and unwelcome contact with prayer day proclamations or
public displays of worship undertaken in response thereto.  To be sure, plaintiffs' Complaint
alleges that "[o]fficial prayer proclamations are intended to be, and are received by citizens,
including plaintiffs, as exhortations to pray."  Compl. ¶ 92; <u>see also</u> Compl. ¶ 91 ("[o]fficial
prayer proclamations are intended to be public and to become known by all citizens, to whom
prayer proclamations are directed"); Compl. ¶ 114 (proclamations subjected plaintiffs "to official
admonitions and exhortations to pray").  But plaintiffs fail to allege whether and how each of
them actually "received" the 2008 proclamation, which would be a "clearly important" fact,
<u>E.E.O.C. v. Concentra Health Servs., Inc.</u>, 496 F.3d 773, 780 (7th Cir. 2007), relating to whether
and how plaintiffs were allegedly encouraged to pray.[11]  It is not even alleged when plaintiffs
became aware of (much less were exposed to) the National Day of Prayer:  on April 22, 2008 (the
date the 2008 presidential proclamation was issued (Compl., Ex. 1)); on May 1, 2008 (the 2008
National Day of Prayer (Compl., Ex. 1)); on October 3, 2008 (the date plaintiffs filed this lawsuit
(Dkt. No. 1)); or on any other date.

Pleading the elements of standing is as necessary as pleading the substantive elements of
plaintiffs' claims.  Standing elements "are not mere pleading requirements but rather an

_____

[11] This omission is especially glaring in light of the multiple individual plaintiffs in this
lawsuit.  Not one alleges any specific facts regarding how they were exposed to the National Day
of Prayer.

9

indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof . . . ." Lujan, 504 U.S. at 561.  At the pleadings stage, a plaintiff must provide "'a short and plain statement of the claim showing that [he] is entitled to relief,'" giving the defendant fair notice "of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Under these pleading requirements as recently "retooled" in Bell Atlantic, see Tamayo v. Blagoyevich, 526 F.3d 1074, 1082 (7th Cir. 2008), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions"; "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Bell Atlantic, 127 S. Ct. at 1965 (emphasis added).  The plaintiff must state "plausible grounds," id., "actually suggest[ing] that the plaintiff has a right to relief." Concentra Health, 496 F.3d at 777.  See also Tamayo, 526 F.3d at 1084.  While these rules "do not require unnecessary detail," a complaint "should contain information that one can provide and that," like the essentials of the plaintiffs' standing, "is clearly important."  Concentra, 496 F.3d at 780.

In Bell Atlantic, plaintiffs failed to plead facts that, if proven, would have been sufficient to show that defendants conspired to violate the antitrust laws, as opposed to merely engaging in (legal) parallel conduct.  Id., 127 S. Ct. at 1965-74.  Plaintiffs' Complaint suffers from a similar flaw.  Plaintiffs have pled no facts to show whether, when, and how they received or were otherwise exposed to prayer proclamations or public celebrations of the National Day of Prayer. And the naked assertion that they "received" these proclamations says nothing indicating continuing direct and unwelcome exposure to (and hence a potential injury arising from) the National Day of Prayer, as opposed to bare knowledge of the existence of the National Day of

Prayer.  In short, plaintiffs have "not nudged their claim across the line from conceivable to plausible," id., 127 S. Ct. at 1974, and on that basis their Complaint must be dismissed.

Indeed, even taking the allegations in the Complaint and the attachments plaintiffs made to it at face value, they are most suggestive that plaintiffs "received" the 2008 presidential prayer proclamation by visiting the White House's web-site in order to download the press release that contained the proclamation.  See Compl. Ex. 1 (reflecting White House url address http://www.whitehouse.gov/news/releases/2008/04/20080422-6.html).[12]  Plaintiffs would have had to strain themselves to even find the 2008 prayer proclamation, which is one of nearly 1,000 presidential proclamations that have been issued since 2001.  See http://www.whitehouse.gov/news/proclamations.  But the Supreme Court rejected plaintiffs' gambit in Valley Forge, finding that plaintiffs lacked standing to challenge the transfer of government property to a religious educational institution where they learned of that transfer "through a news release."  Valley Forge, 454 U.S. at 487.

The Newdow court, in finding that plaintiff lacked standing to challenge inaugural prayers at the 2005 presidential inauguration, nicely summarized how a lack of connections to an event can undermine standing:

> Here, Newdow lacks any of the indicia of a personal connection found in other prayer or public-display cases.  Certainly the Presidential Inauguration is a national event, but it is only held once every four years.  In order to come into contact with the allegedly offensive prayers, Newdow must either watch it on

---

[12] Plaintiffs appear to have gone through great effort to expose themselves to prayer proclamations, having obtained and attached to the Complaint such proclamations from all fifty states (but offering no allegations whatsoever as to how they received these proclamations).  See Compl. Exs. 3-52.  Nonetheless, the individual plaintiffs here are all residents of Madison, Wisconsin.  See Compl. ¶¶ 7-12.  They therefore have no quarrel with — and certainly no standing to challenge — proclamations issued by the governors of Hawaii, New York, Minnesota, or any of the other 46 states they list in their Complaint.  See Compl. ¶¶ 61-85.

11

> television or make a special trip to Washington to observe the prayers in person.
> He can also avoid the prayers by not watching the television, or by not making the
> trip to Washington.  But, under either scenario, he does not have the necessary
> personal connection to establish standing.  Newdow does not come into regular
> contact with the inaugural prayers, nor is he forced to change his typical routine to
> avoid them. . . . Hence, without a personal connection to the inauguration that
> would make his injuries particularized and concrete, Newdow's alleged injuries
> — general offense and outsider status — are akin to the psychological injuries
> occurring from the observation of offensive conduct that the Supreme Court in
> <u>Valley Forge</u> deemed insufficient to establish an injury-in-fact.

<u>Newdow</u>, 391 F. Supp. 2d at 104.  If anything, plaintiffs' standing allegations are weaker here

than were the conspicuously weak allegations in <u>Newdow</u>.  Because plaintiffs have no

connection whatsoever to the National Day of Prayer or any events thereunder, they lack standing

to bring any of their claims.

> **2.      The Individual Plaintiffs Fail to Allege an Actual or Imminent
>          Injury.**

Even if this Court interprets the conclusory allegation that plaintiffs somehow (and at

some relevant point in time) "received" the President's 2008 prayer proclamation to mean that

they were exposed to a prayer day proclamation or resulting public acts of prayer, plaintiffs still

do not have standing as their Complaint fails to allege any injury arising from the National Day

of Prayer.  To be sure, the Complaint makes clear that plaintiffs disapprove of that tradition.  But

mere disapproval of a government policy does not provide a plaintiff with standing to challenge

it.

Even in the Establishment Clause context, the Supreme Court has consistently "rejected

claims of standing predicated on the right, possessed by every citizen, to require that the

Government be administered according to law." <u>Valley Forge</u>, 454 U.S. at 482-83 (citation and

internal quotation marks omitted); <u>see also</u> <u>Allen</u>, 468 U.S. at 754-55 (same).  "Offense alone in

response to government policies or requirements does not suffice to create standing:  'Otherwise

there would be universal standing:  anyone could contest any public policy or action he disliked.

There must be a concrete injury.'"  Indiana Democratic Party v. Rokita, 458 F. Supp. 2d 775, 810

(S.D. Ind. 2006) (quoting Books v. Elkhart County, Ind., 401 F.3d 857, 870 (7th Cir. 2005)); see

also Freedom From Religion Found., Inc. v. Zielke, 845 F.2d at 1468 (no standing for "rebuke to

[FFRF's] religious beliefs respecting religion").  Instead, plaintiffs must "allege adequately an

injury in fact . . .  show[ing] 'an invasion of a legally protected interest which is (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical.'"  Books v. City of

Elkhart, 235 F.3d at 299 (citing Lujan, 504 U.S. at 560-61); see also County of Montgomery, 41

F.3d 1159.

Plaintiffs do not allege any specific injury whatsoever to themselves.  At most, plaintiffs

allege that the National Day of Prayer generally makes "non-believers feel as if they are political

outsiders."  Compl. ¶ 89.  Even assuming that the National Day of Prayer has this effect on non-

believers and that this effect is attributable to each of the six individual plaintiffs here (something

that plaintiffs do not allege), this is not a "concrete injury."  It is an assertion of a "psychological

consequence presumably produced by observation of conduct with which one disagrees" and, as

such, is insufficient to confer Article III standing, "even though the disagreement is phrased in

constitutional terms."  Valley Forge, 454 U.S. at 485-86; see also Gonzales, 4 F.3d at 1416

("Offense to moral and religious sensitivities does not constitute an injury in fact and is

insufficient to confer standing."); Newdow, 391 F. Supp. 2d at 103 (rejecting for standing

purposes allegation that plaintiff was made to feel "like an outsider" by the inclusion of prayers

in the 2005 presidential inauguration).[13]

_____

[13] The individual plaintiffs and FFRF also assert that they have been injured because they
have been subjected "to official admonitions and exhortations to pray" and have been exposed to

13

Plaintiffs' failure to point to any concrete injury that they have suffered at the hands of the National Day of Prayer statute (or any proclamations issued thereunder) is not surprising. The National Day of Prayer statute merely directs "[t]he President [to] issue each year a proclamation" designating a "National Day of Prayer on which the people of the United States may turn to God in prayer and mediation." 36 U.S.C. § 119 (emphasis added). The terms of the statute are voluntary and merely present an invitation for individuals who are so inclined to pray. As Justice Kennedy aptly put it, the National Day of Prayer does not "require anyone to pray, of course." County of Allegheny v. ACLU, 492 U.S. 573, 672 (1989) (Kennedy, J., concurring in part and dissenting in part).[14]

It is also difficult to see how individual presidential proclamations issued pursuant to the National Day of Prayer statute could injure plaintiffs. A proclamation is merely "a public and official announcement." The Random House Dictionary of the English Language, unabridged (2d ed. 1987). Because the existence of the National Day of Prayer may be ignored with absolutely no consequence whatsoever, there is no government action that in any way affects plaintiffs.

---

"unwanted endorsements of religion, which violate the Establishment Clause." Compl. ¶ 114. But that is not a factual allegation of a concrete injury; it is a conclusory assertion of an alleged constitutional violation.

[14] Not surprisingly, some people do choose to pray on the National Day of Prayer. For example, plaintiffs allege that "Sheriff Dean Roland . . . organized a prayer breakfast in recognition of the National Day of Prayer" and note that Wisconsin Supreme Court Justice Michael Gableman was the "keynote speaker" at that breakfast. Compl. ¶¶ 50, 51; see also Compl. ¶¶ 52-56. Neither Sheriff Roland nor Justice Gableman is a defendant in this lawsuit; even if they were, it is unclear what possible claim plaintiffs could have against them or arising out of this event. (Nor would the relief that plaintiffs request prevent Sheriff Roland, Justice Gableman, or anyone else from hosting prayer breakfasts on the First Thursday in May in the future.) Plaintiffs do not even allege that they attended this "prayer breakfast," much less how they have been injured by it.

14

**B.      FFRF Lacks Standing to Challenge the National Day of Prayer.**

FFRF fares no better than the individual plaintiffs in its effort to allege standing.  "Our

decisions make clear that an organization's abstract concern with a subject that could be affected

by an adjudication does not substitute for the concrete injury required by Art. III."  Simon v. E.

Ky. Welfare Rights Org., 426 U.S. 26, 40 (1976); see also Organ. of Minority Vendors v. Ill.

Cent. Gulf R.R., 579 F. Supp. 574, 589 (N.D. Ill. 1983) ("[a]n injury to an organization's

'abstract social interests' is not enough to confer standing"); Indianapolis Minority Contractors

Ass'n, Inc. v. Wiley, No. IP 94-1175-C-T/G, 1998 WL 1988826, at *47 (S.D. Ind. May 13, 1998)

(same).

FFRF's allegations that prayer proclamations "adversely affect the ability of FFRF to

carry out its organizational mission, including because such proclamations and designation of

public Days of Prayer give formal institutional and governmental recognition establishing

religion," Compl. ¶ 103; see also Compl. ¶ 105 (similar), and that such proclamations "require

the dedication of corrective resources and time by FFRF, and . . . frustrate the accomplishment of

FFRF's mission to keep separate church and state," Compl. ¶ 107, merely reflect FFRF's abstract

concern with "the Constitutional principle of separation of church and state and . . . educat[ion]

on matters relating to nontheism," Compl. ¶ 102.  That is not enough.  "Organizations claiming

direct injury must satisfy the same standing test as individuals by suffering from a concrete injury

that is fairly traceable to the defendants' conduct . . . ."  Plotkin v. Ryan, No. 99 C 53, 1999 WL

965718, at *5 (N.D. Ill. Sept. 29, 1999), aff'd, 239 F.3d 882 (7th Cir. 2001).  To that end,

"ordinary expenditures as part of an organization's purpose do not constitute the necessary

injury-in-fact required for standing."  Plotkin v. Ryan, 239 F.3d 882, 886 (7th Cir. 2001).  Courts

have therefore consistently rejected arguments that standing lies for an organization if that

15

organization is required to "shift resources" to combat a perceived wrong.  See Indiana

Democratic Party, 458 F. Supp. 2d at 815-16; see also Plotkin v. Ryan, 1999 WL 965718, at *5

(rejecting on motion to dismiss allegations of "injury in the form of time and money [the plaintiff

organization] spent monitoring and investigating the defendants' conduct, which it says impaired

its ability to deal with other issues of public interest").[15]

In other words, FFRF "cannot convert its ordinary programming costs into an injury in

fact."  Plotkin v. Ryan, 1999 WL 965718, at *5.  To hold otherwise

> would completely eviscerate the standing doctrine.  If an organization obtains
> standing merely by expending resources in response to a statute, then Article III
> standing could be obtained through nothing more than filing a lawsuit.  Such an
> interpretation flies in the face of well-established standing principles.  Indeed,
> "[a]n organization cannot, of course, manufacture the injury necessary to maintain
> a suit from its expenditure of resources on that very suit.  Were the rule otherwise,
> any litigant could create injury in fact by bringing a case, and Article III would
> present no real limitation."

Indiana Democratic Party, 458 F. Supp. 2d at 817 (quoting Spann v. Colonial Village, Inc., 899

F.2d 24, 27 (D.C. Cir. 1990)).  Thus, FFRF has failed to allege "that it has itself suffered any

---

[15] Even in the housing discrimination context, a plaintiff organization must allege that a defendant had taken action to impede, and therefore make more expensive, the plaintiff group's efforts to promote its interests.  See Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982). To the extent Havens can nonetheless be read to imply a relaxed standing requirement, it has been "limited to the context of fair-housing agencies involved in investigating instances of housing discrimination."  Indiana Democratic Party, 458 F. Supp. 2d at 815 (citing Village of Bellwood v. Dwivedi, 895 F.2d 1521, 1526 (7th Cir. 1990) ("Havens makes clear, however, that the only injury which need be shown to confer standing on a fair housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination.") (emphasis added); Gorski v. Troy, 929 F.2d 1183, 1188 (7th Cir. 1991) (describing the Dwivedi decision as "recogniz[ing] the broad standing principles embodied in the [Fair Housing Act]")).

distinct and palpable injury as a result" of the National Day of Prayer statute or proclamations issued thereunder.  See Freedom From Religion Found. v. Zielke, 845 F.2d at 1469.

Nor does FFRF have standing as a representative of its members.  "[E]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." Zielke, 845 F.2d at 1469 (quoting Warth, 422 U.S. at 511).  "An organization has [representational] standing to sue if (1) at least one of its members would otherwise have standing; (2) the interests at stake in the litigation are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires an individual member's participation in the lawsuit."  Sierra Club v. Franklin County Power of Ill., LLC, ___ F.3d ___, 2008 WL 4693519, at *3 (7th Cir. Oct. 27, 2008); see also Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).  But FFRF's allegations fail to meet the requirements of the first element of the test:  since FFRF's individual members lack standing, FFRF lacks standing as a representative of its members.  See Part I.A, supra.

*          *          *

For the foregoing reasons, plaintiffs lack standing to bring this lawsuit.  Accordingly, this Court need not — and should not — reach the merits of either of plaintiffs' claims against the federal defendants:  that the National Day of Prayer statute, including its requirement that the President issue prayer proclamations, is unconstitutional; and that past proclamations issued by the President were unconstitutional.  Nonetheless, and for the reasons set forth below, this Court should reject plaintiffs' challenges for failure to state a claim (and, in the case of past presidential proclamations, on justiciability grounds).

17

II.     **THE NATIONAL DAY OF PRAYER STATUTE IS CONSTITUTIONAL.**

The National Day of Prayer statute, including its requirement that the President issue National Day of Prayer proclamations, cannot as a matter of law violate the Establishment Clause.

A.     **The Supreme Court Has Referenced the National Day of Prayer as Constitutional in the Context of Another Establishment Clause Challenge.**

Plaintiffs ask the Court "to judge the constitutionality of an Act of Congress — 'the gravest and most delicate duty that [a court] is called upon to perform.'"  Rostker v. Goldberg, 453 U.S. 57, 64 (1981) (citation omitted).  It is well established that Acts of Congress are presumptively constitutional.  See United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32 (1963).  This Court should be especially cognizant of that presumption here; the tradition of a National Day of Prayer dates to the founding of our country, and the statute formally authorizing the National Day of Prayer dates back half a century.

Moreover, the Supreme Court has opined on the constitutionality of the National Day of Prayer.  In Lynch v. Donnelly, 465 U.S. 668 (1984), the Court unreservedly described the National Day of Prayer as consistent with the Establishment Clause and used it as a benchmark to measure the constitutionality of other government action.  Specifically, the Court held that the Establishment Clause permits a city to include a nativity scene as part of its Christmas display.  In reasoning that the creche permissibly "depicts the historical origins of this traditional event long recognized as a National Holiday," 465 U.S. at 680, the Court noted that

> There are countless other illustrations of the Government's acknowledgment of our religious heritage and governmental sponsorship of graphic manifestations of that heritage.  Congress has directed the President to proclaim a National Day of Prayer each year "on which [day] the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." . . . Our Presidents have repeatedly issued such

18

Proclamations.  Presidential Proclamations and messages have also issued to
commemorate Jewish Heritage Week . . . and the Jewish High Holy Days . . . .
One cannot even look at this brief résumé without finding that our history is
pervaded by expressions of religious beliefs . . . .  Equally pervasive is the
evidence of accommodation of all faiths and all forms of religious expression, and
hostility toward none.  Through this accommodation, as Justice Douglas observed,
governmental action has "follow[ed] the best of our traditions" and "respect[ed]
the religious nature of our people."

Lynch, 465 U.S. at 677-78 (emphasis added) (internal citations omitted) (quoting Zorach v.

Clauson, 343 U.S. 306, 314 (1952) (internal footnote omitted)).[16]  And the Seventh Circuit has

cited this very language, relying upon Lynch and its approval of the National Day of Prayer to

turn back a challenge by FFRF to a resolution by the Illinois House of Representatives

authorizing the construction of a "prayer room" in the Illinois state capitol:

In Lynch, the Court listed a series of . . . acknowledgments, including
congressional proclamations alluding to the religious significance of national
holidays and presidential proclamations recognizing a "National Day of Prayer,"
as illustrations of appropriate governmental recognitions of religious faith.

Van Zandt v. Thompson, 839 F.2d 1215, 1221 (7th Cir. 1988) (citing Lynch, 465 U.S. at 676-

78).

Although Lynch did not involve a direct challenge to the National Day of Prayer, that

decision (and the Seventh Circuit's citation to it) is instructive on the National Day of Prayer's

---

[16] In County of Allegheny v. ACLU, Justice Kennedy similarly described the National
Day of Prayer as one of several "of our traditional practices recognizing the part religion plays in
our society."  Id., 492 U.S. 573, 670, 672 (1989) (Kennedy, J., concurring in part and dissenting
in part).  However, Justice Blackmun, writing for the Court's majority and responding to Justice
Kennedy's opinion, noted in a footnote that, "as [proclaiming a National Day of Prayer] is not
before us, we express no judgment about its constitutionality."  Id. at 603 n.52.  Nonetheless, and
subsequent to the Supreme Court's decision in County of Allegheny, Judge Manion referred to
Lynch's reference to the National Day of Prayer as an "implic[it] acknowledg[ment] [of] the
constitutionality of [that] practice."  Books v. City of Elkhart, 235 F.3d at 323 (Manion, J.,
concurring in part and dissenting in part); see also id. at 325 (Manion, J., concurring in part and
dissenting in part) (describing presidential proclamations for a National Day of Prayer as an
"accepted practice[ ]").

constitutionality.  "When an opinion issues for the [Supreme] Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."  <u>Seminole Tribe v. Florida</u>, 517 U.S. 44, 67 (1996).  As the Seventh Circuit has observed, "an inferior court had best respect what the majority [in a Supreme Court decision] says rather than read between the lines.  If the [Supreme] Court proclaims that a practice is consistent with the establishment clause, we take its assurances seriously.  If the Justices are just pulling our leg, let them say so."  <u>Sherman v. Community Consol. Dist. 21</u>, 980 F.2d 437, 448 (7th Cir. 1992).[17]

Moreover, the Seventh Circuit has spoken independently of <u>Lynch</u> (and more recently than <u>County of Allegheny</u>) on the National Day of Prayer.  In <u>DeBoer v. Village of Oak Park</u>, the court analyzed whether a village could exclude from its village hall, pursuant to a use policy, a group that wanted to use village hall facilities for a National Day of Prayer assembly.  In holding that the village's denial of plaintiffs' application to use the village hall constituted viewpoint discrimination, the court rejected "[t]he notion that religious prayer and worship is not properly viewed as a method of discussing civic subject matter" and noted that "prayers and the invocation of divine guidance have been accepted as part of American political discourse

---

[17] Plaintiffs may attempt to cite subsequent Supreme Court decisions in <u>Lee v. Weisman</u>, 505 U.S. 577 (1992), and <u>Santa Fe Independent School District v. Doe</u>, 530 U.S. 290 (2000), for the proposition that the Supreme Court has looked upon state-sponsored prayer with disfavor.  However, both of those cases involved prayer in a public school context.  <u>See Lee</u>, 505 U.S. at 599 (holding unconstitutional a religious exercise at graduation where "young graduates who object are induced to conform"); <u>Santa Fe</u>, 530 U.S. at 317 (policy that "creates the perception of encouraging the delivery of prayer at a series of important school events" unconstitutional).  As the Court in <u>Lee</u> made clear, however, "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."  <u>Lee</u>, 505 U.S. at 592.  Justice Kennedy, who wrote the opinion for the Court in <u>Lee</u>, also wrote the separate opinion in <u>County of Allegheny</u> recognizing that the National Day of Prayer is a traditional practice.  <u>See</u> n.16, <u>supra</u>.

20

throughout the history of this Republic." Id., 267 F.3d 558, 569, 570 (7th Cir. 2001).  The court

then went on to describe the National Day of Prayer in very positive terms:

> The civic nature of the NDP assembly as part of that well-established
> practice is particularly evident.  The event was a part of a national observance
> designed to afford citizens who believe that prayer is an important component of
> civic obligation the opportunity to discharge that obligation by praying together
> for the welfare of their country.  Indeed, it is a day designated for this purpose by
> Congress, and recognized each year by the President in a proclamation.

Id. at 570 (internal citation omitted).  See also Books v. City of Elkhart, 235 F.3d at 325

(Manion, J., concurring in part and dissenting in part) (describing presidential proclamations for

a National Day of Prayer as an "accepted practice[ ]"); Am. Jewish Cong. v. City of Chicago, 827

F.2d 120, 133 (7th Cir. 1987) (Easterbrook, J., dissenting) (similar).

This Court need not proceed further in order to conclude that the National Day of Prayer

statute, including its requirement that the President issue National Day of Prayer proclamations,

is fully consistent with the Establishment Clause.  Nonetheless, a review of the role of prayer and

religion in our nation's history, as well as analysis of the National Day of Prayer statute under the

Supreme Court's test in Lemon v. Kurtzman, 403 U.S. 602 (1971), demonstrate that the National

Day of Prayer is constitutional.

**B.     The National Day of Prayer Is Part of Our Country's Religious History.**

"[R]eligion has been closely identified with our history and government." Abington Sch.

Dist. v. Schempp, 374 U.S. 203, 212 (1963).  Many of the country's earliest settlers came to

these shores seeking a haven from religious persecution and a home where their faith could

flourish.  In 1620, before embarking for America, the Pilgrims signed the Mayflower Compact in

which they announced that their voyage was undertaken "for the glory of God."  Mayflower

Compact (1620), reprinted in 1B. Schwartz, The Roots of the Bill of Rights, at 2 (1980).  Settlers

21

established many of the original thirteen colonies, including Massachusetts, Rhode Island, Connecticut, Pennsylvania, Delaware, and Maryland, for the specific purpose of securing religious liberty for their inhabitants.  Indeed, the Constitutions or Declarations of Rights of almost all of the original States expressly guaranteed the free exercise of religion.  See 5 The Founders' Constitution 70-71, 75, 77, 81, 84-85 (P. Kurland & R. Lerner eds., 1987).

The Framers' deep-seated faith also laid the philosophical groundwork for the unique governmental structure they adopted.  In the Framers' view, government was instituted by individuals for the purpose of protecting and cultivating the exercise of their fundamental rights. Central to that political order was the Framers' conception of the individual as the source (rather than the object) of governmental power.  That view of the political sovereignty of the individual, in turn, was a direct outgrowth of their conviction that each individual was entitled to certain fundamental rights, a conviction most famously expressed in the Declaration of Independence: "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness."  U.S.C.A. Declaration of Independence. Thus, "[t]he fact that the Founding Fathers believed devoutly that there was a God and that the unalienable rights of man were rooted in Him is clearly evidenced in their writings, from the Mayflower Compact to the Constitution itself."  Schempp, 374 U.S. at 213.

Moreover, the Framers considered references to God in official documents and official acknowledgments of the role of religion in the history and public life of the country to be consistent with the principles of religious autonomy embodied in the First Amendment.  Indeed, two documents to which the Supreme Court has often looked in its Establishment Clause cases — James Madison's Memorial and Remonstrance Against Religious Assessments (1785) and

22

Thomas Jefferson's Bill for Establishing Religious Freedom (1779) — repeatedly acknowledge the Creator.  See 5 The Founders' Constitution, supra, at 77, 82.  Moreover, the Constitution itself refers to the "Year of our Lord" and excepts Sundays from the ten-day period for exercise of the presidential veto.  U.S. Const. art. I, § 7; id. art. VII.

The First Congress — the same Congress that drafted the Establishment Clause — adopted a policy of selecting a paid chaplain to open each session of Congress with prayer.  See Marsh v. Chambers, 463 U.S. 783, 787 (1983).  That same Congress, one day after the Establishment Clause was proposed, also urged President Washington "to proclaim 'a day of public thanksgiving and prayer, to be observed by acknowledging with grateful hearts, the many and signal favours of Almighty God."  Lynch, 465 U.S. at 675 n.2 (emphasis added) (citations omitted).[18]  President Washington responded by proclaiming November 26, 1789, a day of thanksgiving to "offer[ ] our prayers and supplications to the Great Lord and ruler of nations, and beseech Him to pardon our national and other transgressions."  Id. (citation omitted).  President Washington also included a reference to God in his inaugural address:  "[I]t would be peculiarly improper to omit in this first official act my fervent supplications to that Almighty Being who rules over the universe, who presides in the council of nations, and whose providential aids can supply every human defect, that His benediction may consecrate to the liberties and happiness of

---

[18] In the Establishment Clause context in particular, the Supreme Court has recognized that actions of the First Congress are "'contemporaneous and weighty evidence'" of the Constitution's "'true meaning,'" Marsh, 463 U.S. at 790 (quoting Wisconsin v. Pelican Ins. Co., 127 U.S. 265, 297 (1888)), and that "an unbroken practice . . . is not something to be lightly cast aside," Walz v. Tax Comm'n, 397 U.S. 664, 678 (1970).  See also The Pocket Veto Case, 279 U.S. 655, 689 (1929) ("Long settled and established practice is a consideration of great weight in a proper interpretation of constitutional provisions . . . .");  United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 328 (1936) (construction "placed upon the Constitution . . . by the men who were contemporary with its formation" is "almost conclusive") (citation omitted).

the people of the United States a Government instituted by themselves for these essential purposes."  Inaugural Addresses of the Presidents of the United States, S. Doc. No. 101-10, at 2 (1989).

Later generations have followed suit.  Since the time of Chief Justice Marshall, the Supreme Court has opened its sessions with "God save the United States and this Honorable Court."  See Engel v. Vitale, 370 U.S. 421, 446 (1962) (Stewart, J., dissenting).  President Abraham Lincoln referred to a "Nation[ ] under God" in the historic Gettysburg Address (1863): "[T]hat we here highly resolve that these dead shall not have died in vain; that this nation, under God, shall have a new birth of freedom; and that government of the people, by the people, for the people, shall not perish from the earth."  Every President who has delivered an inaugural address has referred to God or a Higher Power,[19] and every President, except Thomas Jefferson, has declared a Thanksgiving Day holiday.[20]  In 1865, Congress authorized the inscription of "in God we trust" on United States coins.  Act of Mar. 3, 1865, ch. 100, § 5, 13 Stat. 517, 518.  In 1931, Congress adopted as the national anthem "The Star-Spangled Banner," the fourth verse of which reads:  "Blest with victory and peace, may the heav'n rescued land Praise the Pow'r that hath made and preserved us a nation!  then conquer we must, when our cause is just, And this be our motto 'In God is our Trust.'"  See Engel, 370 U.S. at 449 (Stewart, J., dissenting).  In 1956, Congress passed legislation to make "In God we trust" the National Motto, and provided that it

---

[19] See Inaugural Address of the Presidents of the United States, supra; First Inaugural Address of William J. Clinton, 29 Weekly Comp. Pres. Doc. 77 (Jan. 20, 1993); Second Inaugural Address of William J. Clinton, 33 Weekly Comp. Pres. Doc. 63 (Jan. 20, 1997); First Inaugural Address of George W. Bush, 37 Weekly Comp. Pres. Doc. 209 (Jan. 20, 2001).

[20] See S. Epstein, Rethinking the Constitutionality of Ceremonial Deism, 96 Colum. L. Rev. 2083, 2113 & nn. 174-182 (1996) (listing Thanksgiving proclamations).

24

be inscribed on all United States currency, above the main door of the Senate, and behind the Chair of the Speaker of the House of Representatives.  See Act of Nov. 13, 2002, Pub. L. No. 107-293, § 1, 116 Stat. 2058.  And today, Christmas and Thanksgiving are proclaimed as national holidays:  "by Acts of Congress, it has long been the practice that federal employees are released from duties on these National Holidays, while being paid from the same public revenues that provide the compensation of the Chaplains of the Senate and the House and the military services."  Lynch, 465 U.S. at 676.  "Thus, it is clear that the Government has long recognized — indeed it has subsidized — holidays with religious significance."  Id.

### C.   Under the Supreme Court's Test in Lemon v. Kurtzman, the National Day of Prayer Statute Is Constitutional.

For the reasons set forth above, the Supreme Court's decision in Lynch, and the well-established role of the National Day of Prayer in our Nation's cultural fabric, allow this Court to reject plaintiffs' Establishment Clause challenge without applying the Supreme Court's test in Lemon v. Kurtzman, 403 U.S. 602 (1971).  For example, in Van Orden v. Perry, Chief Justice Rehnquist found that the Lemon test was "not useful" in determining the constitutionality of a Ten Commandments monument, turning instead to "the nature of the monument and . . . our Nation's history."  Id. at 686 (plurality opinion).  So too, here:  the nature of the National Day of Prayer and its role in our nation's history establish its constitutionality.

Even if this Court applies the Lemon test, the National Day of Prayer easily passes.  "Specifically, a government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion."  Vision Church v. Village of Long Grove, 468 F.3d 975, 991 (7th

Cir. 2006) (citing <u>Lemon</u>, 403 U.S. at 612-13).  The National Day of Prayer satisfies each of these three prongs.

<strong>1.      The National Day of Prayer Has a Secular Purpose.</strong>

First, the National Day of Prayer has a valid "secular purpose."  A statute passes the "secular purpose" test unless it is "<u>motivated wholly</u> by an impermissible purpose."  <u>Bowen v. Kendrick</u>, 487 U.S. 589, 602 (1988) (emphasis added); <u>see also</u> <u>Lynch</u>, 465 U.S. at 680 ("The Court has invalidated legislation or governmental action on the ground that a secular purpose was lacking, but only when it has concluded there was no question that the statute or activity was motivated wholly by religious considerations.").  The standard is exacting:  "Government action is improper where there is <u>no secular purpose</u> to support it, but to determine that there is no secular purpose, [a court] must find that the action was 'motivated <u>wholly</u> by religious considerations.'" <u>Fleischfresser v. Directors of Sch. Dist. 200</u>, 15 F.3d 680, 688 (7th Cir. 1994) (quoting <u>Lynch</u>, 465 U.S. at 680) (emphasis added)).  Thus, "[e]ven where the benefits to religion [are] substantial," a statute may have a secular purpose that does not violate the Establishment Clause.  <u>Lynch</u>, 465 U.S. at 680.  Finally, a government's characterization of a secular purpose is entitled to deference, unless its characterization is insincere.  <u>See</u> <u>Santa Fe</u>, 530 U.S. at 308; <u>Vision Church</u>, 468 F.3d at 992.

Under this standard, the National Day of Prayer has a clear secular purpose.  It has been in existence since 1952, and reflects a significant element of the cultural heritage and history of our country.  Indeed, in acknowledgment of the role that various faiths have played in creating the American mosaic, the President has also annually issued proclamations recognizing the role

26

of Jewish people,[21] celebrating Religious Freedom Day,[22] and honoring Dr. Martin Luther King, Jr.'s contributions ("Dr. King's faith in the Almighty gave him the courage to confront discrimination and segregation, and he preached that all powers of evil are ultimately no match for even one individual armed with eternal truths.").[23]   Put another way, the National Day of Prayer acknowledges the role of faith and religion in our country, just as the National Tartan Day[24] acknowledges the contributions of Scots, German-American Day[25] acknowledges the contributions of German-Americans, and Leif Erikson Day[26] acknowledges the contributions of Nordic Americans to our country.   To the extent it identifies the role of prayer and religion in our society, it is no different than the role that National Physical Fitness and Sports Month[27] plays in identifying the importance of exercise, National Safe Boating Week[28] raises awareness about safe boating practices, or National Park Week[29] celebrates our country's many majestic national

---

[21] Proclamation 8248, Jewish American Heritage Month, 2008 (Apr. 29, 2008), 73 Fed. Reg. 24,135.

[22] Proclamation 8215, Religious Freedom Day, 2008 (Jan. 14. 2008), 73 Fed. Reg. 3375.

[23] Proclamation 8216, Martin Luther King, Jr., Federal Holiday, 2008 (Jan. 16. 2008), 73 Fed. Reg. 3855.

[24] Proclamation 8233, National Tartan Day, 2008 (Apr. 4, 2008), 73 Fed. Reg. 19,387.

[25] Proclamation 8301, German-American Day, 2008 (Oct. 3, 2008), 73 Fed. Reg. 58,863.

[26] Proclamation 8303, Leif Erikson Day, 2008 (Oct. 8, 2008), 73 Fed. Reg. 60,603.

[27] Proclamation 8249, National Physical Fitness and Sports Month, 2008 (Apr. 29, 2008), 73 Fed. Reg. 24,137.

[28] Proclamation 8256, National Safe Boating Week, 2008 (May 15, 2008), 73 Fed. Reg. 29,383.

[29] Proclamation 8239, National Park Week, 2008 (Apr. 15, 2008), 73 Fed. Reg. 21,213.

parks.[30]

The legislative history of the National Day of Prayer confirms its secular purpose.  The official "purpose" of the original 1952 National Day of Prayer legislation was merely "to direct the President to proclaim a National Day of Prayer each year."  S. Rep. No. 82-1389 (1952).  And the statement accompanying the Senate report for the National Day of Prayer makes clear that the National Day of Prayer is merely a historical acknowledgment of the role of prayer in society:

> From its beginning the United States of America has been a nation fully cognizant of the value and power of prayer.  In the early days of colonization, the Pilgrims frequently engaged in prayer.  When the delegates to the Constitutional Convention encountered difficulties in the writing and formation of a Constitution for this Nation, prayer was suggested and became an established practice at succeeding sessions.  Today, both Houses of Congress are opened daily with prayer.
>
> Prayer has indeed been a vital force in the growth and development of this Nation.  It would certainly be appropriate if, pursuant to this resolution and the proclamation it urges, the people of this country were to unite in a day of prayer each year, each in accordance with his own religious faith, thus reaffirming in a dramatic manner the deep religious conviction which has prevailed throughout the history of the United States.

Id. (emphasis added).  The 2008 prayer proclamation that is at issue in this case, see Part III.B, infra, echoes the secular purpose set forth in this legislative history by noting that "[t]he Congress, by Public Law 100-307, as amended, has called on our nation to reaffirm the role of prayer in our society by recognizing each year a 'National Day of Prayer.'"  Compl., Ex. 1

---

[30] This Court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.  See Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994).  Presidential proclamations are such matters of public record.  See Gallaher & Speck, Inc. v. Ford Motor Co., 226 F.2d 728, 731 (7th Cir. 1955) ("courts must take judicial notice not only of the statutes but also of public proclamations by the executive").

(emphasis added).  Other prayer proclamations by President Bush,[31] and President Clinton, for

example,[32] have similarly framed the National Day of Prayer in historical terms, thus

_____

[31] See, e.g., Proclamation 7430, National Day of Prayer, 2001 (Apr. 27, 2001), 66 Fed.
Reg. 22,103 ("The faith of our Founding Fathers established the precedent that prayers and
national days of prayer are an honored part of our American way of life."); Proclamation 7672,
National Day of Prayer, 2003 (Apr. 30, 2003), 68 Fed. Reg. 23,829 (Noting that first National
Day of Prayer was called by the Continental Congress); Proclamation 7780, National Day of
Prayer, 2004 (Apr. 30, 2004), 69 Fed. Reg. 25,291 ("In his first Inaugural address, President
George Washington prayed that the Almighty would preserve the freedom of all Americans.  On
the National Day of Prayer, we celebrate that freedom and America's great tradition of prayer.");
Proclamation 7896, National Day of Prayer, 2005 (May 3, 2005), 70 Fed. Reg. 23,921 ("The
Continental Congress, meeting in 1775, asked the colonies to pray for wisdom in forming a new
Nation.  Throughout the Civil War, President Abraham Lincoln issued exhortations to prayer,
calling upon the American people to humble themselves before their Maker and to serve all those
in need.  At the height of World War II, President Franklin Roosevelt led our citizens in prayer
over the radio, asking for God to protect our sons in battle."); Proclamation 8012, National Day
of Prayer, 2006 (May 3, 2006), 71 Fed. Reg. 26,675 (historical citation of a George Washington
proclamation:  "It is the duty of all nations to acknowledge the Providence of Almighty God, to
obey His will, to be grateful for His benefits, and to humbly implore His protection and favor.").

[32] See Proclamation 6553, National Day of Prayer, 1993 (Apr. 30, 1993), 58 Fed. Reg.
26,499 (describing prayer in context of Declaration of Independence); Proclamation 6668,
National Day of Prayer, 1994 (Apr. 12, 1994), 59 Fed. Reg. 18,287 ("From patriots and
presidents to advocates for justice, our history reflects the strong presence of prayer in American
life."); Proclamation 6777, National Day of Prayer, 1995 (Mar. 14, 2995), 60 Fed. Reg. 14,351
(Noting that "[o]ur nation was built on the steadfast foundation of the prayers of our ancestors"
and describing role of prayer among Abraham Lincoln and Frederick Douglass); Proclamation
6877, National Day of Prayer, 1996  (Apr. 2, 1996), 61 Fed. Reg. 15,175 ("A National Day of
Prayer, first proclaimed by the Continental Congress in 1775, stems from the understanding that
faith is a fundamental part of our nation's social fabric."); Proclamation 6991, National Day of
Prayer, 1997 (Apr. 18, 1997), 62 Fed. Reg. 19,663 (Noting that "[o]ur people have always
believed in the power of prayer and have called upon the name of the lord through times of peace
and war, hope and despair, prosperity and decline," and describing history of faith among George
Washington, Abraham Lincoln, and Harry Truman); Proclamation 7088, National Day of Prayer,
1998 (Apr. 29, 1998), 63 Fed. Reg. 24,383 (Noting that "we turn to [prayer] at moments of great
joy or crisis in our public life as a Nation" and describing prayer by Continental Congress, in
President Washington's first inaugural address, and in President Franklin Roosevelt's first
inaugural address); Proclamation 7193, National Day of Prayer, 1999 (May 5, 1999), 64 Fed.
Reg. 25,189 (Noting role of prayer among the Great Plains American Indians and the Pilgrims,
and quoting Dr. Martin Luther King, Jr.); Proclamation 7303, National Day of Prayer, 2000 (May
4, 2000), 65 Fed. Reg. 26,481 ("The framers of our democracy, on a quest for freedom and
equality, were fueled by an abiding faith in a just and loving God, to whom they turned often for

demonstrating its secular purpose of acknowledging the important role that religion generally,

and prayer particularly, have played in our society.  See also Part II.B., supra; Part II.C.2, infra.

### 2. The National Day of Prayer's Primary Effect Is Neither to Advance Nor Inhibit Religion.

For government action to violate the second Lemon prong, it must so advance religion as

to amount to an endorsement of religion.  See County of Allegheny, 492 U.S. at 597;

Fleischfresser, 15 F.3d at 688.  Under this prong, a court "asks whether, irrespective of

government's actual purpose, the practice under review in fact conveys a message of

endorsement or disapproval."  Books v. City of Elkhart, 235 F.3d at 302 (internal quotation

marks omitted) (quoting Freedom From Religion Found., Inc. v. City of Marshfield, 203 F.3d

487, 493 (7th Cir. 2000)).  However, the Supreme Court does not "adhere to the principle that the

Establishment Clause bars any and all governmental preference for religion over irreligion." Van

Orden, 545 U.S. at 684 n.3 (plurality opinion).  Courts apply a "reasonable person" standard

under this prong.  See, e.g., Vision Church, 468 F.3d at 993 ("our focus is not on the intent of the

city, but on whether a reasonable person, apprised of the circumstances . . . would conclude that

the [government's conduct] amounted to an endorsement of religion"); Books v. City of Elkhart,

235 F.3d at 304 ("when employing [the second Lemon prong], we are charged with the

responsibility of assessing the totality of the circumstances surrounding the display to determine

whether a reasonable person would believe that the display amounts to an endorsement of

religion.").

Here, the "primary effect" of the National Day of Prayer is neither to advance nor inhibit

religion; it certainly does not endorse it.  The statute's language is voluntary, calling as it does on

─────────────────────

guidance and strength.").

30

the President to issue a proclamation (i.e., a public announcement) that invites people to pray, if they want to.  Just as an individual, pursuant to the proclamation, "may turn to God in prayer," 36 U.S.C. § 119 (emphasis added), another individual may not.  See County of Allegheny, 492 U.S. at 672 (the National Day of Prayer does not "require anyone to pray, of course") (Kennedy, J., concurring in part and dissenting in part); see also Am. Jewish Cong., 827 F.2d at 133 (Easterbrook, J., dissenting) (National Day of Prayer has no coercive effect).  In this regard, the statute and proclamations issued thereunder do nothing to change the status quo that would exist without the statute (or that prevails on the other 364 days of the year); every day, hundreds of millions of Americans make decisions on whether or not they wish to pray.

Moreover, and viewed in appropriate context, the National Day of Prayer is no different than many of our nation's other acknowledgments of the role of religion in our country's history and culture.  See Part II.B, supra.  The Supreme Court has stated time and again that official acknowledgments of the Nation's religious history and enduring religious character do not violate the Establishment Clause.  For example, the Court has long refused to construe the Establishment Clause so as to "press the concept of separation of Church and state to . . . extremes" by invalidating "references to the Almighty that run through our laws, our public rituals, [and] our ceremonies."  Zorach, 343 U.S. at 313.  "It is far too late in the day to impose [that] crabbed reading of the Clause on the country."  Lynch, 465 U.S. at 687.

Official acknowledgments of religion, such as the National Day of Prayer, are consistent with the Establishment Clause because they do not "establish[ ] a religion or religious faith, or tend[ ] to do so."  Id. at 678.  Indeed, "[a]ny notion" that such measures "pose a real danger of establishment of a state church" would be "farfetched."  Id. at 686.  Instead, such "public acknowledgment of the [Nation's] religious heritage long officially recognized by the three

31

constitutional branches of government," id., simply takes note of the historical facts that "religion permeates our history," Edwards v. Aguillard, 482 U.S. 578, 607 (1987) (Powell, J., concurring). As Justice Kennedy has put it, "[g]overnment policies of accommodation, acknowledgment, and support for religion are an accepted part of our political and cultural heritage," and "the Establishment Clause permits government some latitude in recognizing and accommodating the central role religion plays in our society." County of Allegheny, 492 U.S. at 657 (Kennedy, J., concurring in part and dissenting in part).  "Any approach less sensitive to our heritage would border on latent hostility toward religion, as it would require government in all its multifaceted roles to acknowledge only the secular, to the exclusion and so to the detriment of the religious." Id.

These precedents establish that the National Day of Prayer does not impermissibly advance religion, but instead merely acknowledges the importance of prayer for millions of Americans.  A finding otherwise would "border on latent hostility toward religion," id., as it would strip from millions of Americans a proclamation recognizing their religious heritage while leaving in place countless other proclamations that recognize all manner of political and cultural interests.  See, e.g., notes 21 to 29, supra (listing examples of proclamations).

        **3.**      **The National Day of Prayer Statute Does Not Foster An Excessive Entanglement With Religion.**

The third Lemon prong prohibits "excessive government entanglement with religion," Lemon, 403 U.S. at 613, and requires a court to examine "the character and purposes of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." Id. at 615.  Under this prong, a plaintiff must allege "'sponsorship, financial support, and active involvement of the sovereign in

32

religious activity.'" Vision Church, 468 F.3d at 995 (quoting Jimmy Swaggart Ministries v. Bd. of Equalization of Cal., 493 U.S. 378, 393 (1990)).[33]  A de minimis advancement or inhibition of religion is insufficient to satisfy the entanglement prong.  See Vision Church, 468 F.3d at 995. "The general rule is that, to constitute excessive entanglement, the government action must involve 'intrusive government participation in, supervision of, or inquiry into religious affairs.'" Id. (quoting United States v. Indianapolis Baptist Temple, 224 F.3d 627, 631 (7th Cir. 2000)).

The National Day of Prayer statute, and its requirement that the President issue proclamations thereunder, does not foster an excessive entanglement with religion.  As noted previously, the National Day of Prayer statute is simply an acknowledgment of a tradition with no interaction or supervision by the government, other than the issuance of a proclamation.  That is not entanglement.

For example, in Metzl v. Leininger, a district court struck down an Illinois law making Good Friday a public school holiday.  850 F. Supp. 740 (N.D. Ill. 1994), aff'd, 57 F.3d 618 (7th Cir. 1995).  The court had expressed several reservations about requiring all public schools in Illinois to close on Good Friday — "[a] solemn, even mournful day . . . commemorat[ing] for Christians, Jesus Christ's suffering and death on the cross." Id. at 741.  But Lemon's "entanglement" prong was not one of them:  The court was "hard pressed to conceive of a scenario under which the mere designation of Good Friday as a legal holiday could be seen to excessively entangle government with religion." Id. at 750.  So too, here:  Congress's designation of a National Day of Prayer, and its requirement that the President acknowledge that

---

[33] "Cases that turn on the entanglement prong of the Lemon test typically involve some form of state aid to religious institutions (such as parochial schools) or related schemes requiring state monitoring of religious entities." Metzl v. Leininger, 850 F. Supp. 740, 749-50 (N.D. Ill. 1994) (collecting cases), aff'd, 57 F.3d 618 (7th Cir. 1995).

day — like the designated national holidays on Thanksgiving and Christmas — simply does not entangle government with religion.

## III.   THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIM TO THE EXTENT IT RELATES TO PAST PRESIDENTIAL PROCLAMATIONS.

Plaintiffs' Complaint also seeks declaratory judgments that "prayer proclamations disseminated by Secretary Perino violate the Establishment Clause" and that "the actions of Shirley Dobson, as Chairman of the National Day of Prayer Task Force, in concert with state and federal officials, constitute joint action that violates the Establishment Clause, including through joint and collaborative action with President Bush, Secretary Perino, and state officials . . . ." Compl., Prayer for Relief ¶¶ B, D.  These claims present insurmountable justiciability problems, as they are both moot and raise substantial separation of powers concerns.[34]  And even if this Court were to reach the merits of plaintiffs' claims regarding the 2008 presidential proclamation, plaintiffs have nonetheless failed to state a claim.

### A.   Plaintiffs' Claims Regarding the 2008 Presidential Proclamation Present Insurmountable Justiciability Problems.

#### 1.   Plaintiffs' Claims Regarding the 2008 Presidential Proclamation Are Moot.

Plaintiffs seek declaratory judgments regarding the President's 2008 National Day of Prayer proclamation; they do not seek injunctive relief or damages.  And the declaratory judgments that plaintiffs seek regard a press release that was issued approximately six months

---

[34] Plaintiffs' Complaint contains no allegations whatsoever regarding National Day of Prayer proclamations that were issued by Secretary Perino prior to the 2008 proclamation. (Indeed, Defendant Perino has only been the White House Press Secretary since September, 2007, though she was Acting White House Press Secretary in April, 2007, when the 2007 National Day of Prayer proclamation was issued.)  Accordingly, the only proclamation that is before this Court is the 2008 proclamation.

before plaintiffs filed their lawsuit. While plaintiffs would like this Court to opine on the constitutionality of a press release issued by the White House last year, it would be improper for it to do so.

"If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006). "A case is moot when it no longer presents a live case or controversy." Tobin for Governor v. Illinois State Bd. of Elect., 268 F.3d 517, 528 (7th Cir. 2001); see also Protestant Mem'l Med. Ctr., Inc. v. Maram, 471 F.3d 724, 729 (7th Cir. 2006) ("federal courts may not give opinions upon moot questions or abstract propositions"). The jurisdictional prerequisite of a "case or controversy" applies to requests for declaratory relief. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) (Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense"); Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir. 1994) ("courts may not exercise [the] discretionary power [of the Declaratory Judgment Act] in the absence of an 'actual controversy' between the parties" (quoting 28 U.S.C. § 2201)).

Here, there is no "live case or controversy" as to the 2008 presidential proclamation; plaintiffs merely seek this Court's opinion on an act that occurred last year. As Newdow v. Bush makes clear in remarkably similar circumstances, any such claim is moot. In Newdow, plaintiff (after the denial of his preliminary injunction) sought a declaratory judgment that the delivery of an invocation and benediction at the 2005 presidential inauguration violated the Establishment and Free Exercise Clauses, as well as a permanent injunction prohibiting religious services at future inaugurations. 391 F. Supp. 2d at 107. The Court rejected plaintiff's request for a declaratory judgment for an inauguration that had already taken place, noting that "Article III

simply does not permit this court to offer advisory opinions as to the constitutionality of actions for which no redress can be granted." Id. at 108.  See also Tobin, 268 F.3d at 528 (affirming as moot dismissal of complaint seeking declaratory judgment regarding procedures for election that had already taken place); Freedom From Religion Found., Inc. v. City of Green Bay, 581 F. Supp. 2d 1019, 1024 (E.D. Wis. 2008) (removal of nativity scene hours before FFRF filed lawsuit seeking declaratory judgment "extinguished any live controversy between the parties").

Newdow's analysis of the request there for a permanent injunction is equally instructive, as it noted both that "any such order directed to the President would be ineffective for future inaugurations because he is constitutionally barred from serving another term, and thus will never have another inauguration," and that the court "cannot now rule on the constitutionality of prayers yet unspoken at future inaugurations of presidents who will make their own assessments and choices with respect to the inclusion of prayer." Id. at 107, 108.  Likewise, President Bush will not be issuing the 2009 National Day of Prayer proclamation, and Secretary Perino will not be disseminating it.  And while President-Elect Obama will be required by statute to issue a 2009 prayer proclamation, this Court cannot begin to speculate on what the contents of that proclamation will be.  See City of Los Angeles v. Lyons, 461 U.S. 95, 103-04 (1983) (threat that plaintiff would be subjected to illegal chokehold by police again "does not create the actual controversy that must exist for a declaratory judgment to be entered."); nn.31-32, supra (describing variance in language among National Day of Prayer proclamations).  Accordingly, to the extent plaintiffs' Complaint can be read to seek a declaratory judgment regarding future

36

presidential proclamations, this Court cannot issue a judgment on such an "abstract proposition[ ]." Protestant Mem'l Med. Ctr., 471 F.3d at 729.[35]

For the same reasons, plaintiffs' request for a declaratory judgment that numerous defendants engaged in "joint action that violates the Establishment Clause" is moot.[36]  Plaintiffs do not seek any damages arising from this alleged past violation, and so any determination through the vehicle of a declaratory judgment that such conduct violated the Establishment Clause would be moot.  Preiser v. Newkirk, 422 U.S. 395, 402-04 (1975); see also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health and Human Svcs., 532 U.S. 598, 608-09 (2001) (change in conduct can moot claim for equitable relief if unaccompanied by damages claim); Tobin, 268 F.3d at 528.

> **2.     This Court Should Not Take the Extraordinary Step of Issuing a Declaratory Judgment That Runs Personally Against the President of the United States.**

Plaintiffs' request for a declaratory judgment as to the President's issuance of the 2008 National Day of Prayer proclamation also raises significant separation of powers concerns.  There is substantial legal authority supporting the proposition that courts should not issue injunctions against the co-equal Executive and Legislative branches of government.  See Franklin v. Massachusetts, 505 U.S. 788, 802-03 (1992) (plurality opinion) ("[I]n general, 'this court has no jurisdiction of a bill to enjoin the President in performance of his official duties.'" (quoting

_____

    [35] To the extent plaintiffs seek a declaratory judgment that prayer proclamations generally violate the Establishment Clause, that claim fails for the reasons set forth in Part II, supra.

    [36] In making this argument, the federal defendants do not concede that the allegations regarding joint and collaborative action are directed to them, as opposed to Defendant Shirley Dobson, as plaintiffs have failed to identify the parties to whom this element of plaintiffs' prayer for relief is directed.   See Compl. ¶ 112-13, Prayer for Relief ¶ D.

Mississippi v. Johnson, 71 U.S. 475, 501 (1866)); Clinton v. Jones, 520 U.S. 681, 718-19 (1997)

(Breyer, J., concurring) ("constitutional principles counsel caution when judges consider an order

that directly requires the President properly to carry out his official duties"); Mississippi v.

Johnson, 71 U.S. at 500 ("Neither [Congress nor the President] can be restrained in its action by

the judicial department; though the acts of both, when performed, are, in proper cases, subject to

its cognizance.")[37]; Swan v. Clinton, 100 F.3d 973, 978 (D.C. Cir. 1996) (citing Franklin to

explain why injunctive relief against the President personally is disfavored).  And while the

Court in Franklin did not reach the question on the facts of that case of whether an injunction

against the President was appropriate, the Court nonetheless noted that "the District Court's grant

of injunctive relief against the President himself is extraordinary, and should have raised judicial

eyebrows."  Franklin, 505 U.S. at 802 (plurality opinion) (emphasis added).

       This line of authority regarding injunctive relief bears directly on plaintiffs' request for a

declaratory judgment, as a declaratory judgment against the President raises the exact same

separation of powers concerns.  See Swan, 100 F.3d at 976 n.1 ("Although the following

discussion is couched in terms of our ability to grant injunctive relief against the President,

similar considerations regarding a court's power to issue relief against the President himself

apply to Swan's request for a declaratory judgment").  As Justice Scalia has put it:

>        For similar reasons, I think we cannot issue a declaratory judgment against
> the President.  It is incompatible with his constitutional position that he be
> compelled personally to defend his executive actions before a court. . . . The
> President's immunity from such judicial relief is "a functionally mandated

---

     [37] By noting that a court may not "restrain" the President or Congress in their official functions, but may take "cognizance" of presidential or congressional acts, the Court is describing the difference between injunctive and declaratory relief, which are beyond judicial capacity, and damages, which are available where there is a waiver of sovereign immunity and other prerequisites are met.  Plaintiffs do not seek damages in this case.

> incident of the President's unique office, rooted in the constitutional tradition of
> the separation of powers and supported by our history."  Permitting declaratory or
> injunctive relief against the President personally would not only distract him from
> his constitutional responsibility to "take Care that the Laws be faithfully
> executed," U.S. Const., Art. II, § 3, but, as more and more disgruntled plaintiffs
> add his name to their complaints, would produce needless head-on confrontations
> between district judges and the Chief Executive.

Franklin, 505 U.S. at 827-28 (Scalia, J., concurring) (emphasis added) (quoting Nixon v.

Fitzgerald, 457 U.S. 731, 749 (1982) (internal footnote omitted)).  Applying this analysis, the

court in Newdow concluded that plaintiff's alleged injuries arising from Inauguration Day prayer

simply were not redressable by the court.  See Newdow, 391 F. Supp. 2d at 104-07.[38]

Thus, plaintiffs' effort to obtain a declaratory judgment against the President of the

United States — either for his issuance of National Day of Prayer proclamations or for his

alleged "joint action" in violation of the Establishment Clause — raises substantial separation of

powers concerns.  Plaintiffs' Complaint concedes that prayer proclamations are issued by the

President.  See, e.g., Compl. ¶¶ 14, 21, 24, 25, 27-31, 33-35, 47, 52, 56, 64, 93, 113.  To that end,

plaintiffs allege that "President Bush adopted and incorporated the NDP Task Force Theme and

Biblical reference as part of his National Day of Prayer Proclamation."  Compl. ¶ 30.  But these

purely executive actions, including the discretion the President exercises in issuing

proclamations, are beyond the reach of this Court; at minimum, this Court should decline to

exercise its "discretionary power" to issue a declaratory judgment against the President under

these circumstances.  See Deveraux, 14 F.3d at 330; see also North Shore Gas Co. v. Salomon,

Inc., 152 F.3d 642, 647 (7th Cir. 1998) (Declaratory Judgment Act "does not obligate courts to

---

[38] In so holding, the court noted that neither it nor any of the parties had "identified a case
in which a court actually issued an injunction or declaratory judgment against the President for
acts undertaken in his official capacity."  Newdow, 391 F. Supp. 2d at 106.

issue declaratory judgments.  Instead, district courts have wide discretion to decline to hear such actions.").

Plaintiffs cannot sidestep these thorny constitutional issues by laying responsibility for the 2008 National Day of Prayer proclamation at the feet of Secretary Perino.  See Compl., Prayer for Relief ¶ B.  First, the National Day of Prayer requires "[t]he President [to] issue" the proclamation; it says nothing about the White House Press Secretary.  36 U.S.C. § 119 (emphasis added).  Second, plaintiffs' own Complaint alleges that Secretary Perino played at most a ministerial role in "disseminating" the proclamation.  See Compl. ¶¶ 26, 95, 100, 103, 108.  Plaintiffs do not allege that the White House Press Secretary had any role whatsoever in the development of the theme for the 2008 National Day of Prayer, much less any substantive involvement in the National Day of Prayer.  Instead, plaintiffs' own Complaint merely alleges that Secretary Perino was the spokesperson for the White House and, hence, the President of the United States.  In that regard, while the 2008 National Day of Prayer proclamation was released by the Office of the Press Secretary, it was "proclaimed" by President Bush.  See Compl., Ex. 1.  Third, and finally, plaintiffs do not — indeed cannot — allege that action by the White House Press Secretary is necessary in order for the President to issue proclamations.  Thus, because the President himself has the exclusive decision-making authority as to the themes of the National Day of Prayer and the substance of National Day of Prayer proclamations, plaintiffs' relief — if any — is obtainable from the President and not Secretary Perino.  See Newdow, 391 F. Supp. 2d at 104; see also Lujan, 504 U.S. at 560-61 (redressibility is an element of standing).  Unfortunately for plaintiffs, this Court should not, as a matter of constitutional principle, provide that relief.

**B.      The President's 2008 Prayer Proclamation Was Constitutional.**

Because the question of the constitutionality of the President's 2008 prayer proclamation is moot, and because this Court lacks authority to issue a declaratory judgment as to the President's selection of a theme for that proclamation, this Court should dismiss that aspect of plaintiffs' Complaint with prejudice.  Nonetheless, and to the extent this Court proceeds to opine on that past event, the 2008 presidential proclamation did not violate the Establishment Clause.

Plaintiffs decry the "biblical reference" in that proclamation, Compl. ¶¶ 27-35, but such a reference should surprise nobody in light of the nature of the event — namely, a day of prayer.  In any event, plaintiffs' Complaint selectively quotes from that proclamation (see Compl. ¶ 29); the entire paragraph that contains the "theme" to which plaintiffs object provides:

> On this National Day of Prayer, we ask God's continued blessings on our country.  This year's theme, "Prayer!  America's Strength and Shield," is taken from Psalm 28:7, "The Lord is my strength and my shield; my heart trusts in him, and I am helped."  <u>On this day, we pray for the safety of our brave men and women in uniform, for their families, and for the comfort and recovery of those who have been wounded.</u>

Compl., Ex. 1 (emphasis added).[39]  Thus, the "theme" of "Strength and Shield" appropriately framed a prayer for America's soldiers.  There is nothing unique about this; to the contrary,

---

[39] Moreover, that paragraph is in the "preamble" to the proclamation; the text of the proclamation itself provides:

> NOW, THEREFORE, I, GEORGE W. BUSH, President of the United States of America, <u>do hereby proclaim</u> May 1, 2008, as a National Day of Prayer.  I ask the citizens of our Nation
>
> to give thanks, <u>each according to his or her own faith, for the freedoms and blessings we have received</u> and for God's continued guidance, comfort, and protection.  I invite all Americans to join in observing this day with appropriate programs, ceremonies, and activities.

<u>Id.</u> (emphasis added).

41

Congress requests the President

> to issue a proclamation calling upon the people of the United States to observe
> each . . . Memorial Day, by praying, each in accordance with his religious faith,
> for permanent peace; designating a period during such day in which all the people
> of the United States may unite in prayer at such time; and calling upon the
> newspapers, radio stations, and all other mediums of information to join in
> observing such day and period of prayer.

Joint Resolution Requesting the President to issue a proclamation designating May 30, Memorial

Day, as a day for a Nation-wide prayer for peace, Pub. L. No. 512, 64 Stat. 158 (1950).  The

President has issued such proclamations for a Memorial Day "Prayer for Peace"[40] to, among

other things, "pray for the members of our Armed Forces and their families," and to "ask for

God's continued guidance of our country."  Similarly, the President's Thanksgiving Day

proclamation has — in keeping with the historical tradition for that holiday — asked that all

Americans "give thanks to God who blessed our Nation's first days and who blesses us today."[41]

The Supreme Court has recognized the constitutionality of such pronouncements.  See Lynch,

465 U.S. at 676 (noting that "Executive Orders and other official announcements of Presidents

and of the Congress have proclaimed both Christmas and Thanksgiving National Holidays in

religious terms.").

For these reasons, as well as the reasons set forth in Part II, supra, the President's 2008

National Day of Prayer proclamation does not violate the Establishment Clause.[42]

---

[40] E.g., Proclamation 8260, Prayer for Peace, Memorial Day 2008 (May 22, 2008), 73
Fed. Reg. 30,725.

[41] Proclamation 8322, Thanksgiving Day, 2008 (Nov. 21, 2008), 73 Fed. Reg. 72,301.
That proclamation also acknowledges the central role that God played in the Thanksgiving Day
proclamations of Presidents Washington and Lincoln.  See id.

[42] To the extent the Court 1) reaches the question of whether plaintiffs have stated a claim
that the 2008 prayer proclamation violates the Establishment Clause; and 2) determines that they

**CONCLUSION**

For the foregoing reasons, this Court should dismiss plaintiffs' Complaint with prejudice.

Dated:  January 12, 2009

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JAMES GILLIGAN
Assistant Branch Director


   /s/ Brad P. Rosenberg
BRAD P. ROSENBERG (DC Bar 467513)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Tel: (202) 514-3374
Fax: (202) 616-8460
brad.rosenberg@usdoj.gov

Mailing Address:
Post Office Box 883
Washington, D.C.  20044

Courier Address:
20 Massachusetts Ave., N.W.
Washington, D.C. 20001

COUNSEL FOR DEFENDANTS
PRESIDENT GEORGE W. BUSH AND
WHITE HOUSE PRESS SECRETARY
DANA PERINO

---

have not, then the Court should also dismiss plaintiffs' claim for declaratory judgment that
Defendant Dobson acted "in concert with . . . President Bush [and] Secretary Perino" to violate
the Establishment Clause (to the extent that allegation implicates the federal defendants).
Compl., Prayer for Relief ¶ D.

43

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2009, I electronically filed a copy of the Federal Defendants' Memorandum of Law in Support of the Federal Defendants' Motion to Dismiss using the ECF System for the Western District of Wisconsin, which will send notification of that filing to all counsel of record in this litigation.

    /s/ Brad P. Rosenberg
Brad P. Rosenberg