UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., ANNE NICOL GAYLOR, ANNIE LAURIE GAYLOR, PAUL GAYLOR, DAN BARKER, PHYLLIS ROSE, and JILL DEAN, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 08-CV-588 |
| PRESIDENT GEORGE W. BUSH, WHITE HOUSE PRESS SECRETARY DANA PERINO, WISCONSIN GOVERNOR JIM DOYLE, and SHIRLEY DOBSON, CHAIRMAN OF THE NATIONAL DAY OF PRAYER TASK FORCE, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**DEFENDANT SHIRLEY DOBSON'S MEMO IN SUPPORT OF HER MOTION TO DISMISS**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     FACTS ............................................................................................................. 2

III.    PLAINTIFFS LACK STANDING .................................................................. 5

      A.      Standing is a Jurisdictional Requirement ............................................. 5

      B.      Plaintiffs Lack Standing ....................................................................... 6

      C.      Plaintiffs' Do Not Have Taxpayer Standing ........................................ 8

      D.      Plaintiffs' Alleged Injuries Cannot Be Redressed By A Court ........... 11

IV.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM .................................. 12

      A.      The Public Law Is Constitutional. ...................................................... 12

      B.      President Bush's 2008 Prayer Proclamation Was Constitutional. ....... 16

      C.      Governor Doyle's 2008 Prayer Proclamation Was Constitutional. ..... 17

CONCLUSION ............................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases:

*Air Line Pilots Ass'n v. UAL Corp.*,
   897 F.2d 1394 (7th Cir. 1990) ........................................................................................12

*Bauchman for Bauchman v. West High School*,
   132 F.3d 542 (10th Cir. 1997) ......................................................................................12

*Books v. City of Elkhart*,
   401 F.3d 857 (7th Cir. 2005) ............................................................................................7

*Community for Creative Non-Violence v. Hess*,
   745 F.2d 697 (D.C. Cir. 1984) ..................................................................................11, 12

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006)..................................................................................................5, 6, 9

*Doe v. County of Montgomery, Illinois*,
   41 F.3d 1156 (7th Cir. 1994) ............................................................................................7

*Elk Grove Unified School Dist. v. Newdow*,
   542 U.S. 1 (2004)......................................................................................................14, 15

*Flast v. Cohen*,
   392 U.S. 83 (1968)......................................................................................................9, 10

*Freedom from Religion Foundation, Inc., v. Nicholson*,
   536 F.3d 730 (7th Cir. 2008) ..........................................................................................10

*Freedom From Religion Foundation, Inc., v. Zielke*,
   845 F.2d 1463 (7th Cir. 1988) ..........................................................................................7

*Hein v. Freedom From Religion Foundation, Inc.*,
   127 S. Ct. 2553 (2007)..................................................................................1, 6, 8, 9, 10

*Hinrichs v. Speaker of the House of Representatives of the Indiana General Assembly*,
   506 F.3d 584 (7th Cir. 2007) ......................................................................................8, 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).................................................................................................6, 8, 11

*Lynch v. Donnelly*,
   465 U.S. 668 (1984)........................................................................................................15

*Marsh v. Chambers,*
    463 U.S. 783 (1983)...........................................................................1, 12, 13, 15, 17

*Massachusetts v. Mellon,*
    262 U.S. 447 (1923)...........................................................................................8

*School District of Abington Township v. Schempp,*
    374 U.S. 203 (1963)......................................................................................7, 13

*Steel Co. v. Citizens for a Better Environment,*
    523 U.S. 83 (1998).............................................................................................5

*U.S. v. Fischer,*
    833 F.2d 647 (7th Cir. 1987) ...........................................................................12

*Valley Forge Christian College v. Americans United for Separation of Church & State,*
    454 U.S. 464 (1982)...............................................................................5, 6, 7, 11

*Van Orden v. Perry,*
    545 U.S. 677 (2005).............................................................................13, 14, 15, 16

*Warth v. Seldin,*
    422 U.S. 490 (1975)........................................................................................5, 6

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990)...........................................................................................8

## **Statutes and Constitutional Provisions:**

36 U.S.C. § 119 ......................................................................................................10

U.S. Const. art. III, § 2, cl. 1 ...................................................................................5

I.      INTRODUCTION

        Plaintiffs lack standing, and this case should be dismissed.  Plaintiffs lack standing

because, even if the allegations in the Complaint are true, they have not suffered any

particularized injury that is separate from the general population.  Plaintiffs did not allege that

they attended the prayer ceremonies, that they were specifically given the prayer proclamations,

that they had to view the prayer proclamations to engage fully as citizens or to fulfill a legal

duty, or that they were in any way harmed in any specific or unique way.

        Plaintiffs did not allege they are taxpayers, nor did they allege that any money was spent

on the prayer proclamations.  Thus, they are not seeking taxpayer standing.  If they had, it would

have failed as under *Hein v. Freedom From Religion Found., Inc*., 127 S. Ct. 2553, 2562 (2007),

the Supreme Court clearly rejected the idea that taxpayer standing applies to anything other than

specific legislative appropriations of money in violation of the Establishment Clause.

        Even if Plaintiffs had suffered particularized injuries, they lack standing as such injuries

could not be redressed by a favorable court decision.  Plaintiffs are only seeking retrospective

declaratory judgments that all National Day of Prayer proclamations were unconstitutional and

are seeking a declaration that the law authorizing such proclamations is invalid.  Plaintiffs are not

seeking prospective injunctive relief.  Indeed, they could not as it would be pure speculation as to

what future proclamations might say.  The main target of the Complaint – President Bush – will

not even be in office after January 20, 2009.  Article III does not confer standing for purely

retrospective declaratory judgments.

        Even if Plaintiffs had standing, they have failed to state claim.  The Supreme Court, in

*Marsh v. Chambers*, 463 U.S. 783, 792 (1983), held that a legislature can hire a person for the

express purpose of giving a prayer for the legislature.  If a legislature can hire a person to give a

1

prayer, then the state can also ask citizens to pray in their own respective ways. The Public Law and the proclamations in this case simply follow the history and traditions of this Nation to seek Divine guidance. And as such, they do not violate the Establishment Clause.

## II.    FACTS

In 1952, Congress enacted 36 U.S.C. § 119 ("Public Law"), entitled, "The National Day of Prayer," which states, "The President shall issue each year a proclamation designating the first Thursday in May as a National Day of Prayer on which the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." *See also* Complaint ("Compl.") ¶ 14.

In 2008, President Bush issued a Proclamation, stating:

America trusts in the abiding power of prayer and asks for the wisdom to discern God's will in times of joy and of trial. As we observe this National Day of Prayer, we recognize our dependence on the Almighty, we thank Him for the many blessings He has bestowed upon us, and we put our country's future in His hands.

From our Nation's humble beginnings, prayer has guided our leaders and played a vital role in the life and history of the United States. Americans of many different faiths share the profound conviction that God listens to the voice of His children and pours His grace upon those who seek Him in prayer. By surrendering our lives to our loving Father, we learn to serve His eternal purposes, and we are strengthened, refreshed, and ready for all that may come.

On this national Day of Prayer, we ask God's continued blessings on our country. This year's theme, "Prayer! America's Strength and Shield," is taken from Psalm 28:7, "The Lord is my strength and my shield; my heart trusts in Him and I am helped." On this day, we pray for the safety of our brave men and women in uniform, for their families, and for the comfort and recovery of those who have been wounded.

The Congress, by Public Law 100-307, as amended, has called on our Nation to reaffirm the role of prayer in our society by recognizing each ear a "National Day of Prayer."

NOW THEREFORE, I, GEORGE W. BUSH, President of the United States of America, do hereby proclaim May 1, 2008, as a National Day of Prayer. I ask the

2

citizens of our Nation to give thanks, each according to his or her own faith, for the freedoms and blessings we have received and for God's continued guidance, comfort, and protection. I invite all Americans to join in observing this day with appropriate programs, ceremonies, and activities.

IN WITNESS WHEREOF, I have hereunto set my hand this twenty-first day of April, in the year of our Lord two thousand eight, and of the Independence of the United States the two hundred and thirty-second.

GEORGE W. BUSH

Compl., Exhibit 1.

Wisconsin Governor Jim Doyle also issued a prayer proclamation in 2008, stating:

WHEREAS, the citizens of the State of Wisconsin are a diverse group of people of nearly every nationality and represented by a variety of religious traditions; and

WHEREAS, the history of our state is replete with leaders who voluntarily call upon their God, from the prayers sent heavenward during the Constitutional Convention to those murmured in the heat of the battle at Omaha Beach during World War II, to the intercessions offered in the aftermath of tragedies such as Columbine, September 11th, and the space shuttle break up, whether the need be great or small, Americans of faith have sought the Lord's help with life's challenges and adversities throughout our history; and

WHEREAS, the citizens of the State of Wisconsin have relied on prayer as a source of strength and guidance in war and peace and as our service men and women are currently defending the United States, and

WHEREAS, the theme for the upcoming observance is "America, Unite in Prayer'; and

WHEREAS, prayer is a comfort for many people, especially during times of trial and tribulation; and

WHEREAS, THE CITIZENS OF Wisconsin should gather together on this day in their homes, churches, meeting places and chosen places of worship to pray in their own way for unity of the hearts of all mankind, and for strong moral character in the lives of the people of all nations, as well as, peace and understanding throughout the world;

NOW, THEREFORE, I, Jim Doyle, Governor of the State of Wisconsin, do hereby proclaim May 1, 2008

WISCONSIN DAY OF PRAYER

In the State of Wisconsin, and I commend this observance to all citizens.

Compl. Exhibit 3.

Defendant Shirley Dobson is a private person and the Chairman of the private organization, National Day of Prayer Task Force ("NDP Task Force").   According to the Complaint, the NDP Task Force organizes and promotes National Day of Prayer observances conforming to the Judeo-Christian system of values.  Compl. ¶ 19.

Plaintiffs allege that President Bush aligned and partnered with the NDP Task Force by adopting and incorporating the NDP Task Force theme and Biblical reference.  Compl. ¶¶ 27 and 30.  Plaintiffs also allege that Governor Doyle aligned his proclamation with the NDP Task Force, stating that he "incorporate[ed] NDP Task Force's official themes."   Compl. ¶ 59.

It is Plaintiffs' contention that this alignment and "joint and concerted action" between President Bush, Governor Doyle and the NDP Task Force violates the Establishment Clause. Specifically, the Plaintiffs seek the following relief:

1.     For a declaratory judgment that Public Law 100-307 is unconstitutional;

2.     For a declaratory judgment that the prayer proclamations disseminated by Secretary Dana Perino violate the Establishment Clause;

3.     For a declaratory judgment that the prayer proclamations of Governor Doyle violate the establishment clauses of the U.S. and Wisconsin Constitutions;

4.     For a declaratory judgment that the actions of Shirley Dobson, in concert with state and federal officials, violate the Establishment Clause;

5.     For a declaratory judgment that the actions of Governor Doyle and Shirley Dobson violated 42 U.S.C. § 1983; and

6.     For attorneys fees.

Plaintiffs have not asked for damages or injunctive relief – only declaratory judgments.

## III.     PLAINTIFFS LACK STANDING

### A.     Standing is a Jurisdictional Requirement

"'No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'"   *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).   The Constitution does not vest the federal judiciary with "an unconditioned authority to determine the constitutionality of legislative or executive acts." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 471 (1982).   Rather, Article III of the Constitution confines the judicial power to the resolution of actual "cases" and "controversies."   U.S. Const. art. III, § 2, cl. 1.   That limitation is an indispensable "ingredient of [the] separation and equilibration of powers, restraining the courts from acting at certain times," *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998), and "'confin[ing] federal courts to a role consistent with a system of separated powers'". *Valley Forge*, 454 U.S. at 472 (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968)).

Standing "is the threshold question in every federal case, determining the power of the court to entertain the suit."   *Warth v. Seldin*, 422 U.S. 490, 498 (1975).   "It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers."   *Id*. at 518; *see also DaimlerChrysler Corp.*, 547 U.S. at 342 n.3.   When ruling on a motion to dismiss for lack of standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."   *Warth*, 422 U.S. at 501.   If a plaintiff lacks standing, the federal court has no subject matter jurisdiction and no

business deciding the case or expounding the law.  *See DaimlerChrysler Corp.*, 547 U.S. at 341; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

"A federal court's jurisdiction . . . can be invoked only when the plaintiff himself . . . has suffered 'some threatened or actual injury resulting from the putatively illegal action'."  *Warth*, 422 U.S. at 499 (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973)).  "The requisite elements of Article III standing are well established: 'A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"  *Hein v. Freedom From Religion Found., Inc.*, 127 S. Ct. 2553, 2562 (2007) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

### B.      Plaintiffs Lack Standing

Plaintiffs lack standing as they have not suffered an actual or prospective injury.  *See Valley Forge Christian Coll.*, 454 U.S. at 472.  For Establishment Clause claims based on non-economic harm, the plaintiffs must "identify a personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees."  *Id.* at 485.

In *Valley Forge*, the United States gave away land worth at least $577,500 to a sectarian religious college.  *Id.* at 468.  Like the Plaintiffs in this case, the plaintiffs in *Valley Forge* believed in a strict separation of church and state.  But the Court held that such psychological harm does not confer Article III standing.  "[T]he psychological consequence presumably produced by observation of conduct with which one disagrees … is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms. It is evident that respondents are firmly committed to the constitutional principle of separation of

6

church and State, but standing is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Id*. at 485-86.

Rather, a plaintiff establishes standing by showing that he has been "subjected to unwelcome religious exercises or w[as] forced to assume special burdens to avoid them." *Valley Forge*, 454 U.S. at 487 n. 22; *see also School District of Abington Township v. Schempp*, 374 U.S. 203, 224 n. 9 (1963) (holding that students and parents had standing to challenge public school's practice of Bible reading in school where children were forced to sit through the readings as a condition of attending public school); *Doe v. County of Montgomery, Illinois*, 41 F.3d 1156 (7th Cir. 1994) (holding that an out-of-town attorney plaintiff did not have standing to challenge the constitutionality of a sign hung over the entrance of the county courthouse which stated, "The World Needs God" based on the allegation that the attorney would not take cases or represent clients to avoid going to the courthouse when attorney failed to allege that he had refused to represent any clients or that his presence was required in the courthouse); *Freedom From Religion Foundation, Inc., v. Zielke*, 845 F.2d 1463 (7th Cir. 1988) (holding that plaintiffs did not have standing when they did not alter their behavior as a result of the monument and failed to demonstrate that they were exposed to the monument during their normal routines or in the course of their usual driving or walking routes); *cf Doe*, 41 F.3d at 1161 (holding that plaintiffs who alleged that they had to come into direct and unwelcome contact with the sign in order to participate in their local government and fulfill their legal obligations had standing); *Books v. City of Elkhart*, 401 F.3d 857 (7th Cir.2005) (a local resident had standing to challenge a Ten Commandments display if he had to come into direct and unwelcome contact with the display to participate fully as a citizen and to fulfill legal obligations).

Plaintiffs have not alleged that they come into direct and unwelcome contact with the proclamations in any way different than the general population. They did not allege that they attended any of the National Day of Prayer events. They did not allege that any of the proclamations were sent to them directly. In fact, the Complaint is silent as to how Plaintiffs acquired knowledge of the proclamations. Plaintiffs have not alleged how the existence of these proclamations prevents them from participating fully as citizens and to fulfill legal obligations. *See id.* In any event, Plaintiffs have not suffered a direct injury that is particular to them, and not shared by the general population. *See Lujan*, 504 U.S. at 560; *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990); *see also Hinrichs v. Speaker of the House of Representatives of the Indiana General Assembly*, 506 F.3d 584 (7th Cir. 2007) (stating that a plaintiff must show that "he has sustained, or is immediately in danger of sustaining some direct injury … and not merely that he suffers in some indefinite way in common with people generally."). As such, Plaintiffs lack standing and the case should be dismissed.

## C.      Plaintiffs Do Not Have Taxpayer Standing

Plaintiffs have not alleged that they are taxpayers, and thus they are not seeking taxpayer standing. But even if they attempt to amend the Complaint to allege that they are taxpayers, they would not have taxpayer standing in this case. For more than 80 years the United States Supreme Court has held an individual's status as a taxpayer alone provides an insufficient basis to confer Article III standing. *See, e.g., Frothingham v. Mellon*, decided with *Massachusetts v. Mellon*, 262 U.S. 447, 487 (1923). Just last year the Supreme Court explained: "As a general matter, the interest of a federal taxpayer in seeing that Treasury funds are spent in accordance with the Constitution does not give rise to the kind of redressable 'personal injury' required for

Article III standing." *Hein*, 127 S. Ct. at 2563.  The Supreme Court has deviated from the general rule against taxpayer standing only once.

In *Flast v. Cohen*, 392 U.S. 83 (1968), the Court concluded the Establishment Clause's unique history supported carving out a narrow exception to the general rule against taxpayer standing for plaintiffs who challenge Congress's use of its taxing and spending power to subsidize with taxpayer funds the religious practices of private parties, in alleged violation of the Establishment Clause.  *Id*. at 102-06.  "The *Flast* Court discerned in the history of the Establishment Clause 'the specific evils feared by [its drafters] that the taxing and spending power would be used to favor one religion over another or to support religion in general.'" *DaimlerChrysler Corp*., 457 U.S. at 348 (quoting *Flast*, 392 U.S. at 103).  Thus, in *Flast*, the Court determined taxpayers had standing to seek an injunction against specific congressional expenditures in violation of the Establishment Clause.  *Flast*, 392 U.S. at 102.  In the nearly four decades since *Flast*, the Supreme Court has repeatedly confirmed the narrow scope of the *Flast* decision and has declined invitations to enlarge taxpayer standing.

Just last year, the Supreme Court confirmed the narrow ambit of taxpayer standing under *Flast*.  In *Hein*, 127 S. Ct. 2553, federal taxpayers challenged part of the President's Faith Based and Community Initiatives program as violative of the First Amendment's Establishment Clause. The plaintiffs asserted taxpayer standing to challenge the program because funds from the federal treasury were used to fund the initiative.  The Supreme Court rejected that argument, distinguishing between a specific congressional enactment authorizing the expenditure of funds and an expenditure made from general funds appropriated to the Executive Branch.  *Id*. at 2566. Consequently, the Court held the case fell "outside the 'narrow exception' that *Flast* 'created to the general rule against taxpayer standing established in *Frothingham*.'"  *Id*. at 2568 (citations

9

omitted).  "Because the expenditures that respondents challenge were not expressly authorized or mandated by any specific congressional enactment," the court explained, "respondents' lawsuit is not directed at an exercise of congressional power, and thus lacks the requisite 'logical nexus' between taxpayer status 'and the type of legislative enactment attacked.'"  *Id*. at 2568 (quoting *Flast*, 392 U.S. at 102 (citation omitted)); *see also Hinrichs*, 506 F.3d 584, 598 (7th Cir. 2007) (holding that under *Hein*, citizens lacked standing to challenge Indiana House's prayer practice).

In *Hinrichs*, the plaintiffs challenged the Indiana General Assembly's policy of beginning sessions with a ministerial prayer, some of which were "overtly Christian in content."  *Id*. at 587. The court found the plaintiffs lacked standing because they could not demonstrate their tax dollars were appropriated for a specific program which violates the Establishment Clause.  "The plaintiffs have not tied their status as taxpayers to the House's allegedly unconstitutional practice of regularly offering a sectarian prayer.  They have not shown that the legislature has extracted from them tax dollars for the establishment and implementation of a program that violates the Establishment Clause."  *Id*. at 599 (citations omitted).

In the same way, there is no Congressional appropriation of money to issue prayer proclamations, *see* 36 U.S.C. § 119, and Plaintiffs have alleged none.  Concerning the claims against Governor Doyle, Plaintiffs have not alleged there is any state legislative appropriation of money for his prayer proclamation.  So even if Plaintiffs change their minds and claim taxpayer standing, the case should be dismissed.  *See also Freedom from Religion Foundation, Inc., v. Nicholson*, 536 F.3d 730 (7th Cir. 2008) (stating that allowing Freedom From Religion to have standing to challenge Department of Veteran Affairs' chaplaincy program on Establishment Clause grounds would "subvert the delicate equilibrium and separation of powers that the Founders envisioned and that the Supreme Court has found to inform the standing inquiry.").

**D.     Plaintiffs' Alleged Injuries Cannot Be Redressed By A Court.**

In order to have standing, a plaintiff must not only allege a particularized injury, but also that the injury can be redressed by a favorable court decision.  *Valley Forge Christian College*, 454 U.S. at 472.  Plaintiffs' alleged injuries cannot be redressed by a favorable court decision as the alleged injuries occurred in the past and Plaintiffs are only seeking declaratory judgments, not prospective injunctive relief or damages.  Concerning Plaintiffs' claims against the alleged "joint and concerted action" between President Bush and Shirley Dobson, such claim is purely retrospective as President Bush will no longer be president as of noon on January 20, 2009.  Plaintiffs have made no allegation that President-elect Obama and Shirley Dobson have acted jointly and in concert concerning the National Day of Prayer for 2009.  It would be pure speculation and guesswork as to any alleged relationship between President-elect Obama and Shirley Dobson.  And it would require even more speculation to guess what President-elect Obama's proclamation, if one is issued, would say.  In the same way, even if Shirley Dobson worked in "joint and active concert" with Governor Doyle in 2008,  there is no allegation that Governor Doyle will issue a prayer proclamation in 2009, or if he does, what it will say.  As shown by the Complaint, the one he issued in 2008 did not contain any Bible references, any references to Jesus, or any specific deity for that matter (the only reference being "their Gods"), nor the NDP Task Force's proposed theme.  It is just pure speculation that he will issue an unconstitutional NDP proclamation in 2009.   Such speculation is not sufficient to confer standing.  *See Lujan*, 504 U.S. at 561.

A retrospective declaratory judgment would not redress Plaintiff's alleged injuries.  It would be nothing more than an advisory opinion, which a federal court is prohibited from giving.  *See Community for Creative Non-Violence v. Hess*, 745 F.2d 697, 700-01 (D.C.Cir.1984) ("it is

settled that a declaratory judgment is properly denied when the disputed practice has ended, such as through the repeal of a challenged statute."); *see also U.S. v. Fischer*, 833 F.2d 647 (7th Cir. 1987) ("advisory opinions are forbidden by Article III of the Constitution and by the Federal Declaratory Judgment Act").  In conformity with the case or controversy limitation, to warrant obtaining a declaratory judgment, Plaintiffs must establish that the controversy is (1) definite and concrete, touching on the legal relations of the parties; and (2) of sufficient immediacy and reality. The ultimate question is whether declaratory relief will have some effect in the real world. *See Air Line Pilots Ass'n v. UAL Corp.*, 897 F.2d 1394, 1396-97 (7th Cir. 1990) (the test is whether the relief sought would "make a difference to the legal interests of the parties (as distinct from their psyches, which might remain deeply engaged with the merits of the litigation.").  That the relief sought would give a plaintiff the satisfaction of a declaration that he was wronged in the past is insufficient to create an actual, live controversy. *Bauchman for Bauchman v. West High Sch.*, 132 F.3d 542, 548-49 (10th Cir.1997) (case or controversy requirement not met because declaratory relief claim found moot).

A declaration that Defendants' actions were unconstitutional will not redress Plaintiffs' injuries.  It would only give them satisfaction that they were wronged in the past, which does not create an actual live controversy.  Consequently, Plaintiffs' claims should be dismissed.

## IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM

### A.    The Public Law Is Constitutional.

Even if Plaintiffs had standing, the Complaint should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The issues brought up by Plaintiffs have already been settled by the Supreme Court in *Marsh v. Chambers*, 463 U.S. 783, 792 (1983).  In *Marsh*, the Nebraska Legislature asked a chaplain to pray for its deliberations, and paid for such

prayers.  The plaintiffs made the same arguments that the Plaintiffs are making here, and argued that seeking prayers for the state violated the Establishment Clause.  *See id*. at 793.  In rejecting this argument, the Court began by looking to this country's history.  Indeed, this nation has enjoyed a long history and tradition of seeking Divine guidance.  In *School Dist. of Abington Township v. Schempp*, 374 U.S. 203 (1963), the Court stated:

> It is true that religion has been closely identified with our history and government .... The fact that the Founding Fathers believed devotedly that there was a God and that the unalienable rights of man were rooted in Him is clearly evidenced in their writings, from the Mayflower Compact to the Constitution itself .... It can be truly said, therefore, that today, as in the beginning, our national life reflects a religious people who, in the words of Madison, are "earnestly praying, as ... in duty bound, that the Supreme Lawgiver of the Universe ... guide them into every measure which may be worthy of his [blessing ... .]"

*Id*. at 212-213.

From George Washington to today, Presidents have issued proclamations asking for national prayer.  *See Van Orden v. Perry*, 545 U.S. 677, 686 (2005) (plurality).  In 1789, both the House and the Senate passed resolutions asking President George Washington to issue an exhortation to the nation to pray and be thankful.  They asked President Washington to "recommend to the people of the United States a day of public thanksgiving and prayer, to be observed, by acknowledging, with grateful hearts, the many and signal favors of Almighty God." *See id*. (citing 1 Annals of Cong. 90, 914 (internal quotation marks omitted)).  President Washington then issued a proclamation setting aside November 26 as a day for the people to pray to God to give thanks for God's protection and mercy.  In his proclamation, he stated:

> Now, therefore, I do recommend and assign Thursday, the 26th day of November next, to be devoted by the people of these States to the service of that great and glorious Being who is the beneficent author of all the good that was, that is, or that will be; that we may then all unite in rendering unto Him our sincere and humble thanks for His kind care and protection of the people of this country previous to their becoming a nation; for the signal and manifold mercies and the favorable interpositions of His providence in the course and conclusion of the late

> war; for the great degree of tranquility, union, and plenty which we have since
> enjoyed; for the peaceable and rational manner in which we have been enabled to
> establish constitutions of government for our safety and happiness, and
> particularly the national one now lately instituted; for the civil and religious
> liberty with which we are blessed, and the means we have of acquiring and
> diffusing useful knowledge; and, in general, for all the great and various favors
> which He has been pleased to confer upon us.

*Id*. at 687 (citing J. Richardson, Messages and Papers of the Presidents, 1789-1897, p. 64

(1899)).   Almost all of the Presidents since Washington have issued similar Thanksgiving

proclamations.   *See Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 26 (2004)

(Rehnquist, concurring in judgment).

Throughout our history, Presidents have, at critical times, likewise themselves invoked

the name of God. Abraham Lincoln, concluding his masterful Gettysburg Address in 1863, said:

> It is rather for us to be here dedicated to the great task remaining before us – that
> from these honored dead we take increased devotion to that cause for which they
> gave the last full measure of devotion-that we here highly resolve that these dead
> shall not have died in vain-that this nation, under God, shall have a new birth of
> freedom-and that government of the people, by the people, for the people, shall
> not perish from the earth.

*Id.* (quoting 1 Documents of American History 429 (H. Commager ed. 8th ed.1968)).   Lincoln's

second inaugural address, delivered on March 4, 1865, made repeated references to God,

concluding:

> With malice toward none, with charity for all, with firmness in the right as God
> gives us to see the right, let us strive on to finish the work we are in, to bind up
> the nation's wounds, to care for him who shall have borne the battle and for his
> widow and his orphan, to do all which may achieve and cherish a just and lasting
> peace among ourselves and with all nations.

*Id*.

Woodrow Wilson, appearing before Congress on April 1917, to request a declaration of

war against Germany, concluded:

14

But the right is more precious than peace, and we shall fight for the things which we have always carried nearest our hearts – for democracy, for the right of those who submit to authority to have a voice in their own Governments, for the rights and liberties of small nations, for a universal dominion of right for such a concert of free peoples as shall bring peace and safety to all nations and make the world itself at last free. To such a task we can dedicate our lives and our fortunes, everything that we are and everything that we have, with the pride of those who know that the day has come when America is privileged to spend her blood and her might for the principles that gave her birth and happiness and the peace which she has treasured. God helping her, she can do no other.

*Id*. at 28-29.

Justice Stevens, in his dissent in *Van Orden*, recognized this nation's history of seeking prayers. He said, "Our leaders, when delivering public addresses, often express their blessings simultaneously in the service of God and their constituents.…   In this sense, although Thanksgiving Day proclamations and inaugural speeches undoubtedly seem official, in most circumstances they will not constitute the sort of governmental endorsement of religion at which the separation of church and state is aimed."  545 U.S. at 723 (emphasis added).

Regarding this history, the Court in *Marsh* concluded,

In light of the unambiguous and unbroken history of more than 200 years, there can be no doubt that the practice of opening legislative sessions with prayer has become part of the fabric of our society. To invoke Divine guidance on a public body entrusted with making the laws is not, in these circumstances, an "establishment" of religion or a step toward establishment; it is simply a tolerable acknowledgment of beliefs widely held among the people of this country.

*Id*. at 792; *see also Elk Grove Unified School Dist.*, 542 U.S. at 26 (Rehnquist, concurring in judgment) ("Examples of patriotic invocations of God and official acknowledgments of religion's role in our Nation's history abound"); *Lynch v. Donnelly*, 465 U.S. 668, 675 (1984) ("Our history is replete with official references to the value and invocation of Divine guidance").

Just as the Nebraska Legislature's practice of having a person open its sessions with prayer did not violate the Establishment Clause, so to the Public Law that invites persons to pray for this nation is constitutional.

**B.     President Bush's 2008 Prayer Proclamation Was Constitutional.**

In the same way, President Bush's 2008 Prayer Proclamation was consistent with this nation's history of exhorting people to pray, and easily passes constitutional muster.   In the proclamation, President Bush began by referring to our nation's religious history:

> From our Nation's humble beginnings, prayer has guided our leaders and played a vital role in the life and history of the United States.  Americans of many different faiths share the profound conviction that God listens to the voice of His children and pours His grace upon those who seek Him in prayer.

*See* Compl., Exhibit 1.

President Bush evoked a theme about the importance of prayer that was nonsectarian in nature.  "This year's theme, 'Prayer! America's Strength and Shield,' is taken from Psalm 28:7, 'The Lord is my strength and my shield; my heart trusts in Him and I am helped.'"  *Id*.  President Bush then asked people of *all faiths* to participate in the National Day of Prayer.  He said, "I ask the citizens of our Nation to give thanks, *each according to his or her own faith*, for the freedoms and blessings we have received and for God's continued guidance, comfort, and protection."  *Id*. (emphasis added).

President Bush's 2008 Prayer Proclamation was no different than President George Washington's in 1789.  *See Van Orden*, 545 U.S. at 687.  It was no different than the prayer given by the state chaplain in *Marsh*.  Plaintiffs' argument really boils down to the argument that the state violates the Constitution when it seeks prayer.  But as the Supreme Court held in *Marsh*, this is not unconstitutional, but rather, is in line with the great history and traditions of this Nation.

16

C.      **Governor Doyle's 2008 Prayer Proclamation Was Constitutional.**

Governor Doyle's 2008 Prayer Proclamation also passes constitutional review. His proclamation began by citing America's history of calling people to pray.

> the history of our state is replete with leaders who voluntarily call upon their God, from the prayers sent heavenward during the Constitutional Convention to those murmured in the heat of the battle at Omaha Beach during World War II, to the intercessions offered in the aftermath of tragedies such as Columbine, September 11th, and the space shuttle break up, whether the need be great or small, Americans of faith have sought the Lord's help with life's challenges and adversities throughout our history ….

Compl., Exhibit 3.

In the proclamation, Governor Doyle adopted a nonsectarian theme which was not the same as the NDP Task Force's 2008 theme. His theme was, "America, Unite in Prayer." *Id.* He then asked people of all faiths in Wisconsin to pray.

> THE CITIZENS OF Wisconsin should gather together on this day in their homes, churches, meeting places and chosen places of worship to pray *in their own way* for unity of the hearts of all mankind, and for strong moral character in the lives of the people of all nations, as well as, peace and understanding throughout the world ….

*Id.* (emphasis added).

Just like President George Washington, President Bush, and the *Marsh* chaplain, Governor Doyle's prayer was constitutional as it was in line with the "unambiguous and unbroken history of more than 200 years" of seeking divine guidance for this country. *See Marsh*, 463 U.S. at 792.[1]

---

[1] It's Mrs. Dobson's position that Plaintiffs' "entwinement" claims that President Bush and Governor Doyle acted jointly with Mrs. Dobson are likewise without merit. However, because the alleged result of such joint action are the prayer proclamations, and such proclamations are constitutionally sound, this Court does not need to decide the entwinement claims. Should the Court determine otherwise, Mrs. Dobson requests that she be permitted to submit additional briefing on that issue after this Court rules on her motion for a more definitive statement. Based on the allegations in the Complaint, it is unclear whether Plaintiffs are claiming that Mrs. Dobson acted jointly with state actors, or the NDP Task Force did. Until Plaintiffs clear this matter up, Mrs. Dobson is unable to adequately respond.

## CONCLUSION

Plaintiffs lack standing, and their case should be dismissed.  Plaintiffs have not alleged any specific harm to them, other than generalized grievances common with the general population.  They did not attend any NDP event, nor did they have to review the proclamations in order to fully participate as citizens.  Even if they had suffered particularized injuries, they lack standing as such injuries could not be redressed by the declaratory relief Plaintiffs have requested.  Even if they had standing, the Complaint should be dismissed for failure to state a claim.  Asking citizens to pray is in keeping with the history and tradition of the United States and does not violate the Establishment Clause.

Dated:  January 12, 2009

Respectfully submitted,


                                                            /s/Joel Oster

Alan E. Sears, Esq*                               Joel Oster, KS Bar 18547
Benjamin W. Bull, Esq.*                      Kevin Theriot, KS Bar 21565
ALLIANCE DEFENSE FUND            ALLIANCE DEFENSE FUND
15100 N. 90th Street                          15192 Rosewood
Scottsdale, Arizona                           Leawood, KS 66224
Tel:  480-444-0020                           Tel: (913) 685-8000
Fx: 480-444-0025                            Fax: (913) 685-8001
joster@telladf.org

COUNSEL FOR DEFENDANT SHIRLEY DOBSON
*Motions pro hac vice to be submitted

**CERTIFICATE OF SERVICE**

I hereby certify that on January 12, 2009, I electronically filed a copy of the above using

the ECF System for the Western District of Wisconsin, which will send notification of that filing

to all counsel in this litigation who have entered an appearance, including counsel for plaintiffs.

/s/Joel Oster
Joel Oster