# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

_____

|  |  |  |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., ANNE NICOL GAYLOR, ANNIE LAURIE GAYLOR, PAUL GAYLOR, DAN BARKER, PHYLLIS ROSE, and JILL DEAN, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 08-CV-588 |
| PRESIDENT BARACK OBAMA, WHITE HOUSE PRESS SECRETARY ROBERT L. GIBBS, WISCONSIN GOVERNOR JIM DOYLE, and SHIRLEY DOBSON, CHAIRMAN OF THE NATIONAL DAY OF PRAYER TASK FORCE, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

## MEMORANDUM OF LAW IN SUPPORT OF
## THE FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

TONY WEST
Assistant Attorney General

JOHN R. GRIFFITHS
Assistant Branch Director

BRAD P. ROSENBERG
Trial Attorney

COUNSEL FOR DEFENDANTS
PRESIDENT BARACK OBAMA AND
WHITE HOUSE PRESS SECRETARY
ROBERT L. GIBBS

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      PLAINTIFFS LACK STANDING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      The Individual Plaintiffs Cannot Demonstrate Injury. . . . . . . . . . . . . . . . . . . 8

        B.      FFRF Cannot Demonstrate Injury. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

        C.      Plaintiffs' "Injuries," If Any, Are Not Redressable. . . . . . . . . . . . . . . . . . . . 19

                1.      Plaintiffs' Claim Is Moot With Regard to
                        Past Presidential Proclamations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

                2.      Plaintiffs' Request for Declaratory and Injunctive Relief
                        Would Require this Court to Issue an Advisory Opinion on the
                        Substance of Future Prayer Proclamations. . . . . . . . . . . . . . . . . . . . . 21

                3.      Plaintiffs' Request for Relief Raises
                        Enormous Separation of Powers Concerns. . . . . . . . . . . . . . . . . . . . 23

II.     THE NATIONAL DAY OF PRAYER STATUTE IS CONSTITUTIONAL. . . . . . . . . 25

        A.      The Supreme Court Has Referenced the National Day of Prayer
                as Constitutional in the Context of Another Establishment Clause Challenge. . . 25

        B.      Under the Supreme Court's Test in <u>Lemon v. Kurtzman</u>,
                the National Day of Prayer Statute Is Constitutional. . . . . . . . . . . . . . . . . . . 31

                1.      The National Day of Prayer Statute Has a Secular Purpose.. . . . . . . . . . 32

                2.      The National Day of Prayer Statute's Primary Effect Is
                        Neither to Advance Nor Inhibit Religion.. . . . . . . . . . . . . . . . . . . . . 35

                3.      The National Day of Prayer Statute Does Not Foster
                        An Excessive Entanglement With Religion.. . . . . . . . . . . . . . . . . . . . 38

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

## TABLE OF AUTHORITIES

**CASES:**

Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227 (1937).. . . . . . . . . . . . . . . . . 20

Am. Jewish Cong. v. City of Chicago, 827 F.2d 120 (7th Cir. 1987). . . . . . . . . . . . . . . . . . 29, 36

Arizonans for Official English v. Arizona, 520 U.S. 43 (1997). . . . . . . . . . . . . . . . . . . . . . . 20

Books v. City of Elkhart, 235 F.3d 292 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . 10, 27, 29, 35

Books v. Elkhart County, 401 F.3d 857 (7th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Buono v. Norton, 212 F. Supp. 2d 1202 (C.D. Cal. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Burke v. Barnes, 479 U.S. 361 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Caldwell v. Caldwell, 545 F.3d 1126 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 15

City of Los Angeles v. Lyons, 461 U.S. 95 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Clinton v. Jones, 520 U.S. 681 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

County of Allegheny v. ACLU, 492 U.S. 573 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

DeBoer v. Village of Oak Park, 267 F.3d 558 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . 28, 29

Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316 (1999). . . . . . . . . . . . . . . . 7

Deveraux v. City of Chicago, 14 F.3d 328 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 20, 25

Doe v. County  of Montgomery, Ill., 41 F.3d 1156 (7th Cir. 1994).. . . . . . . . . . . . . . . . . . . . . . 11

Doe v. Madison School Dist. No. 321, 177 F.3d 789 (9th Cir. 1999) (en banc). . . . . . . . . . . . . 10

Edwards v. Aguillard, 482 U.S. 578 (1987).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Fleischfresser v. Dirs. of Sch. Dist. 200, 15 F.3d 680 (7th Cir. 1994). . . . . . . . . . . . . . . . . . . 35

Franklin v. Massachusetts, 505 U.S. 788 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 23, 24

Freedom From Religion Found., Inc. v. City of Marshfield, 203 F.3d 487 (7th Cir. 2000). . . . . 35

Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463 (7th Cir. 2000). . . . . . 8, 10, 11, 18

Gonzales v. N. Twp. of Lake County, 4 F.3d 1412 (7th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . 11

Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333 (1977).. . . . . . . . . . . . . . . . . . . . . . . 19

Ind. Democratic Party v. Rokita, 458 F. Supp. 2d 775 (S.D. Ind. 2006). . . . . . . . . . . . . . . . . . 8

Jimmy Swaggart Ministries v. Bd. of Equalization of Cal., 493 U.S. 378 (1990).. . . . . . . . . . . 38

Lance v. Coffman, 549 U.S. 437 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lee v. Weisman, 505 U.S. 577 (1992).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 28

Lemon v. Kurtzman, 403 U.S. 602 (1971).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31, 38

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Lynch v. Donnelly, 465 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Marsh v. Chambers, 463 U.S. 783 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

McConnell v. FEC, 540 U.S. 93 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

McCreary County v. ACLU of Kentucky, 545 U.S. 844 (2005). . . . . . . . . . . . . . . . . . . . . . . . . 32

Metzl v. Leininger, 850 F. Supp. 740 (N.D. Ill. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Mississippi v. Johnson, 71 U.S. 475 (1866). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428 (D.C. Cir. 1995). . . . . . . . . . . . . 17

Nat'l Treasury Employees Union v. United States, 101 F.3d 1423 (D.C. Cir. 1996). . . . . . . 16, 17

Newdow v. Bush, 391 F. Supp. 2d 95 (D.D.C. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Nixon v. Fitzgerald, 457 U.S. 731 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

N. Shore Gas Co. v. Salomon, Inc., 152 F.3d 642 (7th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . 25

Organ. of Minority Vendors v. Ill. Cent. Gulf R.R., 579 F. Supp. 574 (N.D. Ill. 1983). . . . . . . 16

Panama Refining Co. v. Ryan, 293 U.S. 388 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Pennsylvania v. New Jersey, 426 U.S. 660 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Plotkin v. Ryan, No. 99 C 53, 1999 WL 965718 (N.D. Ill. Sept. 29, 1999). . . . . . . . . . . . . . . . 16

Plotkin v. Ryan, 239 F.3d 882 (7th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Preiser v. Newkirk, 422 U.S. 395 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Protestant Mem'l Med. Ctr., Inc. v. Maram, 471 F.3d 724 (7th Cir. 2006). . . . . . . . . . . . . . 20, 22

Raines v. Byrd, 521 U.S. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rostker v. Goldberg, 453 U.S. 57 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Santa Fe Indep. Sch. Dist. v. Doe, 530 U.S. 290 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208 (1974). . . . . . . . . . . . . . . . . 8, 9

Seminole Tribe v. Florida, 517 U.S. 44 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Sherman v. Cmty. Consol. Dist. 21, 980 F.2d 437 (7th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . 28

Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918 (7th Cir. 2008). . . . . . . . . . . 19

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Swan v. Clinton, 100 F.3d 973 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

United States v. Custiss-Wright Export Corp., 299 U.S. 304 (1936). . . . . . . . . . . . . . . . . . . . . . 29

United States v. Indianapolis Baptist Temple, 224 F.3d 627 (7th Cir. 2000). . . . . . . . . . . . . . . 38

United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Salerno, 481 U.S. 739 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

U.S. Parole Comm'n v. Geraghty, 445 U.S. 388 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Valley Forge Christian Coll. v. Ams. United for Separation of Church and State,
       454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

iv

Van Orden v. Perry, 545 U.S. 677 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Van Zandt v. Thompson, 839 F.2d 1215 (7th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . 27, 32

Vision Church v. Village of Long Grove, 468 F.3d 975 (7th Cir. 2006). . . . . . . . . . 31, 32, 35, 38

Warth v. Seldin, 422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 18

Wash. State Grange v. Wash. State Republican Party, 128 S. Ct. 1184 (2008). . . . . . . . . . . . . 31

Wynne v. Town of Great Falls, S.C., 376 F.3d 292 (4th Cir. 2004). . . . . . . . . . . . . . . . . . . . 10

Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952). . . . . . . . . . . . . . . . . . . . . . 24

Zorach v. Clauson, 343 U.S. 306 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 34

**STATUTES AND REGULATORY MATERIALS:**

Pub. L. No. 81-512, 64 Stat. 158 (1950). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Pub. L. No. 82-324, 66 Stat. 64 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

28 U.S.C.A. § 2201 (West 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

36 U.S.C.A. § 119 (West 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15, 36

S. Rep. No. 82-1389 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 33

73 Fed. Reg. 72,301 (Nov. 26, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

74 Fed. Reg. 22,087 (May 11, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

74 Fed. Reg. 25,383 (May 27, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**OTHER AUTHORITIES:**

S. Epstein, Rethinking the Constitutionality of Ceremonial Deism,
     96 Colum. L. Rev. 2083 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

The Random House Dictionary of the English Language, unabridged (2d ed. 1987). . . . . . . . . . 15

## PRELIMINARY STATEMENT

It is axiomatic that courts exist to resolve real, concrete, and particularized disputes between parties, and not to act as arbiters of generalized societal grievances.  Plaintiffs, however, would have this Court act as such an arbiter.  In challenging the constitutionality of the National Day of Prayer, plaintiffs ask this Court to strike down a statute and issue an injunction proscribing what this and future Presidents can and cannot say to the American people.  That, by itself, is extraordinary.  More remarkable, however, is that plaintiffs seek such relief based on their generalized knowledge (and dislike) of the National Day of Prayer, as well as their affirmative decisions to obtain presidential National Day of Prayer proclamations in order to "monitor" the language used therein, "picket" local prayer events, and ultimately "educate" the public on matters relating to nontheism.

Based on these undisputed facts, plaintiffs simply cannot demonstrate that they have a connection to presidential National Day of Prayer proclamations sufficient to confer injury and, hence, standing to sue President Barack Obama and White House Press Secretary Robert Gibbs (hereinafter, the "federal defendants").  That connection is necessary to ensure that plaintiffs—such as those here—do not use the courts merely to advance a social cause.  But that is what the individual plaintiffs and the Freedom From Religion Foundation ("FFRF")—which exists for the very purpose of opposing events such as the National Day of Prayer—would have this court do.  Plaintiffs may dislike presidential National Day of Prayer proclamations, and may abhor any public celebration of prayer, but those psychic injuries, by themselves, do not give rise to Article III standing.

1

Plaintiffs' challenge to the National Day of Prayer statute and proclamations issued thereunder also presents a whole host of justiciability problems.  Even if this Court were to find that the National Day of Prayer statute is unconstitutional, Presidents would still have the inherent authority to issue a proclamation designating a National Day of Prayer.  Simply put, a finding that the National Day of Prayer statute is unconstitutional would not redress plaintiffs' alleged (and entirely self-inflicted) "injury" absent injunctive relief against the President himself. That, in turn, creates three separate justiciability problems.  First, any judgment that relates to prior prayer proclamations—whether by President Obama, President Bush, or any other past President—would be moot.  Those proclamations now belong to history and cannot be "undone." Second, the substance of future presidential National Day of Prayer proclamations is unknown and unknowable.  Accordingly, any injunction regarding future proclamations would be entirely speculative.  Third, and most fundamentally, an injunction against the President of the United States of America raises enormous separation of powers concerns.  The Supreme Court has described such a remedy as so "extraordinary" that it should "raise[ ] judicial eyebrows."[1]

For these reasons, this Court should find that plaintiffs lack standing and, on that basis alone, grant summary judgment to the federal defendants.  Nonetheless, plaintiffs lose on the merits, too.  As to plaintiffs' facial challenge to the National Day of Prayer statute, they need to demonstrate that there is no set of circumstances pursuant to which a President can issue a National Day of Prayer proclamation that is consistent with the Establishment Clause.  This they cannot do.  The statute requires the President to issue annual National Day of Prayer proclamations—nothing more.  In substance and in form, those proclamations are

---

[1] Franklin v. Massachusetts, 505 U.S. 788, 802 (1992) (plurality opinion).

indistinguishable from Memorial Day and Thanksgiving Day proclamations.  Moreover,

President Obama's 2009 National Day of Prayer proclamation explicitly noted that, among our

religious freedoms is the freedom of Americans to "worship or not worship according to the

dictates of their conscience."[2]  Based on well-settled Supreme Court and Seventh Circuit

precedent, President Obama's proclamation is entirely consistent with the Establishment Clause.

The statute, therefore, is constitutional.

For these reasons, as set forth in greater detail below, this Court should grant summary

judgment to the federal defendants.

## BACKGROUND

Plaintiffs consist of six individuals, all of whom reside in Madison, Wisconsin, as well as

FFRF.  See Am. Compl. ¶¶ 4, 7-12.  Plaintiffs are self-described "non-believer[s]," Am. Compl.

¶¶ 7-12, while FFRF is a membership organization whose purposes "are to promote the

constitutional principle of separation of state and church, and to educate the public on matters

relating to nontheism," Ex. B (Welcome to the Freedom From Religion Foundation webpage);

see also Ex. C (Freedom From Religion Foundation pamphlet) (similar).  Notably, FFRF also

exists to "[f]ile[ ] lawsuits!"  Ex. B (Welcome to the Freedom From Religion Foundation

webpage).

Plaintiffs' original Complaint named President George W. Bush and White House Press

Secretary Dana Perino as defendants, but their Amended Complaint has substituted President

---

[2] Barack Obama, President of the United States of America, Proclamation, National Day of Prayer, 2009 (May 7, 2009) (attached hereto as Ex. A) (emphasis added).  The proclamation is also available in the Federal Register.  See Proclamation 8374, National Day of Prayer, 2009 (May 7, 2009), 74 Fed. Reg. 22,087 (May 11, 2009).

Barack Obama and current White House Press Secretary Robert Gibbs as defendants.  See Am.

Compl. ¶¶ 13-16.  Plaintiffs have also sued the Governor of Wisconsin and Shirley Dobson, who

plaintiffs allege is the Chair of the "National Day of Prayer Task Force" (hereinafter, "NDP Task

Force").  Am. Compl. ¶¶ 17-19.

     The National Day of Prayer statute that plaintiffs challenge provides that:

     The President shall issue each year a proclamation designating the first Thursday
     in May as a National Day of Prayer on which the people of the United States may
     turn to God in prayer and mediation at churches, in groups, and as individuals.

36 U.S.C.A. § 119 (West 2008).  Pursuant to this statute, presidents—including President

Obama—have issued annual National Day of Prayer proclamations.  See, e.g., Ex. A (2009

Proclamation).  Plaintiffs allege that President Bush's 2008 National Day of Prayer proclamation

incorporated a "theme" suggested by the NDP Task Force.  See Am. Compl. ¶¶ 27-30.  However,

President Obama's National Day of Prayer proclamation did not incorporate the NDP Task

Force's suggested theme for 2009.  Compare Ex. A (2009 Proclamation) with Ex. D (Feb. 17,

2009 Letter from Shirley Dobson to President Barack Obama).  To the contrary, President

Obama's 2009 National Day of Prayer proclamation explicitly acknowledged the freedom of

people to "worship or not worship according to the dictates of their conscience."  Ex. A (2009

Proclamation).

     Plaintiffs have a keen interest in the National Day of Prayer, and have learned of recent

presidential National Day of Prayer proclamations by checking the White House's website, by

checking the NDP Task Force's website, by subscribing to "Focus on the Family" mailing lists,

through research on the internet, through their work for FFRF, or from each other.  See Plaintiffs'

Responses to Defendants President Barack Obama and Robert L. Gibbs' First Set of

4

Interrogatories ("Interrogatory Answers") (Ex. E), Nos. 4-5, at 6-8.  (At least one named plaintiff is unfamiliar with President Obama's 2009 National Day of Prayer proclamation.  See id. No. 5, at 8.)  None, however, have been exposed in a direct and unwelcome manner to presidential National Day of Prayer proclamations.

As for FFRF, its members have attended prayer breakfasts and municipal events relating to the National Day of Prayer in order to monitor or picket them.  See Interrogatory Answers No. 9, at 44.  FFRF has also encouraged its members to "monitor state/church abuses in their area related to the National Day of Prayer, and to respond promptly to them," at least as far back as 1990.  Ex. F (Protest National Day of Prayer, Freethought Today, April 1990, at 16).  FFRF has also responded to the National Day of Prayer "by contacting various public officials; by promoting secular proclamations for government officials to make; by publicizing violations after FFRF began publishing a newspaper in 1983 ten times a year; by periodically alerting members to ongoing violations; and by encouraging and publicizing efforts to protest the National Day of Prayer and local and regional off-shoots."  Interrogatory Answers No. 6, at 10-11.  FFRF members, who "greatly enjoy fighting back," have also expressed their displeasure regarding the National Day of Prayer to FFRF over the years.  Interrogatory Answers No. 6, at 12.  FFRF has even used the National Day of Prayer in its fundraising efforts, and views this "splashy" lawsuit as a "highly educational" vehicle to inform the public on matters relating to nontheism—which in turn is part and parcel of FFRF's organizational purpose.  Ex. B (Welcome to the Freedom From Religion Foundation webpage); Ex. G (FFRF Fundraising Letter); Ex. H (Sept. 30, 2008 e-mail from Annie Laurie Gaylor to Jill Dean).  FFRF, however, can identify no

expenditures relating to the National Day of Prayer that are delineated by specific budgetary line items.  See Interrogatory Answers No. 7, at 39.

As to the federal defendants, plaintiffs seek a "judgment that Public Law 100-307 [the National Day of Prayer statute] is unconstitutional and enjoining its enforcement"; a "judgment declaring that prayer proclamations disseminated by Presidential Press Secretaries violate the Establishment Clause and enjoining their publication"; and a "judgment enjoining the defendants from issuing and disseminating further Prayer Day Proclamations and making designations of official days of prayer."  Am. Compl., Prayer for Relief ¶¶ A, B, F; see also Am. Compl. ¶ 14 (seeking injunction "prohibiting [National Day of Prayer] proclamations by President Obama"); Am. Compl. ¶ 16 (seeking injunction prohibiting Secretary Gibbs "from publishing and publicizing Presidential Prayer Proclamations").  Plaintiffs also seek a "judgment enjoining Shirley Dobson from acting in concert with state and federal officials, in joint action that violates the Establishment Clause, including through joint and collaborative action with the President, the Presidential Press Secretary, and state officials," Am. Compl., Prayer for Relief ¶ D, as well as relief relating exclusively to Governor Doyle and/or Shirley Dobson, Am. Compl., Prayer for Relief ¶¶ C, E.

## **ARGUMENT**

## **I.    PLAINTIFFS LACK STANDING.**

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'"  Lance v. Coffman, 549 U.S. 437, 439 (2007).  "One component of the case-or-controversy requirement is standing, which requires a plaintiff to demonstrate the now-familiar elements of injury in fact, causation, and redressability."  Id. (citing Lujan v. Defenders of

Wildlife, 504 U.S. 555, 560-61 (1992)).  The Article III standing inquiry is "especially rigorous when reaching the merits of the dispute would force us [the Court] to decide whether an action taken by one of the other two branches of the Federal government is unconstitutional."  Raines v. Byrd, 521 U.S. 811, 819-20 (1997).

Specifically, to meet "the irreducible constitutional minimum of standing," a plaintiff must establish an injury:  (1) that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that is "fairly . . . trace[able] to the challenged action of the defendant"; and (3) that would "likely. . . be redressed by a favorable decision."  Lujan, 504 U.S. at 560-61 (internal quotation marks and citations omitted; alterations in original).  "The party invoking federal jurisdiction bears the burden of establishing these elements."  Id. at 561.  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Id.  Thus, "[i]n response to a summary judgment motion . . . the plaintiff . . . must 'set forth' by affidavit or other evidence 'specific facts.'"  Id. (quoting Fed. R. Civ. P. 56(e)).  See also Dep't of Commerce v. U.S. House of Representatives, 525 U.S. 316, 329 (1999) ("To prevail on a Federal Rule of Civil Procedure 56 motion for summary judgment—as opposed to a motion to dismiss—however, mere allegations of injury are insufficient.  Rather, a plaintiff must establish that there exists no genuine issue of material fact as to justiciability or the merits.").

Plaintiffs' claim here fails on the first and third standing elements: plaintiffs cannot demonstrate a "concrete and particularized" injury, much less that any such injury can be redressed by the relief that they seek as to the federal defendants.

**A.     The Individual Plaintiffs Cannot Demonstrate Injury.**

Even in the Establishment Clause context, the Supreme Court has consistently "rejected claims of standing predicated on the right, possessed by every citizen, to require that the Government be administered according to law." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, 454 U.S. 464, 482-83 (1982) (citation and internal quotation marks omitted). "Offense alone in response to government policies or requirements does not suffice to create standing: 'Otherwise there would be universal standing: anyone could contest any public policy or action he disliked. There must be a concrete injury.'" Indiana Democratic Party v. Rokita, 458 F. Supp. 2d 775, 810 (S.D. Ind. 2006) (quoting Books v. Elkhart County, 401 F.3d 857, 870 (7th Cir. 2005)), aff'd sub nom. Crawford v. Marion County Election Bd., 472 F.3d 949 (7th Cir. 2007), aff'd, 128 S. Ct. 1610 (2008); see also Freedom From Religion Found., Inc. v. Zielke, 845 F.2d 1463, 1468 (1988) (no standing for "rebuke to [FFRF's] religious beliefs respecting religion"). In other words, neither a "generalized grievance" nor harm that is "abstract" is sufficient to support Article III standing. See Lujan, 504 U.S. at 575, 579 (citations omitted); see also id. at 574 (a plaintiff who seeks relief that "no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy"); Warth v. Seldin, 422 U.S. 490, 499 (1975) ("when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."); Schlesinger v. Reservists Comm. to Stop the War,

8

418 U.S. 208, 220 (1974) ("standing to sue may not be predicated upon an interest of the kind . . . which is held in common by all members of the public").  Standing may not be predicated on an interest that is held by the public at large "because of the necessarily abstract nature of the injury all citizens share."  Schlesinger, 418 U.S. at 220.

In applying these principles in the Establishment Clause context, courts consistently hold that a plaintiff must demonstrate a personal connection to the allegedly offensive conduct, such as direct and unwelcome contact, in order to have standing.  For example, in Valley Forge, plaintiffs sought to challenge, on Establishment Clause grounds, a transfer of federal property to a religious organization.  The Supreme Court held that plaintiffs, who learned of the transfer through a news release, "fail[ed] to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees."  Valley Forge, 454 U.S. at 485 (emphasis added).  Similarly, in Caldwell v. Caldwell, a plaintiff who asserted "an interest in being informed about how teachers teach the theory of evolution" lacked "standing to pursue an Establishment Clause claim arising out of her offense at the discussion of religious views" on a website that received governmental funding.  545 F.3d 1126, 1128 (9th Cir. 2008), cert. denied, 129 S. Ct. 1617 (2009).  The court held that plaintiff's interest in "informed participation . . . is not sufficiently differentiated and direct to confer standing on her" as "[a]n interest in informed participation in public discourse is one we hold in common as citizens in a democracy."  Id. at 1133.  In short, the court held that "there is too slight a connection between [plaintiff's] generalized grievance, and the government conduct about which she

complains,"—the government-sponsored website that she visited—"to sustain her standing to proceed." Id.

Similarly, in cases involving prayer in a public school setting, "plaintiffs who have had a sufficient personal connection to establish standing include students (or their parents) who attend the school and regular attendees of the legislative body." Newdow v. Bush, 391 F. Supp. 2d 95, 103 (D.D.C. 2005) (citing Lee v. Weismann, 505 U.S. 577, 586 (1992) (currently enrolled students had standing to challenge graduation prayer); Wynne v. Town of Great Falls, S.C., 376 F.3d 292, 294 (4th Cir. 2004) (plaintiff regularly attended, for roughly two years, monthly town council meetings where prayer was read)). A plaintiff does not have standing, however, to object to prayers at events that the plaintiff does not attend. See Doe v. Madison Sch. Dist. No. 321, 177 F.3d 789, 797 (9th Cir. 1999) (en banc) (no standing for parent of former student to challenge prayer at graduation).

Cases involving the display of religious objects also emphasize direct and unwelcome contact with sectarian symbols, messages, or conduct. In Books v. City of Elkhart, for example, the Seventh Circuit held "that a plaintiff may allege an injury in fact when he is forced to view a religious object that he wishes to avoid but is unable to avoid because of his right or duty to attend the government-owned place where the object is located." 235 F.3d 292, 301 (7th Cir. 2000). By contrast, in Freedom From Religion Foundation, Inc. v. Zielke, plaintiffs failed to allege that they were exposed to a religious monument during their normal routines. 845 F.2d at 1468. The Seventh Circuit, in affirming this Court's dismissal of plaintiffs' complaint for lack of standing, rejected plaintiffs' claim that they suffered a "rebuke to [their] religious beliefs, respecting religion by virtue of being subjected to a governmental endorsement of unequivocally

10

religious precepts and confusions," finding that "this is exactly the type of psychological harm that the Supreme Court has held cannot confer standing on an aggrieved party."  Id. (internal quotation marks omitted) (citing Valley Forge, 454 U.S. at 486-87 n.22).  See also Van Orden v. Perry, 545 U.S. 677, 682 (2005) (plurality opinion) (frequent visitor to capitol grounds had standing to challenge the placement of a Ten Commandments monument on those grounds); Doe v. County of Montgomery, 41 F.3d 1156, 1161 (7th Cir. 1994) (standing properly alleged for plaintiffs who asserted "they must come into direct and unwelcome contact with [a religious sign at a county courthouse] in order to fully participate in their local government and fulfil their legal obligations"); Gonzales v. N. Twp. of Lake County, Ind., 4 F.3d 1412, 1416 (7th Cir. 1993) (plaintiffs had standing to challenge a crucifix "memorial" in a public park because plaintiffs "avoid[ed] the area of the park where the crucifix is displayed" and one plaintiff, a park employee, had "quit his job after the cross was erected").  But see County of Montgomery, 41 F.3d at 1161 (no standing for an attorney to challenge religious sign at courthouse where attorney did not have an office in the county, failed to identify any case that required his presence at the courthouse, and had never even been to the courthouse).

The Newdow court, in finding that a plaintiff lacked standing to challenge inaugural prayers at the 2005 presidential inauguration, nicely summarized how a lack of connections to an event undermines standing:

> Here, Newdow lacks any of the indicia of a personal connection found in other prayer or public-display cases.  Certainly the Presidential Inauguration is a national event, but it is only held once every four years.  In order to come into contact with the allegedly offensive prayers, Newdow must either watch it on television or make a special trip to Washington to observe the prayers in person. He can also avoid the prayers by not watching the television, or by not making the trip to Washington.  But, under either scenario, he does not have the necessary

11

>  personal connection to establish standing.  Newdow does not come into regular
>  contact with the inaugural prayers, nor is he forced to change his typical routine
>  to avoid them. . . . Hence, without a personal connection to the inauguration that
>  would make his injuries particularized and concrete, Newdow's alleged injuries
>  — general offense and outsider status — are akin to the psychological injuries
>  occurring from the observation of offensive conduct that the Supreme Court in
>  <u>Valley Forge</u> deemed insufficient to establish an injury-in-fact.

<u>Newdow</u>, 391 F. Supp. 2d at 104.

Plaintiffs here lack any connection to presidential National Day of Prayer proclamations, as they are not subjected to these proclamations in a direct and unwelcome manner.  To the contrary, plaintiffs have either gone out of their way to seek out those proclamations, or are otherwise aware of the proclamations only through second- or third-hand sources.  For example, plaintiff Anne Gaylor only learned of President Obama's 2009 National Day of Prayer proclamation from her daughter, Annie Laurie Gaylor, who in-turn actively "<u>monitored</u> both the White House website and the National Day of Prayer Taskforce in advance of the 2009 proclamation."  Interrogatory Answers No. 5, at 8 (emphasis added); <u>see also</u> <u>id.</u> No. 6, at 13 ("FFRF also <u>monitors</u> the news under Annie Laurie's direction, and looks for updates at the White House website, NDP Taskforce website and various governor websites.") (emphasis added).[3]  Plaintiff Paul Gaylor's knowledge was third-hand, having learned of President Obama's proclamation through Anne Gaylor (who, of course, only learned of that proclamation through her daughter's "monitor[ing]" of the White House and NDP Task Force websites).  <u>See</u> Interrogatory Answers No. 5, at 8.  Dan Barker, meanwhile, had been diligently "<u>watching the National Day of Prayer for years</u>" because he was "working at the FFRF."  Interrogatory Answers

---

[3] As far back as 1990, Anne Gaylor has encouraged FFRF members actively to "monitor state/church abuses in their area related to the National Day of Prayer, and to respond promptly to them."  Ex. F (<u>Protest National Day of Prayer</u>, Freethought Today, April 1990, at 16).

No. 5, at 8 (emphasis added).  Moreover, Mr. Barker did not have any direct contact with President Obama's National Day of Prayer proclamation; instead, he "wondered if President Obama would incorporate any suggested wording from the National Day of Prayer Taskforce" (he did not) and learned of the proclamation while "watching the news on the internet." Interrogatory Answers No. 5, at 8.  Phyllis Rose only learned of President Obama's 2009 proclamation "while working at the Freedom From Religion Foundation."  Interrogatory Answers No. 5, at 8.  And Jill Dean does not even recall President Obama's 2009 proclamation, much less any specific language contained therein.  See Interrogatory Answers No. 5, at 8.

Plaintiffs provided similar interrogatory answers regarding President Bush's 2008 National Day of Prayer proclamation.  Just as in 2009, the 2008 proclamation "was brought to Anne Gaylor's attention by her daughter, Annie Laurie Gaylor, because FFRF has monitored this activity."  Interrogatory Answers No. 4, at 6 (emphasis added).  As for Annie Laurie Gaylor, "she has routinely monitored" the NDP Task Force website "in the spring for many years" and "corroborated the 2008 proclamation at the White House website, which is her usual practice." Interrogatory Answers No. 4, at 6 (emphasis added).  She also "has been on a 'Focus on the Family' mailing list since sometime in the late 1980s or early 1990s, from which she receives annual mailings about the National Day of Prayer and the Taskforce."  Interrogatory Answers No. 4, at 6.  Just as in 2009, Paul Gaylor learned of the 2008 National Day of Prayer proclamation through Anne Gaylor.  See Interrogatory Answers No. 4, at 6.  As for Dan Barker, he "has been watching the NDP for years" because of his work for FFRF, and affirmatively visited the NDP Task Force's website "to see what wording they were recommending."  Interrogatory Answers No. 4, at 6 (emphasis added).  He actually "heard" that President Bush had issued a proclamation

13

"by telephone from FFRF staff, including co-president Annie Laurie Gaylor," and learned "by looking on the internet that President Bush had incorporated the 'Prayer! America's Strength and Shield' wording." Interrogatory Answers No. 4, at 7. Phyllis Rose learned of President Bush's 2008 proclamation "while working at the Freedom From Religion Foundation," and Jill Dean "became aware" of that proclamation as a result of a prayer breakfast held in Burnett County, Wisconsin. Interrogatory Answers No. 4, at 7.[4]

As the Supreme Court has made clear, a "claim that the Government has violated the Establishment Clause does not provide a special license to roam the country in search of governmental wrongdoing and to reveal their discoveries in federal court." Valley Forge, 454 U.S. at 487. That is, of course, exactly what happened here; armed with general knowledge of the existence of the National Day of Prayer, see Interrogatory Answers No. 3, at 2-5, plaintiffs "monitored" the White House and NDP Task Force websites to search for what they perceived to be Establishment Clause violations, even going so far as to join Focus on the Family mailing lists. Plaintiffs have therefore "roamed" the country figuratively, if not literally. See Interrogatory Answers No. 9, at 44 ("FFRF members have attended NDP or related prayer breakfast events to monitor them . . . [and] have sometimes picketed events held on courthouse steps or municipal buildings") (emphasis added). This type of active monitoring—whether through viewing websites, joining mailing lists, or picketing events—simply does not confer

---

[4] These Interrogatory Answers are consistent with the allegations contained in plaintiffs' Amended Complaint that plaintiffs "informed themselves" of the proclamations. See Am. Compl. ¶ 108 ("Religious endorsement by public officials does not become constitutionally acceptable under the Establishment Clause merely because individuals informed themselves that it was occurring.") (emphasis added); see also id. ¶ 110 ("Knowledge and awareness of government speech endorsing religion, even if sought, does not vitiate or negate the constitutional offense to non-believers . . . .") (emphasis added).

14

Article III standing.  See Valley Forge, 454 U.S. at 486-87; Caldwell v. Caldwell, 545 F.3d at 1131-33; Newdow, 391 F. Supp. 2d at 104.  Were the rule otherwise, a plaintiff could create his or her own standing, an idea the Supreme Court has repeatedly denounced.  See Pennsylvania v. New Jersey, 426 U.S. 660, 664 (1976) (per curiam) (holding that "self-inflicted" injuries do not establish Article III standing); see also McConnell v. FEC, 540 U.S. 93, 228 (2003) (plaintiffs lacked standing to challenge election financing law based on their alleged inability to compete effectively in elections because that alleged inability "stems not from the operation [of the law,] but from their own personal 'wish' not to solicit or accept large contributions"); Buono v. Norton, 212 F. Supp. 2d 1202, 1212 (C.D. Cal. 2002) (noting that plaintiff's intention to visit a display of a cross in a national park "regularly 'because he finds the presence of the cross . . . offensive' may not establish injury in fact" (citing Valley Forge, 454 U.S. at 487)), aff'd, 371 F.3d 543 (9th Cir. 2004).  In short, plaintiffs simply have no connection whatsoever to the National Day of Prayer, other than their own desire to advance their social cause and to litigate this case.

That plaintiffs have no connection—and indeed, can have no connection—to presidential prayer proclamations is not surprising.  The National Day of Prayer statute merely directs "[t]he President [to] issue each year a proclamation" designating a "National Day of Prayer on which the people of the United States may turn to God in prayer and mediation."  36 U.S.C.A. § 119 (emphasis added).  A proclamation is merely "a public and official announcement."  The Random House Dictionary of the English Language, unabridged (2d ed. 1987).  The terms of the

statute are <u>voluntary</u> and merely present an invitation for individuals who are so inclined to pray.[5]

As Justice Kennedy aptly put it, the National Day of Prayer "does not require anyone to pray, of

course." <u>County of Allegheny v. ACLU</u>, 492 U.S. 573, 672 (1989) (Kennedy, J., concurring in

part and dissenting in part).  Because the existence of presidential prayer proclamations may be

ignored with absolutely no consequence whatsoever, there is simply no action by the President or

the White House Press Secretary in issuing or disseminating these proclamations that in any way

can affect plaintiffs, much less "injure" them.

> **B.**     **FFRF Cannot Demonstrate Injury.**

Like the individual plaintiffs, FFRF lacks standing.  FFRF "must satisfy the same

standing test as individuals by suffering from a concrete injury that is fairly traceable to the

defendants' conduct . . . ." <u>Plotkin v. Ryan</u>, No. 99 C 53, 1999 WL 965718, at *5 (N.D. Ill. Sept.

29, 1999), <u>aff'd</u>, 239 F.3d 882 (7th Cir. 2001).  "Our decisions make clear that an organization's

abstract concern with a subject that could be affected by an adjudication does not substitute for

the concrete injury required by Art. III." <u>Simon v. E. Ky. Welfare Rights Org.</u>, 426 U.S. 26, 40

(1976); <u>see also</u> <u>Organ. of Minority Vendors v. Ill. Cent. Gulf R.R.</u>, 579 F. Supp. 574, 589 (N.D.

Ill. 1983) ("[a]n injury to an organization's 'abstract social interests' is not enough to confer

standing").

In this regard, "conflict between a defendant's conduct and an organization's mission is

alone insufficient to establish Article III standing.  Frustration of an organization's objectives 'is

the type of abstract concern that does not impart standing.'" <u>Nat'l Treasury Employees Union v.</u>

---

[5] To that end, President Obama's 2009 National Day of Prayer proclamation explicitly acknowledged the right of individuals to "worship or not worship according to the dictates of their conscience." <u>See</u> Ex. A (2009 Proclamation).

United States, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (quoting Nat'l Taxpayers Union, Inc. v. United States, 68 F.3d 1428, 1433 (D.C. Cir. 1995)); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) (distinguishing injury to an "organization's activities" from a "setback to the organization's abstract social interests").  Demonstrating actual harm to an organization is necessary to ensure that individuals cannot "obtain judicial review of otherwise non-justiciable claims simply by incorporating, drafting a mission statement, and then suing on behalf of the newly formed and extremely interested organization."  Nat'l Treasury Employees Union, 101 F.3d at 1429.

Faced with this standard, plaintiffs attempt to convert FFRF's opposition to the National Day of Prayer into an actual injury to FFRF.  That attempt fails.  When asked to identify expenditures of money by FFRF relating to the National Day of Prayer, FFRF could identify no specific expenditures.  See Interrogatory Answers No. 7, at 39.  And when asked to produce "[d]ocuments sufficient to disclose expenditures made by FFRF regarding the National Day of Prayer," plaintiffs responded that there are "[n]o responsive documents."  Plaintiffs' Responses to Federal Defendants' First Request for Production of Documents (Ex. I) No. 4, at 2.  These failures doom FFRF's standing, since "ordinary expenditures as part of an organization's purpose do not constitute the necessary injury-in-fact required for standing."  Plotkin v. Ryan, 239 F.3d 882, 886 (7th Cir. 2001) (emphasis added); see also Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) (a plaintiff organization must allege that a defendant's actions impede, and therefore make more expensive, the plaintiff group's efforts to promote its interests) (emphasis added).

17

Here, any expenditures by FFRF relating to the National Day of Prayer were nothing other than "ordinary."   FFRF's purpose is to "work[ ] for the separation of state and church . . . [and] to promote the constitutional principle of separation of state and church, and to educate the public on matters relating to nontheism." Ex. B (Welcome to the Freedom From Religion Foundation website); see also Ex. C (Freedom From Religion Foundation pamphlet) (similar).  A pamphlet describing FFRF's "Purpose" states that FFRF "receive[s] and act[s] on complaints of prayers in . . . public programs." Ex. C (Freedom From Religion Foundation pamphlet).  FFRF also "raises national awareness of the need to keep church and state separate" and "generates significant publicity through its legal . . . challenges." Id.; see also Ex. B (Welcome to the Freedom From Religion Foundation website) (FFRF "[f]ile[s] lawsuits!"); Ex. G (FFRF Fundraising Letter) (FFRF goals include mak[ing] a legal fuss!").[6]  To that end, one of the named plaintiffs in this lawsuit has described this case as "splashy" and "highly educational." Ex. H (Sept. 30, 2008 e-mail from Annie Laurie Gaylor to Jill Dean).  In this regard, FFRF's efforts to combat the National Day of Prayer do not constitute a harm to the organization; they merely fulfil the organization's overall social purpose, including its goal of educating the public.

Nor does FFRF have standing as a representative of its members.  "[E]ven in the absence of injury to itself, an association may have standing solely as the representative of its members." Freedom From Religion Found. v. Zielke, 845 F.2d at 1469 (quoting Warth, 422 U.S. at 511).  "An organization has standing to sue [as a representative of its members] if (1) at least one of its members would otherwise have standing; (2) the interests at stake in the litigation are germane to

---

[6] FFRF's fundraising letter also indicated that the organization is using its litigation efforts—including specifically this National Day of Prayer lawsuit—as part of its fundraising efforts.  See Ex. G (FFRF Fundraising Letter).

18

the organization's purpose; and (3) neither the claim asserted nor the relief requested requires an individual member's participation in the lawsuit." Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918, 924 (7th Cir. 2008), cert. denied sub nom., Franklin County Power of Ill., LLC v. Sierra Club, 120 S. Ct. 2866 (2009); see also Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977). For the reasons set forth above, none of the named plaintiffs have individual standing. As for FFRF's other members, many of them—like the named plaintiffs—may very well oppose the National Day of Prayer. And it is equally likely that their opinions are very strongly held. However, the same principles that preclude standing by the named plaintiffs—a lack of a connection to presidential National Day of Prayer proclamations themselves—also preclude standing by any of FFRF's other members.

### C.  Plaintiffs' "Injuries," If Any, Are Not Redressable.

Even if plaintiffs have demonstrated an "injury" arising from obtaining presidential National Day of Prayer proclamations, any such injury cannot be redressed by this Court. Plaintiffs seek a declaration that "prayer proclamations disseminated by Presidential Press Secretaries violate the Establishment Clause" and an injunction "enjoining their publication." Am. Compl., Prayer for Relief ¶ B. Apparently applying a "belts and suspenders" approach, plaintiffs also seek a "judgment enjoining the defendants from issuing and disseminating further Prayer Day Proclamations and making designations of official days of prayer." Am. Compl., Prayer for Relief ¶ F.

As for prior presidential National Day of Prayer proclamations, plaintiffs' request for a declaratory judgment is moot. Any declaratory judgment or injunctive relief regarding future presidential National Day of Prayer proclamations would be entirely speculative, as this Court

19

cannot begin to predict the substance of future proclamations. Finally, plaintiffs' request for relief against the federal defendants—which includes the President of the United States of America—raises enormous separation of powers concerns.

### 1. Plaintiffs' Claim Is Moot With Regard to Past Presidential Proclamations.

Article III of the Constitution allows federal courts to decide only cases or controversies. See, e.g., Burke v. Barnes, 479 U.S. 361, 363 (1987). A live case or controversy must exist not only when a case is filed, but "at the time that a federal court decides the case." Id.; see also Arizonans for Official English v. Arizona, 520 U.S. 43, 67 (1997) ("[t]o qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed'") (quoting Preiser v. Newkirk, 422 U.S. 395, 401 (1975)). Thus, when a case becomes moot, i.e., "when the issues presented are no longer 'live' or the parties lack a cognizable interest in the outcome,'" U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 396 (1980) (citation omitted), the court no longer has power to decide the matter. See Protestant Mem'l Med. Ctr., Inc. v. Maram, 471 F.3d 724, 729 (7th Cir. 2006) ("federal courts may not give opinions upon moot questions or abstract propositions") (citation omitted). The jurisdictional prerequisite of a "case or controversy" applies with equal force to requests for declaratory relief. See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240 (1937) (Declaratory Judgment Act "is operative only in respect to controversies which are such in the constitutional sense"); Deveraux v. City of Chicago, 14 F.3d 328, 330 (7th Cir. 1994) ("courts may not exercise [the] discretionary power [of the Declaratory Judgment Act] in the absence of an 'actual controversy' between the parties" (quoting 28 U.S.C. § 2201)).

Among the relief plaintiffs seek is a "judgment declaring that prayer proclamations disseminated by Presidential Press Secretaries violate the Establishment Clause."  Am. Compl., Prayer for Relief, ¶ B.  To the extent plaintiffs seek such a declaration regarding any past presidential prayer proclamations, such a claim is moot.  This Court cannot provide any meaningful relief regarding President Bush's 2008 National Day of Prayer proclamation (on which the allegations of plaintiffs' Amended Complaint are based),[7] or on President Obama's 2009 National Day of Prayer proclamation.  Those proclamations have already been disseminated (and published in the federal register); they cannot now be "undone."

### 2. Plaintiffs' Request for Declaratory and Injunctive Relief Would Require this Court to Issue an Advisory Opinion on the Substance of Future Prayer Proclamations.

In addition to seeking a declaration that the National Day of Prayer Statute, Pub. L. 100-307, is unconstitutional,[8] plaintiffs' Amended Complaint seeks an injunction prohibiting the enforcement of that statute.  See Am. Compl., Prayer for Relief ¶ A.  Of course, a President does not need express Congressional direction or authorization in order to issue a proclamation, including a proclamation establishing a day of prayer.  Accordingly, and in an apparent attempt

---

[7] Indeed, plaintiffs' claims regarding President Bush's proclamations were moot the moment plaintiffs filed their first complaint in October, 2008—nearly six months after President Bush's 2008 National Day of Prayer proclamation.  The timing of plaintiffs' Complaint is peculiar, as plaintiffs waited until near the end of President Bush's second term—and until after he issued his final National Day of Prayer proclamation—before seeking judicial review of those proclamations.

[8] Even if plaintiffs could demonstrate a concrete and particularized injury and, hence, standing for purposes of their facial challenge to the National Day of Prayer statute, they would still need to demonstrate that there are no circumstances pursuant to which the statute could be applied in a manner consistent with the Establishment Clause.  For the reasons set forth in Part II.B, infra, plaintiffs cannot meet that burden.

to prohibit the President from issuing prayer proclamations even if this Court finds that the underlying National Day of Prayer statute is unconstitutional, plaintiffs seek a "judgment enjoining the defendants"—including the President of the United States of America—"from issuing and disseminating further Prayer Day Proclamations and making designations of official days of prayer." Am. Compl., Prayer for Relief ¶ F; see also id. ¶ B (seeking injunction enjoining dissemination of presidential proclamations). This Court cannot grant that relief.

First, if this Court finds that the National Day of Prayer statute is unconstitutional, then it is unclear whether President Obama in the future (or any other future President, for that matter) will, sua sponte, issue a prayer day proclamation. Plaintiffs' injury allegations in this regard are therefore entirely hypothetical. See City of Los Angeles v. Lyons, 461 U.S. 95, 105-110 (1983).

Even assuming that Presidents wish to issue prayer day proclamations in the future, this Court cannot begin to predict the substance of those proclamations, whether by President Obama or any subsequent President. This was precisely the issue faced by the Newdow court in the context of inaugural prayers. There, the court found that it "cannot now rule on the constitutionality of prayers yet unspoken at future inaugurations of presidents who will make their own assessments and choices with respect to the inclusion of prayer." Newdow, 391 F. Supp. 2d at 108; see also Lyons, 461 U.S. at 105-110. So too, here: This Court would have to speculate on the content of future prayer proclamations by this and future Presidents. This Court cannot issue an injunction regarding such an "abstract proposition[ ]." Protestant Mem'l Med. Ctr., 471 F.3d at 729.

22

**3.      Plaintiffs' Request for Relief Raises Enormous Separation of Powers Concerns.**

Plaintiffs requested relief raises another fundamental problem:  They are seeking both a declaratory judgment and an injunction against the President.  Such relief raises enormous separation of powers concerns and should give this Court pause.

No federal court has Article III power to direct the President to take any official presidential act or to refrain from taking any such act.  As the Supreme Court explained in Mississippi v. Johnson, 71 U.S. 475 (1866), "[t]he Congress is the legislative department of the government; the President is the executive department.  Neither can be restrained in its action by the judicial department; though the acts of both, when performed, are, in proper cases, subject to its cognizance."  Id. at 500.[9]  More recently, a plurality of the Supreme Court has noted that "this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties."  Franklin v. Massachusetts, 505 U.S. 788, 802-03 (1992) (plurality opinion) (quoting Mississippi v. Johnson, 71 U.S. 475, 501 (1866)); see also Clinton v. Jones, 520 U.S. 681, 718-19 (1997) (Breyer, J., concurring) ("constitutional principles counsel caution when judges consider an order that directly requires the President properly to carry out his official duties"); Swan v. Clinton, 100 F.3d 973, 978 (D.C. Cir. 1996) (citing Franklin to explain why injunctive relief against the President personally is disfavored).  And while the Court in Franklin did not reach the question on the facts of that case of whether an injunction against the President was

---

[9] By noting that a court may not "restrain" the President or Congress in their official functions, but may take "cognizance" of presidential or congressional acts, the Court is describing the difference between injunctive and declaratory relief, which are beyond judicial capacity, and damages, which are available where there is a waiver of sovereign immunity and other prerequisites are met.  Plaintiffs do not seek damages in this case.

appropriate, the Court nonetheless noted that "the District Court's grant of injunctive relief against the President himself is extraordinary, and should have raised judicial eyebrows." Franklin, 505 U.S. at 802 (plurality opinion) (emphasis added).[10]

This line of authority regarding injunctive relief also bears directly on plaintiffs' request for a declaratory judgment, as a declaratory judgment against the President raises the exact same separation of powers concerns. See Swan, 100 F.3d at 976 n.1 ("Although the following discussion is couched in terms of our ability to grant injunctive relief against the President, similar considerations regarding a court's power to issue relief against the President himself apply to Swan's request for a declaratory judgment"). As Justice Scalia has put it:

> For similar reasons, I think we cannot issue a declaratory judgment against the President. It is incompatible with his constitutional position that he be compelled personally to defend his executive actions before a court. . . . The President's immunity from such judicial relief is "a functionally mandated incident of the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history." Permitting declaratory or injunctive relief against the President personally would not only distract him from his constitutional responsibility to "take Care that the Laws be faithfully executed," U.S. Const., Art. II, § 3, but, as more and more disgruntled plaintiffs add his name to their complaints, would produce needless head-on confrontations between district judges and the Chief Executive.

Franklin, 505 U.S. at 827-28 (Scalia, J., concurring) (emphasis added) (quoting Nixon v. Fitzgerald, 457 U.S. 731, 749 (1982) (internal footnote omitted)).

Applying this analysis, the court in Newdow concluded that plaintiff's alleged injuries arising from Inauguration Day prayer simply were not redressable by the court. See Newdow,

---

[10] This is not to say that Presidential action is beyond judicial review, as "[r]eview of the legality of Presidential action can ordinarily be obtained in a suit seeking to enjoin the officers who attempt to enforce the President's directive." Franklin, 505 U.S. at 828 (Scalia, J., concurring) (citing Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579 (1952); Panama Refining Co. v. Ryan, 293 U.S. 388 (1935)).

391 F. Supp. 2d at 104-07.[11]  So, too, should this Court.  Plaintiffs' (self-inflicted) "injury"

arising from presidential National Day of Prayer proclamations cannot be redressed by an

injunction prohibiting the President from making a proclamation, or by defining through a

declaratory judgment what the President can and cannot say in his proclamations.  Such relief is

simply unavailable.[12]

*          *          *

For the foregoing reasons, plaintiffs lack standing to bring this lawsuit.  Accordingly, this

Court need not—and should not—reach the merits of plaintiffs' claims against the federal

defendants.  Nonetheless, and for the reasons set forth below, if this Court does reach the merits

of plaintiffs' claims, it should grant summary judgment to the federal defendants.

## II.    THE NATIONAL DAY OF PRAYER STATUTE IS CONSTITUTIONAL.

### A.    The Supreme Court Has Referenced the National Day of Prayer as Constitutional in the Context of Another Establishment Clause Challenge.

Plaintiffs ask the Court "to judge the constitutionality of an Act of Congress—'the

gravest and most delicate duty that [a court] is called upon to perform.'"  Rostker v. Goldberg,

453 U.S. 57, 64 (1981) (citation omitted).  It is well established that Acts of Congress are

presumptively constitutional.  See United States v. Nat'l Dairy Prods. Corp., 372 U.S. 29, 32

---

[11] In so holding, the court noted that neither it nor any of the parties had "identified a case in which a court actually issued an injunction or declaratory judgment against the President for acts undertaken in his official capacity."  Newdow, 391 F. Supp. 2d at 106.

[12] At minimum, this Court should decline to exercise its "discretionary power" to issue a declaratory judgment against the President under these circumstances.  See Deveraux v. City of Chicago, 14 F.3d at 330; see also North Shore Gas Co. v. Salomon, Inc., 152 F.3d 642, 647 (7th Cir. 1998) (Declaratory Judgment Act "does not obligate courts to issue declaratory judgments. Instead, district courts have wide discretion to decline to hear such actions.").

(1963).  This Court should be especially cognizant of that presumption here; the tradition of a

National Day of Prayer traces its roots to the founding of our country, and the statute formally

authorizing the National Day of Prayer dates back half a century.

Moreover, the Supreme Court and the Seventh Circuit have both discussed the

constitutionality of the National Day of Prayer in favorable terms.  In Lynch v. Donnelly, 465

U.S. 668 (1984), the Court unreservedly described the National Day of Prayer as consistent with

the Establishment Clause and used it as a benchmark to measure the constitutionality of other

government action.  Specifically, the Court held that the Establishment Clause permits a city to

include a nativity scene as part of its Christmas display.  In reasoning that the creche permissibly

"depicts the historical origins of this traditional event long recognized as a National Holiday,"

465 U.S. at 680, the Court noted that

> There are countless other illustrations of the Government's
> acknowledgment of our religious heritage and governmental sponsorship of
> graphic manifestations of that heritage.  Congress has directed the President to
> proclaim a National Day of Prayer each year "on which [day] the people of the
> United States may turn to God in prayer and meditation at churches, in groups,
> and as individuals."  . . .  Our Presidents have repeatedly issued such
> Proclamations.  Presidential Proclamations and messages have also issued to
> commemorate Jewish Heritage Week . . . and the Jewish High Holy Days . . . .
> One cannot even look at this brief résumé without finding that our history is
> pervaded by expressions of religious beliefs . . . .  Equally pervasive is the
> evidence of accommodation of all faiths and all forms of religious expression, and
> hostility toward none.  Through this accommodation, as Justice Douglas observed,
> governmental action has "follow[ed] the best of our traditions" and "respect[ed]
> the religious nature of our people."

Lynch, 465 U.S. at 677-78 (emphasis added) (internal citations omitted) (quoting Zorach v.

Clauson, 343 U.S. 306, 314 (1952) (internal footnote omitted)).[13]  The Seventh Circuit has cited

---

[13]  In County of Allegheny v. ACLU, Justice Kennedy similarly described the National
Day of Prayer as one of several "of our traditional practices recognizing the part religion plays in

26

this very language, relying upon <u>Lynch</u> and its approval of the National Day of Prayer to turn

back a challenge by FFRF to a resolution by the Illinois House of Representatives authorizing the

construction of a "prayer room" in the Illinois state capitol:

> In <u>Lynch</u>, the Court listed a series of . . . acknowledgments, including
> congressional proclamations alluding to the religious significance of national
> holidays and presidential proclamations recognizing a "National Day of Prayer,"
> as illustrations of appropriate governmental recognitions of religious faith.

<u>Van Zandt v. Thompson</u>, 839 F.2d 1215, 1221 (7th Cir. 1988) (citing <u>Lynch</u>, 465 U.S. at 676-

78).

Although <u>Lynch</u> did not involve a direct challenge to the National Day of Prayer, that

decision (and the Seventh Circuit's citation to it) is instructive on the National Day of Prayer's

constitutionality.  "When an opinion issues for the [Supreme] Court, it is not only the result but

also those portions of the opinion necessary to that result by which we are bound."  <u>Seminole</u>

<u>Tribe v. Florida</u>, 517 U.S. 44, 67 (1996).  As the Seventh Circuit has observed, "an inferior court

had best respect what the majority [in a Supreme Court decision] says rather than read between

the lines.  If the [Supreme] Court proclaims that a practice is consistent with the establishment

---

our society."  <u>Id.</u>, 492 U.S. 573, 670, 672 (1989) (Kennedy, J., concurring in part and dissenting
in part).  However, Justice Blackmun, writing for the Court's majority and responding to Justice
Kennedy's opinion, noted in a footnote that, "as [proclaiming a National Day of Prayer] is not
before us, we express no judgment about its constitutionality."  <u>Id.</u> at 603 n.52.  Nonetheless, and
subsequent to the Supreme Court's decision in <u>County of Allegheny</u>, Judge Manion referred to
<u>Lynch</u>'s reference to the National Day of Prayer as an "implic[it] acknowledg[ment] [of] the
constitutionality of [that] practice."  <u>Books v. City of Elkhart</u>, 235 F.3d at 323 (Manion, J.,
concurring in part and dissenting in part); <u>see also id.</u> at 325 (Manion, J., concurring in part and
dissenting in part) (describing presidential proclamations for a National Day of Prayer as an
"accepted practice[ ]").

clause, we take its assurances seriously.  If the Justices are just pulling our leg, let them say so."

Sherman v. Cmty. Consol. Sch. Dist. 21, 980 F.2d 437, 448 (7th Cir. 1992).[14]

Moreover, the Seventh Circuit has spoken independently of Lynch (and more recently

than County of Allegheny) on the National Day of Prayer.  In DeBoer v. Village of Oak Park, the

court analyzed whether a village could exclude from its village hall, pursuant to a use policy, a

group that wanted to use village hall facilities for a National Day of Prayer assembly.  In holding

that the village's denial of plaintiffs' application to use the village hall constituted viewpoint

discrimination, the court rejected "[t]he notion that religious prayer and worship is not properly

viewed as a method of discussing civic subject matter" and noted that "prayers and the

invocation of divine guidance have been accepted as part of American political discourse

throughout the history of this Republic."  Id., 267 F.3d 558, 569, 570 (7th Cir. 2001).  The court

then went on to describe the National Day of Prayer in very positive terms:

> The civic nature of the NDP assembly as part of that well-established
> practice is particularly evident.  The event was a part of a national observance
> designed to afford citizens who believe that prayer is an important component of
> civic obligation the opportunity to discharge that obligation by praying together
> for the welfare of their country.  Indeed, it is a day designated for this purpose by
> Congress, and recognized each year by the President in a proclamation.

---

[14] Plaintiffs may attempt to cite subsequent Supreme Court decisions in Lee v. Weisman, 505 U.S. 577 (1992), and Santa Fe Independent School District v. Doe, 530 U.S. 290 (2000), for the proposition that the Supreme Court has looked upon state-sponsored prayer with disfavor. However, both of those cases involved prayer in a public school context.  See Lee, 505 U.S. at 599 (holding unconstitutional a religious exercise at graduation where "young graduates who object are induced to conform"); Santa Fe, 530 U.S. at 317 (policy that "creates the perception of encouraging the delivery of prayer at a series of important school events" unconstitutional).  As the Court in Lee made clear, however, "there are heightened concerns with protecting freedom of conscience from subtle coercive pressure in the elementary and secondary public schools."  Lee, 505 U.S. at 592.  Justice Kennedy, who wrote the opinion for the Court in Lee, also wrote the separate opinion in County of Allegheny recognizing that the National Day of Prayer is a traditional practice.  See n.14, supra.

Id. at 570 (internal citation omitted).  See also Books v. City of Elkhart, 235 F.3d at 325

(Manion, J., concurring in part and dissenting in part) (describing presidential proclamations for

a National Day of Prayer as an "accepted practice[ ]"); Am. Jewish Cong. v. City of Chicago, 827

F.2d 120, 133 (7th Cir. 1987) (Easterbrook, J., dissenting) (describing National Day of Prayer in

favorable terms).

      That the Supreme Court and the Seventh Circuit have acknowledged the well-settled

nature of the National Day of Prayer is not surprising; while the statute creating the National Day

of Prayer dates to 1952, a public day of prayer dates to the founding of our nation.  The First

Congress—the same Congress that drafted the Establishment Clause—adopted a policy of

selecting a paid chaplain to open each session of Congress with prayer.  See Marsh v. Chambers,

463 U.S. 783, 787 (1983).  That same Congress, one day after the Establishment Clause was

proposed, also urged President Washington "to proclaim 'a day of public thanksgiving and

prayer, to be observed by acknowledging with grateful hearts, the many and signal favours of

Almighty God."  Lynch, 465 U.S. at 675 n.2 (emphasis added) (citations omitted).[15]  President

Washington responded by proclaiming November 26, 1789, a day of thanksgiving to "offer[ ] our

prayers and supplications to the Great Lord and Ruler of Nations, and beseech Him to pardon our

national and other transgressions."  Id. (citation omitted).  Every President, except Thomas

Jefferson, has since declared a Thanksgiving Day holiday.  See S. Epstein, Rethinking the

---

    [15] In the Establishment Clause context in particular, the Supreme Court has recognized
that actions of the First Congress are "contemporaneous and weighty evidence" of the
Constitution's "true meaning."  Marsh, 463 U.S. at 790 (citation and quotation marks omitted).
See also United States v. Curtiss-Wright Export Corp., 299 U.S. 304, 328 (1936) (construction
"placed upon the Constitution . . . by the men who were contemporary with its formation" is
"almost conclusive") (citation omitted).

Constitutionality of Ceremonial Deism, 96 Colum. L. Rev. 2083, 2113 & nn. 174-182 (1996) (listing Thanksgiving proclamations).  And today, Christmas and Thanksgiving are proclaimed as national holidays:  "by Acts of Congress, it has long been the practice that federal employees are released from duties on these National Holidays, while being paid from the same public revenues that provide the compensation of the Chaplains of the Senate and the House and the military services."  Lynch, 465 U.S. at 676.  "Thus, it is clear that the Government has long recognized — indeed it has subsidized — holidays with religious significance."  Id.

This Court need not proceed any further, including application of the Supreme Court's test in Lemon v. Kurtzman, 403 U.S. 602 (1971), in order to determine that the National Day of Prayer is constitutional.  For example, in Van Orden v. Perry, Chief Justice Rehnquist found that the Lemon test was "not useful" in determining the constitutionality of a Ten Commandments monument, turning instead to "the nature of the monument and . . . our Nation's history."  545 U.S. at 686 (plurality opinion).  So too, here:  The nature of the National Day of Prayer, when reviewed in the context of our nation's history, establishes its constitutionality.[16]

_____

[16] The fact that the National Day of Prayer has been codified since 1952, see Pub. L. No. 82-324, 66 Stat. 64 (1952), yet was challenged for the first time in 2008, also reveals that the statute does not violate the Establishment Clause.  Justice Breyer described a similar 40-year gap in challenging the placement of a Ten Commandments monument on the grounds of the Texas State Capitol as being determinative that the monument did not violate the Establishment Clause:

> those 40 years suggest more strongly than can any set of formulaic tests that few individuals, whatever their system of beliefs, are likely to have understood the monument as amounting, in any significantly detrimental way, to a government effort to favor a particular religious sect, primarily to promote religion over nonreligion, to "engage in" any "religious practic[e]," to "compel" any "religious practic[e]," or to "work deterrence" of any "religious belief."  Those 40 years suggest that the public visiting the capitol grounds has considered the religious aspect of the tablets' message as part of what is a broader moral and historical message reflective of a cultural heritage.

**B.     Under the Supreme Court's Test in <u>Lemon v. Kurtzman</u>, the National Day of Prayer Statute Is Constitutional.**

Even if this Court applies the <u>Lemon</u> test, the National Day of Prayer statute easily passes.  "Specifically, a government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion."  <u>Vision Church v. Village of Long Grove</u>, 468 F.3d 975, 991 (7th Cir. 2006) (citing <u>Lemon</u>, 403 U.S. at 612-13), <u>cert. denied</u>, 128 S. Ct. 77 (2007).

Plaintiffs challenge the constitutionality of the National Day of Prayer statute, as well as proclamations issued thereunder.  However, "plaintiff[s] can only succeed in [their] facial challenge by 'establish[ing] that no set of circumstances exists under which the Act would be valid,' <u>i.e.</u>, that the law is unconstitutional in all its applications."  <u>Wash. State Grange v. Wash. State Republican Party</u>, 128 S. Ct. 1184, 1190 (2008) (quoting <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987)).  "In determining whether a law is facially invalid, we must be careful not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." <u>Id.</u>

Plaintiffs cannot establish that there is "no set of circumstances" whereby application of the National Day of Prayer statute is constitutional.  To the contrary, President Obama's 2009 National Day of Prayer proclamation—which is the most recent presidential National Day of Prayer proclamation and the only proclamation by the current Chief Executive—demonstrates

―――――――――――――

<u>Van Orden</u>, 545 U.S. at 702-03 (Breyer, J., concurring) (internal citation omitted).

how the National Day of Prayer statute, including specific proclamations issued thereunder, can be applied in a manner consistent with the Establishment Clause.[17]

### 1.        The National Day of Prayer Statute Has a Secular Purpose.

First, the National Day of Prayer statute has a valid "secular purpose."  In deciding whether a statue has a valid secular purpose, "a legislature's stated reasons will generally get deference."  McCreary County v. ACLU of Kentucky, 545 U.S. 844, 863 (2005).  "[T]he secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective."  Id.; see also Vision Church, 468 F.3d at 992 (courts must ensure that government's characterization is "sincere").

Under this standard, the National Day of Prayer has a clear secular purpose.  The Seventh Circuit has stated that the National Day of Prayer is a "generally accepted and constitutionally permissible acknowledgment[ ] of the role of religion in American life."  Van Zandt v. Thompson, 839 F.2d 1215, 1221 (7th Cir. 1988) (citing Lynch, 465 U.S. at 676-78)).  That, by itself, should end the "purpose" inquiry.

The legislative history of the National Day of Prayer also confirms its secular purpose.  The official "purpose" of the original 1952 National Day of Prayer legislation was merely "to direct the President to proclaim a National Day of Prayer each year."  S. Rep. No. 82-1389 (1952).  And the statement accompanying the Senate report for the National Day of Prayer makes

_____

[17] By using President Obama's 2009 proclamation as an example of how presidential National Day of Prayer proclamations are constitutional, the federal defendants do not concede that President Bush's 2008 National Day of Prayer proclamation was unconstitutional.  For the reasons set forth in the Memorandum of Law in Support of the Federal Defendants' Motion to Dismiss the First Amended Complaint at 26-37 (Dkt. No. 48, 03/09/2009), that proclamation also passes constitutional muster.

clear that the National Day of Prayer is merely a historical acknowledgment of the role of prayer

in society:

> From its beginning the United States of America has been a nation fully cognizant of the value and power of prayer. In the early days of colonization, the Pilgrims frequently engaged in prayer. When the delegates to the Constitutional Convention encountered difficulties in the writing and formation of a Constitution for this Nation, prayer was suggested and became an established practice at succeeding sessions. Today, both Houses of Congress are opened daily with prayer.
>
> Prayer has indeed been a vital force in the growth and development of this Nation. It would certainly be appropriate if, pursuant to this resolution and the proclamation it urges, the people of this country were to unite in a day of prayer each year, each in accordance with his own religious faith, thus reaffirming in a dramatic manner the deep religious conviction which has prevailed throughout the history of the United States.

Id. To that end, President Obama's 2009 National Day of Prayer proclamation specifically

acknowledges the historical role of prayer in our society:

> Throughout our Nation's history, Americans have come together in moments of great challenge and uncertainty to humble themselves in prayer. In 1775, as the Continental Congress began the task of forging a new Nation, colonists were asked to observe a day of quiet humiliation and prayer. Almost a century later, as the flames of the Civil War burned from north to south, President Lincoln and the Congress once again asked the American people to pray as the fate of their Nation hung in the balance.
>
> It is in that spirit of unity and reflection that we once again designate the first Thursday in May as the National Day of Prayer. Let us remember those who came before us, and let us each give thanks for the courage and compassion shown by so many in this country and around the world.

Ex. A (2009 Proclamation). This passage, which constitutes the opening paragraphs of President

Obama's 2009 proclamation, recites historical fact and acknowledges "those who came before

us."

33

The Supreme Court has stated time and again that official acknowledgments of the Nation's religious history and enduring religious character do not violate the Establishment Clause.  "There is an underbroken history of official acknowledgment of the role of religion in American life from at least 1789.'"  Van Orden, 545 U.S. at 686 (plurality opinion) (quoting Lynch, 465 U.S. at 674) (emphasis added)).  Indeed, the Court has long refused to construe the Establishment Clause so as to "press the concept of separation of Church and state to . . . extremes" by invalidating "references to the Almighty that run through our laws, our public rituals, [and] our ceremonies."  Zorach, 343 U.S. at 313.  Such "public acknowledgment of the [Nation's] religious heritage long officially recognized by the three constitutional branches of government," Lynch, 465 U.S. at 678, simply takes note of the historical facts that "religion permeates our history," Edwards v. Aguillard, 482 U.S. 578, 607 (1987) (Powell, J., concurring).  As Justice Kennedy has put it, "[g]overnment policies of accommodation, acknowledgment, and support for religion are an accepted part of our political and cultural heritage," and "the Establishment Clause permits government some latitude in recognizing and accommodating the central role religion plays in our society."  County of Allegheny, 492 U.S. at 657 (Kennedy, J., concurring in part and dissenting in part).  "Any approach less sensitive to our heritage would border on latent hostility toward religion, as it would require government in all its multifaceted roles to acknowledge only the secular, to the exclusion and so to the detriment of the religious."  Id.

### 2.       The National Day of Prayer Statute's Primary Effect Is Neither to Advance Nor Inhibit Religion.

For government action to violate the second <u>Lemon</u> prong, it must so advance religion as to amount to an endorsement of religion.  See <u>County of Allegheny</u>, 492 U.S. at 597; <u>Fleischfresser v. Dirs. of Sch. Dist. 200</u>, 15 F.3d 680, 688 (7th Cir. 1994).  Under this prong, a court "asks whether, irrespective of government's actual purpose, the practice under review in fact conveys a message of endorsement or disapproval."  <u>Books v. City of Elkhart</u>, 235 F.3d at 302 (internal quotation marks omitted) (quoting <u>Freedom From Religion Found., Inc. v. City of Marshfield</u>, 203 F.3d 487, 493 (7th Cir. 2000)).[18]  However, the Supreme Court does not "adhere to the principle that the Establishment Clause bars any and all governmental preference for religion over irreligion."  <u>Van Orden</u>, 545 U.S. at 684 n.3 (plurality opinion).  Courts apply a "reasonable person" standard under this prong.  See, e.g., <u>Vision Church</u>, 468 F.3d at 993 ("our focus is not on the intent of the city, but on whether a reasonable person, apprised of the circumstances . . . would conclude that the [government's conduct] amounted to an endorsement of religion"); <u>Books v. City of Elkhart</u>, 235 F.3d at 304 ("when employing [the second <u>Lemon</u> prong], we are charged with the responsibility of assessing the totality of the circumstances surrounding the display to determine whether a reasonable person would believe that the display amounts to an endorsement of religion.").

Here, the "primary effect" of the National Day of Prayer statute is neither to advance nor inhibit religion; it certainly does not endorse it.  All that the statute requires is the President to

---

[18] In this regard, the "purpose" and "effect" prongs can be read together.  See <u>Books v. City of Elkhart</u>, 235 F.3d at 301 (noting that "the Supreme Court has, on occasion, articulated these first two [<u>Lemon</u>] prongs in terms of an 'endorsement' test") (citing <u>County of Allegheny</u>, 492 U.S. at 592).  See generally <u>Lynch</u>, 465 U.S. at 687-94 (O'Connor, J., concurring).

35

issue a proclamation (i.e., a public announcement) that invites people to pray, if they want to.

See 36 U.S.C.A. § 119 ("The President shall issue each year a proclamation designating the first Thursday in May as a National Day of Prayer on which the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals.") (emphasis added); County of Allegheny, 492 U.S. at 672 (the National Day of Prayer does not "require anyone to pray, of course") (Kennedy, J., concurring in part and dissenting in part); Am. Jewish Cong., 827 F.2d at 133 (Easterbrook, J., dissenting) (National Day of Prayer has no coercive effect).

To that end, President Obama's 2009 proclamation explicitly acknowledged the voluntary nature of prayer in our society:

> On this day of unity and prayer, let us also honor the service and sacrifice of the men and women of the United States Armed Forces.  We celebrate their commitment to uphold our highest ideals, and we recognize that it is because of them that we continue to live in a Nation where people of all faiths can worship or not worship according to the dictates of their conscience.

Ex. A (2009 Proclamation) (emphasis added).  In short, a reasonable person—whether reading the statute's permissive language noting that prayer proclamations designate days in which people "may" pray or President Obama's implementation of that statute by explicitly noting the fundamental freedom to "not worship"—would conclude that the National Day of Prayer statute does not advance religion.

Moreover, National Day of Prayer proclamations are indistinguishable from many other historically accepted presidential proclamations that also incorporate elements of prayer.  This Court need look no further than Memorial Day and Thanksgiving Day proclamations.  As to the former, Congress requests the President

36

> to issue a proclamation calling upon the people of the United States to observe
> each . . . Memorial Day, by praying, each in accordance with his religious faith,
> for permanent peace; designating a period during such day in which all the people
> of the United States may unite in prayer at such time; and calling upon the
> newspapers, radio stations, and all other mediums of information to join in
> observing such day and period of prayer.

Joint Resolution Requesting the President to Issue a Proclamation Designating May 30,
Memorial Day, as a Day for a Nation-Wide Prayer for Peace, Pub. L. No. 81-512, 64 Stat. 158
(1950).  Presidents have issued such proclamations for a Memorial Day "Prayer for Peace" to,
among other things, "pray for God's grace upon" the "selfless service of our fallen heroes," and
to "pray for all of our military personnel and veterans, their families, and all those who have lost
loved ones in the defense of our freedom and safety."[19]  Similarly, President Bush's most recent
Thanksgiving Day proclamation—in keeping with the historical tradition for that holiday—asked
that all Americans "give thanks to God who blessed our Nation's first days and who blesses us
today."[20]  The Supreme Court has recognized the constitutionality of such pronouncements.  See
Lynch, 465 U.S. at 686 (noting that "Executive Orders and other official announcements of
Presidents and of the Congress have proclaimed both Christmas and Thanksgiving National
Holidays in religious terms.").  More to the point, as Justice Stevens has noted, "although
Thanksgiving Day proclamations . . . undoubtedly seem official, in most circumstances they will
not constitute the sort of governmental endorsement of religion at which the separation of church
and state is aimed."  Van Orden, 545 U.S. at 723 (Stevens, J., dissenting) (emphasis added).  The

---

[19] Proclamation 8385, Prayer for Peace, Memorial Day 2009 (May 22, 2009), 74 Fed.
Reg. 25,383 (May 27, 2009).

[20] Proclamation 8322, Thanksgiving Day, 2009 (Nov. 21, 2008), 73 Fed. Reg. 72,301
(Nov. 26, 2008).  That proclamation also acknowledges the central role that God played in the
Thanksgiving Day proclamations of Presidents Washington and Lincoln.  See id.

exact same can be said for "National Day of Prayer proclamations" as for "Thanksgiving Day proclamations."

### 3.   The National Day of Prayer Statute Does Not Foster An Excessive Entanglement With Religion.

The third <u>Lemon</u> prong prohibits "excessive government entanglement with religion," <u>Lemon</u>, 403 U.S. at 613, and requires a court to examine "the character and purposes of the institutions that are benefitted, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." <u>Id.</u> at 615.  Under this prong, a plaintiff must allege "'sponsorship, financial support, and active involvement of the sovereign in religious activity.'"  <u>Vision Church</u>, 468 F.3d at 995 (quoting <u>Jimmy Swaggart Ministries v. Bd. of Equalization</u>, 493 U.S. 378, 393 (1990)).[21]  A <u>de minimis</u> advancement or inhibition of religion is insufficient to satisfy the entanglement prong.  <u>See</u> <u>Vision Church</u>, 468 F.3d at 995.  "The general rule is that, to constitute excessive entanglement, the government action must involve 'intrusive government participation in, supervision of, or inquiry into religious affairs.'"  <u>Id.</u> (quoting <u>United States v. Indianapolis Baptist Temple</u>, 224 F.3d 627, 631 (7th Cir. 2000)).

The National Day of Prayer statute does not foster an excessive entanglement with religion.  As noted previously, the National Day of Prayer statute merely requires the issuance of presidential proclamations.  That is not entanglement.

Any lingering doubt regarding the "entanglement" prong can be resolved through reference to President Obama's 2009 National Day of Prayer proclamation.  Plaintiffs have made

---

[21] "Cases that turn on the entanglement prong of the <u>Lemon</u> test typically involve some form of state aid to religious institutions (such as parochial schools) or related schemes requiring state monitoring of religious entities."  <u>Metzl v. Leininger</u>, 850 F. Supp. 740, 749-50 (N.D. Ill. 1994) (collecting cases), <u>aff'd</u>, 57 F.3d 618 (7th Cir. 1995).

much of the fact that President Bush's 2008 National Day of Prayer proclamation incorporated the "theme" suggested by the NDP Task Force.[22]  Not so with President Obama's proclamation. In 2009, the NDP Task Force's theme was "Prayer . . . America's Hope."  See Ex. D (Feb. 17, 2009 letter from Shirley Dobson to President Barack Obama).  President Obama's proclamation, however, did not incorporate that "theme," or any other suggested language from the NDP Task Force.  The proclamation does not even have a "theme,"[23] but it did set forth certain fundamental principles:

> Let us also use this day to come together in a moment of peace and goodwill.  Our world grows smaller by the day, and our varied beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace where there is strife; and to lift up those who have fallen on hard times.  As we observe this day of prayer, we remember the one law that binds all great religions together:  the Golden Rule, and its call to love one another; to understand one another; and to treat with dignity and respect those with whom we share a brief moment on this Earth.

Ex. A (2009 Proclamation).  In short, President Obama's proclamation acknowledged the "varied beliefs" of the American people while expressing universally accepted principles.

---

[22] As explained in footnote 18, supra, the federal defendants do not concede that President Bush's 2008 National Day of Prayer proclamation violated the Establishment Clause.

[23] Moreover, unlike 2008, President Obama did not host any public ceremonies at the White House relating to the National Day of Prayer.  See Ex. J, at WH00053-WH00054 (May 5, 2009 White House Press Briefing Transcript).

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant summary judgment to the federal

defendants.

Dated:  October 9, 2009                    Respectfully submitted,

                                           TONY WEST
                                           Assistant Attorney General

                                           JOHN R. GRIFFITHS
                                           Assistant Branch Director

                                             /s/ Brad P. Rosenberg
                                           BRAD P. ROSENBERG (DC Bar 467513)
                                           Trial Attorney
                                           United States Department of Justice
                                           Civil Division, Federal Programs Branch
                                           Tel: (202) 514-3374
                                           Fax: (202) 616-8460
                                           brad.rosenberg@usdoj.gov

                                           <u>Mailing Address:</u>
                                           Post Office Box 883
                                           Washington, D.C.  20044

                                           <u>Courier Address:</u>
                                           20 Massachusetts Ave., N.W.
                                           Washington, D.C. 20001

                                           COUNSEL FOR DEFENDANTS
                                           PRESIDENT BARACK OBAMA AND
                                           WHITE HOUSE PRESS SECRETARY
                                           ROBERT L. GIBBS