## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

_____

| | |
|---|---|
| FREEDOM FROM RELIGION ) | |
| FOUNDATION, INC., ANNE NICOL ) | |
| GAYLOR, ANNIE LAURIE GAYLOR, ) | |
| PAUL GAYLOR, DAN BARKER, ) | |
| PHYLLIS ROSE, and JILL DEAN, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 08-CV-588 |
| ) | |
| PRESIDENT BARACK OBAMA, ) | |
| WHITE HOUSE PRESS SECRETARY ) | |
| ROBERT L. GIBBS, WISCONSIN GOVERNOR ) | |
| JIM DOYLE, and SHIRLEY DOBSON, ) | |
| CHAIRMAN OF THE NATIONAL DAY ) | |
| OF PRAYER TASK FORCE, ) | |
| ) | |
| Defendants. ) | |

_____

**FEDERAL DEFENDANTS' REPLY TO PLAINTIFFS' RESPONSES TO FEDERAL DEFENDANTS' STATEMENT OF PROPOSED FINDINGS OF FACT**

Federal Defendants hereby reply to Plaintiffs' Responses' to Federal Defendants' Statement of Proposed Findings of Fact (Dkt. No. 104, 12/10/2009) as follows:

1.       Anne Gaylor learned of President Obama's 2009 National Day of Prayer proclamation from her daughter, Annie Laurie Gaylor.  Plaintiffs' Responses to Defendants President Barack Obama and Robert L. Gibbs' First Set of Interrogatories ("Interrogatory Answers") (Ex. E) No. 5, at 7.

Response: No dispute as to 2009, but incomplete regarding Ms. Gaylor's long history of awareness of and opposition to the National Day of Prayer.  (See Ex. 1 at 2-3, 9-12, 40-44).

  Federal Defendants' Reply: No dispute as to Ms. Gaylor's long history of

awareness of and opposition to the National Day of Prayer.

2. Annie Laurie Gaylor actively monitored the White House website in advance of

President Obama's 2009 National Day of Prayer proclamation.  Interrogatory Answers No. 5, at

7.

  Response: No dispute, but incomplete regarding Ms. Gaylor's long history of awareness

of and opposition to the National Day of Prayer.  (See Ex. 1 at 3-4, 6-, 13-38, 44-45).

  Federal Defendants' Reply: No dispute as to Ms. Gaylor's long history of

awareness of and opposition to the National Day of Prayer.

3. Annie Laurie Gaylor actively monitored the NDP Task Force website in advance

of President Obama's 2009 National Day of Prayer proclamation.  Interrogatory Answers No. 5,

at 7.

  Response: No dispute, but incomplete regarding Ms. Gaylor's long history of opposing

the National Day of Prayer.  (See Response to No. 2).

  Federal Defendants' Reply: No dispute as to Ms. Gaylor's long history of

opposing the National Day of Prayer.

4. Annie Laurie Gaylor verified the wording of President Obama's 2009 National

Day of Prayer Proclamation at the White House's website.  Interrogatory Answers No. 5, at 8.

  Response: No dispute.

5. FFRF monitors the news under Annie Laurie Gaylor's direction, and looks for

updates regarding the National Day of Prayer at the White House website, NDP Task Force

website, and various governor websites.  Interrogatory Answers No. 6, at 13.

Response: No dispute, but incomplete as to Ms. Gaylor's knowledge and awareness of National Day of Prayer violations of Establishment Clause.

> Federal Defendants' Reply: No dispute subject to the clarification that Ms. Gaylor is aware of and opposes what she perceives to be violations of the Establishment Clause.  Whether or not these incidents violate the Establishment Clause is a question of law.

6.     Since 1990, Anne Gaylor has encouraged FFRF members actively to monitor and protest celebrations of the National Day of Prayer.  Ex. F (Protest National Day of Prayer, Freethought Today, April 1990, at 16).

Response: No dispute.

7.     Paul Gaylor learned of President Obama's 2009 National Day of Prayer proclamation from Anne Gaylor.   Interrogatory Answers No. 5, at 8.

Response: No dispute, but incomplete as to Mr. Gaylor's knowledge of and opposition to the National Day of Prayer.  (Ex. 1 at 4, 37).

> Federal Defendants' Reply: No dispute as to Mr. Gaylor's knowledge of and opposition to the National Day of Prayer.

8.     Dan Barker has watched the National Day of Prayer over the course of several years due to his work at FFRF.  Interrogatory Answers No. 4, at 7; Interrogatory Answers No. 5, at 8.

Response: No dispute, but incomplete as to Mr. Barker's knowledge of and opposition to the National Day of Prayer.  (Ex. 1 at 4-5, 7, 38, 46-47).

> Federal Defendants' Reply: No dispute as to Mr. Barker's knowledge of and

3

opposition to the National Day of Prayer.

9.     Dan Barker learned by watching the news on the internet on either May 7 or May 8, 2009 that President Obama had issued a National Day of Prayer Proclamation on May 7, 2009. Interrogatory Answers No. 5, at 8.

Response: No dispute.

10.     Phyllis Rose learned of President Obama's 2009 National Day of Prayer Proclamation while working at FFRF.  Interrogatory Answers No. 5, at 8.

Response: No dispute, but incomplete as to Ms. Rose's knowledge of and opposition to the National Day of Prayer.  (Ex. 1 at 4-5).

Federal Defendants' Reply: No dispute as to Ms. Rose's knowledge of and opposition to the National Day of Prayer.

11.     Jill Dean has no specific recollection of President Obama's 2009 National Day of Prayer Proclamation.  Interrogatory Answers No. 5, at 8.

Response: No dispute, but incomplete as to Ms. Dean's knowledge of and opposition to the National Day of Prayer.  (Ex. 1 at 4-5).

Federal Defendants' Reply: No dispute as to Ms. Dean's knowledge of and opposition to the National Day of Prayer.

12.     Anne Gaylor learned of President Bush's 2008 National Day of Prayer proclamation through her daughter, Annie Laurie Gaylor.  Interrogatory Answers No. 4, at 5.

Response: No dispute, but incomplete as to Ms. Gaylor's knowledge of and long history of opposition to the National Day of Prayer.

Federal Defendants' Reply: No dispute as to Ms. Gaylor's knowledge of and long

4

history of opposition to the National Day of Prayer.

13.    Annie Laurie Gaylor has routinely monitored the NDP Task Force website in the spring for many years.  Interrogatory Answers No. 4, at 6.

Response: No dispute, but incomplete as to Ms. Gaylor's knowledge of and opposition to the National Day of Prayer.  (See Response No. 2).

Federal Defendants' Reply: No dispute as to Ms. Gaylor's knowledge of and opposition to the National Day of Prayer.

14.    Annie Laurie Gaylor corroborated President Bush's 2008 National Day of Prayer proclamation at the White House website.  Interrogatory Answers No. 4, at 6.

Response: No dispute.

15.    Annie Laurie Gaylor's usual practice is to corroborate National Day of Prayer proclamations at the White House's website.  Interrogatory Answers No. 4, at 6.

Response: No dispute.

16.    Annie Laurie Gaylor has been on a "Focus on the Family" mailing list since sometime in the late 1980s or early 1990s, from which she receives annual mailings about the National Day of Prayer and the NDP Task Force.  Interrogatory Answers No. 4, at 6.

Response: No dispute.

17.    Annie Laurie Gaylor routinely checks the NDP Task Force website every year. Interrogatory Answers No. 4, at 6.

Response: No dispute.

18.    Paul Gaylor learned of President Bush's 2008 National Day of Prayer proclamation through Anne Gaylor.  Interrogatory Answers No. 4, at 6.

5

Response: No dispute, but incomplete as to Mr. Gaylor's knowledge of and opposition to the National Day of Prayer.  (See Response to No. 7).

Federal Defendants' Reply: No dispute as to Mr. Gaylor's knowledge of and opposition to the National Day of Prayer.

19.     Dan Barker visited the NDP website in 2008 to determine what wording they were recommending for National Day of Prayer proclamations.  Interrogatory Answers No. 4, at 7.

Response: No dispute, but incomplete as to Mr. Barker's knowledge of and opposition to the National Day of Prayer.  (Ex. 1 at 4-5, 7, 38, 46-47).

Federal Defendants' Reply: No dispute as to Mr. Barker's knowledge of and opposition to the National Day of Prayer.

20.     Dan Barker learned by telephone from FFRF staff that President Bush issued a National Day of Prayer proclamation in 2008, and then searched the internet to determine whether President Bush had incorporated the NDP Task Force's theme "Prayer! America's Strength and Shield."  Interrogatory Answers No. 4, at 7.

Response: No dispute, but incomplete as to Mr. Barker's knowledge of and opposition to the National Day of Prayer.  Also, Mr. Barker was traveling out of town on FFRF business when he learned of President Bush's Proclamation.  (See Response to No. 8).

Federal Defendants' Reply: No dispute.

21.     Phyllis Rose learned of President Bush's 2008 National Day of Prayer proclamation while working at FFRF.  Interrogatory Answers No. 4, at 7.

Response: No dispute, but incomplete as to Ms. Rose's knowledge of and opposition to the National Day of Prayer.  (Ex. 1 at 38-39).

6

Federal Defendants' Reply: No dispute as to Ms. Rose's knowledge of and

opposition to the National Day of Prayer.

22.     Jill Dean first became aware of President Bush's 2008 National Day of Prayer

proclamation as a result of a prayer breakfast held in Burnett County, Wisconsin.  Interrogatory

Answers No. 4, at 7.

Response: No dispute.

23.     FFRF members have attended National Day of Prayer or related prayer breakfast

events in order to monitor them.  Interrogatory Answers No. 9, at 44.

Response: No dispute.

24.     FFRF members have picketed National Day of Prayer events held on courthouse

steps or at municipal buildings.  Interrogatory Answers No. 9, at 44.

Response: No dispute.

25.     FFRF members "greatly enjoy fighting back" against what they perceive to be

Establishment Clause violations.  Interrogatory Answers No. 6, at 12.

Response: Misleading because ignores distress caused by government exhortations to

pray and sincerity of members' opposition to Establishment Clause violations.  (Ex. 1 at

2, 5, 38-39, 40-47).

Federal Defendants' Reply: Federal defendants do not dispute FFRF's members'

opposition to the National Day of Prayer.  Nevertheless, as stated in plaintiffs'

answers to defendants' interrogatories, FFRF members "greatly enjoy fighting

back" against what they perceive to be Establishment Clause violations.

Interrogatory Answers No. 6, at 12.

26.    FFRF does not have any expenditures relating to the National Day of Prayer that are delineated by specific budgetary line items.  Interrogatory Answers No. 7, at 39.

Response: Misleading because staff time and resources are employed to combat NDP violations.  (Ex. 1 at 39-40).

Federal Defendants' Reply: No dispute that FFRF staff time and resources are employed regarding the National Day of Prayer.  However, much of that time and those resources are devoted to opposing conduct of third parties and, hence, are not attributable to conduct by the federal defendants.  See Interrogatory Answers No. 7, at 39-40.  Moreover, FFRF's purpose is to work for the separation of state and church and to educate the public on matters of nontheism; thus, the time and resources are expended as part of FFRF's overall mission.  Ex. B. (Welcome to the Freedom from Religion Foundation webpage); Ex. C (Freedom From Religion Pamphlet).  Finally, federal defendants dispute plaintiffs' use of the term "violations," because whether or not certain NDP observances violate the Establishment Clause is a question of law.

27.    FFRF has no documents sufficient to disclose expenditures made by FFRF regarding the National Day of prayer.  Plaintiffs' Responses to Federal Defendants' First Request for Production of Documents No. 4, at 2 (Ex. I).

Response: Misleading because staff time and resources are employed to combat NDP violations.  (Ex. 1 at 39-40).  In 2005, for example, FFRF sent letters to each governor objecting to NDP, which obviously involved organizational time and expense.

Federal Defendants' Reply:  No dispute that FFRF staff time and resources are

8

employed regarding the National Day of Prayer.  However, much of that time and those resources are devoted to opposing the conduct of third parties and, hence, are not attributable to conduct by the federal defendants.  See Interrogatory Answers, No. 7, at 39-40.  Moreover, FFRF's purpose is to work for the separation of state and church and to educate the public on matters of nontheism; thus, the time and resources are expended as part of FFRF's overall mission.  Ex. B. (Welcome to the Freedom from Religion Foundation webpage); Ex. C (Freedom From Religion Pamphlet).  Finally, federal defendants dispute plaintiffs' use of the term "violations," because whether or not certain NDP observances violate the Establishment Clause is a question of law.

28.     FFRF's purpose is to work for the separation of state and church and to educate the public on matters relating to nontheism.  Ex. B (Welcome to the Freedom From Religion Foundation webpage); Ex. C (Freedom From Religion Foundation pamphlet).

Response: No dispute.

29.     FFRF receives and acts on complaints of prayers in public programs.  Ex. C (Freedom From Religion Foundation pamphlet).

Response: No dispute.

30.     FFRF generates significant publicity through its legal challenges.  Ex. C (Freedom From Religion Foundation pamphlet).

Response: Dispute that accurately conveys FFRF's use of litigation, which raises national awareness and ends violations of Establishment Clause, but litigation is not the exclusive means used.  (Ex. 112 at 5).

9

Federal Defendants' Reply: No dispute that litigation is not the exclusive means used by FFRF to generate publicity.  Nevertheless, FFRF's legal challenges are advertised in their organizational pamphlet and online homepage to attract attention and support.  Ex. B (Welcome to the Freedom From Religion Foundation webpage); Ex. C (Freedom From Religion Foundation pamphlet); Ex. G (FFRF Fundraising Letter).

31.     Annie Laurie Gaylor views this lawsuit as "splashy."  Ex. H (Sept. 30, 2008 e-mail from Annie Laurie Gaylor to Jill Dean).

Response: Dispute that accurately conveys Ms. Gaylor's long commitment to opposing the National Day of Prayer.  (See Response to No. 2).  The proposed Finding also is misleading because clearly Ms. Gaylor stated her intent to alert Ms. Dean that being a named plaintiff in this suit should be weighed carefully.

Federal Defendants' Reply: Disputed. Ms. Gaylor's long commitment to opposing the National Day of Prayer, which federal defendants do not dispute, does not affect her view of this lawsuit as "splashy."  While Ms. Gaylor indicated that Ms. Doyle should only be a named plaintiff in this suit if it fell within her "comfort and interest level," she initially characterized this suit as "a splashy one."  Ex. H (e-mail from Annie Laurie Gaylor to Jill Dean).

32.     Annie Laurie Gaylor views this lawsuit as "highly educational."  Ex. H (Sept. 30, 2008 e-mail from Annie Laurie Gaylor to Jill Dean).

Response: No dispute, but affirmatively note that the purpose of this lawsuit is to end an Establishment Clause violation.  (Ex. 114 at 2).

10

Federal Defendants' Reply: Federal defendants dispute plaintiffs' use of the term "violation." Whether or not the NDP and certain NDP observances violate the Establishment Clause is a question of law.  Moreover, Annie Laurie Gaylor has testified that this lawsuit fulfills the independent educational function of FFRF. See Ex. K (Gaylor Tr., Nov. 24, 2009, 48:2-10).

33.     One of FFRF's functions is to file lawsuits to correct what the organization perceives to be violations of the Establishment Clause.  Ex. B (Welcome to the Freedom From Religion Foundation webpage).

Response: No dispute that litigation is one means of addressing Establishment Clause violations, but this is not the exclusive means used.  (Ex. 113).

Federal Defendants' Reply: No dispute.

34.     One of FFRF's organizational goals is to "make a legal fuss!"  Ex. G (FFRF Fundraising Letter).  Ex. G (FFRF Fundraising Letter).

Response: Dispute.  Mis-states FFRF's goals and actions.  (Exs. 112-114).  FFRF's organizational brochure notes that the Foundation acts on countless violations of separation of church and state on behalf of members of the public.  (Ex. 112).

Federal Defendants' Reply:  Dispute.  In FFRF's fundraising letter, the organization calls upon its members: "Help us make a legal fuss!"  Federal defendants respectfully refer the Court to the FFRF Fundraising Letter for its full and complete contents.  Ex. G (FFRF Fundraising Letter).

35.     FFRF has used the existence of the National Day of Prayer lawsuit in its fundraising efforts.  Ex. G (FFRF Fundraising Letter).

Response: Dispute that the NDP suit has been singled out among FFRF's various

activities (Ex. 114).  The NDP lawsuit is merely identified briefly as being among the

Foundation's many on-going activities.

Federal Defendants' Reply:  Dispute.  Federal defendants respectfully refer the

Court to the FFRF Fundraising Letter for its full and complete contents.  Ex. G

(FFRF Fundraising Letter).

36.    The first paragraph of President Obama's 2009 National Day of Prayer

proclamation acknowledges the historical role of prayer in American society.  Ex. A (2009

Proclamation).

Response: Dispute that the referenced paragraph is historically accurate and affirmatively

allege that the Proclamation proceeds to expressly "call upon Americans to pray."

Federal Defendants' Reply: Dispute.  Plaintiffs do not identify what aspects of

President Obama's proclamation are historically inaccurate or cite any authority in

their response for that proposition.  To the contrary, plaintiffs' exhibits confirm

the historical accuracy of President Obama's proclamation.  See Pl. Ex. 55

(Harvard Research Report re: National Day of Prayer); Pl. Ex. 56 (Wikipedia

Article re: National Day of Prayer).  Federal defendants respectfully refer the

Court to the 2009 Proclamation for its full and complete contents.  While

President Obama concluded his Proclamation by calling on Americans to pray, he

did not use the phrase "all Americans."  Instead, President Obama recognized the

right of Americans to "worship or not worship according to the dictates of their

conscience."  Ex. A. (2009 Proclamation).  The Interfaith Alliance, which had

12

urged President Obama to "open the [National Day of Prayer] to believers of all

religions, as well as those who profess no religion," later praised him for issuing a

Proclamation that was "inclusive of all Americans." Ex. O (Letter to President

Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises

President's NDP Proclamation).

37.    President Obama's 2009 National Day of Prayer proclamation explicitly

acknowledged the right of individuals to "worship or not worship according to the dictates of

their conscience.  Ex. A (2009 Proclamation).

Response: Dispute because the Proclamation expressly "calls upon Americans to pray."

Federal Defendants' Reply: Dispute.  Federal defendants respectfully refer the

Court to the 2009 Proclamation for its full and complete contents.  As an initial

matter, President Obama's 2009 Proclamation did not use the phrase "all

Americans."  Ex. A (2009 Proclamation).  Instead, President Obama's

Proclamation recognized the right of Americans to "worship or not worship

according to the dictates of their conscience."  Ex. A (2009 Proclamation).  The

Interfaith Alliance, which had urged President Obama to "open the [National Day

of Prayer] to believers of all religions, as well as those who profess no religion,"

later praised him for issuing a Proclamation that was "inclusive of all Americans."

Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P

(Interfaith Alliance Praises President's NDP Proclamation).

38.    President Obama's 2009 National Day of Prayer proclamation did not incorporate

the NDP Task Force's theme, "Prayer . . . America's Hope."  Ex. A (2009 Proclamation); Ex. D

13

(Feb. 17, 2009 Letter from Shirley Dobson to President Barack Obama).

Response: No dispute.

39.     President Obama did not host any public ceremonies at the White House in 2009

relating to the National Day of Prayer.   Ex. J, at WH00053-WH00054 (May 5, 2009 White

House Press Briefing Transcript).

Response: No dispute.

Dated: January 21, 2010                     Respectfully submitted,

                                            TONY WEST
                                            Assistant Attorney General

                                            JOHN R. GRIFFITHS
                                            Assistant Branch Director

                                              /s/ Brad P. Rosenberg
                                            BRAD P. ROSENBERG (DC Bar 467513)
                                            Trial Attorney
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            Tel: (202) 514-3374
                                            Fax: (202) 616-8460
                                            brad.rosenberg@usdoj.gov

                                            Mailing Address:
                                            Post Office Box 883
                                            Washington, D.C.  20044

                                            Courier Address:
                                            20 Massachusetts Ave., N.W.
                                            Washington, D.C. 20001

                                            COUNSEL FOR DEFENDANTS
                                            PRESIDENT BARACK OBAMA AND
                                            WHITE HOUSE PRESS SECRETARY
                                            ROBERT L. GIBBS