# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

_____

|  |  |  |
|---|---|---|
| FREEDOM FROM RELIGION FOUNDATION, INC., ANNE NICOL GAYLOR, ANNIE LAURIE GAYLOR, PAUL GAYLOR, DAN BARKER, PHYLLIS ROSE, and JILL DEAN, | ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No. 08-CV-588 |
| PRESIDENT BARACK OBAMA, WHITE HOUSE PRESS SECRETARY ROBERT L. GIBBS, WISCONSIN GOVERNOR JIM DOYLE, and SHIRLEY DOBSON, CHAIRMAN OF THE NATIONAL DAY OF PRAYER TASK FORCE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____

## FEDERAL DEFENDANTS' RESPONSES TO PLAINTIFFS' PROPOSED FINDINGS OF FACT

Defendants submit this response to plaintiffs' Proposed Findings of Fact submitted on December 12, 2009 ("PFF" or "Pl's PFF") (Docket # 107).

The numbered paragraphs below contain the federal defendants' response corresponding to the similarly numbered paragraphs in plaintiffs' PFF. Abbreviations representing the parties' filings and supporting materials have the meanings attributed to them in the federal defendants' earlier briefing. As used in the federal defendants' responses, terms are defined as follows:

### DEFINITIONS

A.      "Immaterial" means that the fact has no relevance to any claims or defenses in the case and merits no consideration in the summary judgment analysis. See Anderson v. Liberty

1

Lobby, Inc., 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material.").

B.      "Disputed" means that the federal defendants disagree with this fact or the characterization of this fact.  Such a factual dispute relates only to the material facts in support of Plaintiff's Brief in Support of Judgment in their Favor (Docket # 103), and does not affect the integrity of the facts used in support of Defendants' Motion for Summary Judgment (Docket # 82).

C.      "Undisputed subject to clarification" means that the federal defendants do not dispute this fact for purposes of summary judgment *provided that* the indicated conditions or clarifications are included for a complete and/or accurate understanding.

D.      "Undisputed" means that the federal defendants do not dispute this fact for purposes of summary judgment.

## RESPONSES

**A.      History of 1952 National Day of Prayer Legislation**

1.      The National Day of Prayer is a day set aside by Congress for prayer.

Response:  Disputed.  This sentence represents Shirley Dobson's perception of the National Day of Prayer.  According to the statute establishing the National Day of Prayer, "the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis added).  According to the Interfaith Alliance, the National Day of Prayer was established so that Americans could "both pray and meditate in what ever way was appropriate for them." Ex. 0 (Letter to President Barack Obama from Interfaith Alliance).  In his 2009

2

proclamation, President Obama explicitly acknowledged the right of individuals to

"worship or not worship according to the dictates of their conscience." Ex. A. (2009

Proclamation).

2.      The impetus for an annual National Day of Prayer, by legislation, came from the

Reverend Billy Graham, who suggested it in the midst of a crusade in the nation's Capitol in

1952. (Ex. 55 at 1 and Ex. 56 at 2.)

> Response: Immaterial. Disputed. According to the Interfaith Alliance, the National Day
>
> of Prayer was established so that Americans could "both pray and meditate in what ever
>
> way was appropriate for them." Ex. 0 (Letter to President Barack Obama from Interfaith
>
> Alliance). Moreover, the materials cited by plaintiffs are secondary sources. While
>
> Reverend Graham's campaign may have been an impetus for the establishment of the
>
> National Day of Prayer, days of prayer and reflection had been named by Congress and
>
> the President for many years before the day was made official in 1952. Pl. Ex. 55 at 1; Pl.
>
> Ex. 56 at 1.

3.      The resolution mandating an annual National Day of Prayer was described as a

measure against "the corrosive forces of communism which seeks simultaneously to destroy our

democratic way of life and the faith in an Almighty God on which it is placed." (Ex. 55 at 1 and

Ex. 56 at 2).

> Response: Immaterial. Undisputed subject to the clarification that the quoted text
>
> represents the individual viewpoint of Senator Robertson only. Pl. Ex. 55 at 1; Pl. Ex. 56
>
> at 2.

4.      On April 2, 1952, the Committee on the Judiciary issued a Report to Accompany

H.J. Res. 382 to create a National Day of Prayer, noting the Purpose "is to direct the President to proclaim a National Day of Prayer each year." (Ex. 53).

    Response:  Undisputed.

    5.    The Report to Accompany H.J. Res. 382 to create a National Day of Prayer Statement claimed: "When the delegates to the Constitutional Convention encountered difficulties in the writing and formation of a Constitution for this Nation, prayer was suggested and became an established practice at succeeding sessions."  (Ex. 53).

    Response:  Undisputed.

    6.    The Statement encouraged the people of this country "to unite in a day of prayer each year, each in accordance with his own religious faith, thus reaffirming in a dramatic manner that deep religious conviction which has prevailed throughout the history of the United States. (Ex. 53 at 1).

    Response:  Disputed.  Plaintiffs mis-characterize the Senate Committee Report.  Given
    the historical role of prayer in the "growth and development" of the nation, the
    Committee deemed it "appropriate" if, pursuant to presidential proclamations, the people
    united in a day of prayer if they choose to do so.  Pl. Ex. 53 (S. Rep. No. 82-389 (1952)).

    7.    In fact, the members of the Constitutional Convention did not pray at any session before adopting the entirely godless and secular U.S. Constitution, as noted by Constitutional Convention Secretary Benjamin Franklin.   (Pfeffer, Church, State & Freedom, at 121-122 (1967)).

    Response: Disputed.  See Pl. Ex. 53 (S. Rep. No. 82-1389 (1952)).

    8.    "Public Law 324, a Joint Resolution, was approved on April 17, 1952: "Resolved

4

by the Senate and House of Representatives of the United States of America in Congress

assembled, That the President shall set aside and proclaim a suitable day each year, other than a

Sunday, as a National Day of Prayer, on which the people of the United States may turn to God

in prayer and meditation in churches, in groups, and as individuals. (Ex. 53).

      Response:  Undisputed.

      9.     Contemporaneous reporting of President Truman's signing of the Prayer Day Bill,

in the New York Times on April 18, 1952, recognized that "the purpose of the resolution is to

have the public assemble in churches, synagogues, and other places of worship to offer prayers

for world peace."

      Response:  Immaterial.  Undisputed.

      10.     Public Law 324 was signed by President Harry Truman on April 17, 1952.

      Response:  Undisputed.

**B.**     **Presidential Proclamations Exhort Prayer.**

      11.     Presidential NDP proclamations are released by the Office of the Press Secretary,

including in 2008 and 2009 by the press secretary for Presidents Bush and Obama. (Ex. 12 at 1-

3).

      Response:  Undisputed.

      12.     The National Day of Prayer legislation passed by Congress is an encouragement

for the American people of all faiths to pray.  (Ex. 123 at 14).

      Response:  Disputed.  Plaintiffs offer Shirley Dobson's characterization of the National

      Day of Prayer as fact.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 14:2-4).  The legislation

      does not encourage people to pray.  Instead, the statute establishing a National Day of

Prayer uses permissive language, stating that "the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis added).  In his 2009 National Day of Prayer Proclamation, President Obama explicitly recognized the right of individuals to "worship or not worship according to the dictates of their conscience."  Ex. A (2009 Proclamation).

13.     This year, President Obama announced in advance that he too would release a Presidential Proclamation declaring May 7, 2009, to be the National Day of Prayer. (Ex. 96 at 11).

Response: Undisputed subject to clarification.  Earlier during the week of May 7, 2009, the White House announced that it would not be hosting any National Day of Prayer events, but would release a Presidential Proclamation declaring May 7, 2009 the "National Day of Prayer."  Pl. Ex. 96; Ex. J (Press Briefing Transcript).  President Obama did not issue the proclamation until the afternoon of May 7, 2009.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 174:21-22).

14.     Wikipedia describes the National Day of Prayer as being "designated by the United States Congress as a day when people are asked to come together and pray, especially for their country."  (Ex. 56 at 1).

Response:  Immaterial.  Undisputed subject to the clarification that this quotation represents nothing more than Wikipedia's description of the National Day of Prayer.  In fact, the statute establishing the National Day of Prayer uses permissive language, stating that, "the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis

6

added).  According to the Interfaith Alliance, the National Day of Prayer was established

so that Americans could "both pray and meditate in what ever way was appropriate for

them."  Ex. 0 (Letter to President Barack Obama from Interfaith Alliance).  In his 2009

Proclamation, President Obama explicitly acknowledged the right of individuals to

"worship or not worship according to the dictates of their conscience."  Ex. A (2009

Proclamation).

15.     In fact, Presidential NDP Proclamations routinely include exhortations to

American citizens to pray.  (Ex. 10 at 4-27).  (Ex. 116).

Response:  Disputed.  Federal defendants respectfully refer the Court to the

Proclamations cited for their full and complete contents.  According to the Interfaith

Alliance, the National Day of Prayer was established so that Americans could "both pray

and meditate in what ever way was appropriate for them."  Ex. 0 (Letter to President

Barack Obama from Interfaith Alliance).  When signing the Proclamation in 1964,

President Johnson stated:  "I cannot proclaim that all Americans will pray on October

20th.  Nor would I do so even if I could."  Pl. Ex. 116 (Presidential Prayer Proclamations

1952-2008); Ex. R (Johnson Proclamation).  President Obama's 2009 Proclamation

recognized the right of all Americans to "worship or not worship according to the dictates

of their conscience."  Ex. A (2009 Proclamation).

16.     Most Presidents have explicitly directed "all" Americans, "every" American or

"each" American, without exception, to pray in their NDP Proclamations.  These explicit

instructions by Presidents occurred in at least 44 official Presidential NDP Proclamations during

the years: 1952, 1953, 1954, 1955, 1956, 1957, 1961, 1962, 1964, 1965, 1966, 1967, 1970, 1972,

1974, 1975, 1976, 1977, 1978, 1979, 1980, 1983, 1986, 1987, 1989, 1990, 1991, 1992, 1993, 1994, 1995, 1996, 1997, 1998, 1999, 2001, 2000, 2002, 2003, 2004, 2005, 2006, 2007, and 2008 (Ex. 116).

> Response:  Disputed that the Presidential Proclamations have "directed" anyone to do anything, as proclamations are entirely voluntary in nature.  A proclamation is merely "a public and official announcement."  The Random House Dictionary of the English Language, unabridged (2d ed. 1987).  As President Johnson recognized, the President may not proclaim that all Americans will pray on the National Day of Prayer.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation).  In his 2009 Proclamation, President Obama did not use the phrase "all Americans" and celebrated the freedom that Americans have "to worship or not to worship" as they see fit.  Ex. A (2009 Proclamation).  Federal defendants respectfully refer the Court to the Proclamations cited for their full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

17.     Presidential NDP Proclamations not only have directed Americans to pray, but have dictated subjects, issues, or specific items about which Americans ought to pray.  For example, in 1959, President Dwight D. Eisenhower called "upon my fellow Americans and all who may be visitors in our country . . . to join in prayer for our Nation . . ." and specified five items over which to pray, including "that we may have Divine guidance in our efforts to lead our children."  (Ex. 116).

> Response:  Disputed that the Presidential Proclamations have "directed" anyone to do anything, as proclamations are entirely voluntary in nature.  A proclamation is merely "a

public and official announcement." The Random House Dictionary of the English Language, unabridged (2d ed. 1987). As President Johnson recognized, the President may not proclaim that all Americans will pray on the National Day of Prayer. Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation). In his 2009 Proclamation, President Obama celebrated the freedom that Americans have "to worship or not to worship" as they see fit. Ex. A (2009 Proclamation). Defendants respectfully refer the Court to the text of President Eisenhower's Proclamation for its full and complete contents. Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

18.    Some Presidential NDP Proclamations have included pious laundry lists, including the 1960 Proclamation by President Eisenhower, who directed "my countrymen" to "ever place our trust in the keeping of God's commandments." (Ex. 116).

Response: Disputed as to vagueness of term "pious laundry lists." Further disputed that President Eisenhower's Proclamation "directed" anyone to do anything, as proclamations are entirely voluntary in nature. A proclamation is merely "a public and official announcement." The Random House Dictionary of the English Language, unabridged (2d ed. 1987). As President Johnson recognized, the President may not proclaim that all Americans will pray on the National Day of Prayer. Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation). In his 2009 Proclamation, President Obama celebrated the freedom that Americans have "to worship or not to worship" as they see fit. Ex. A (2009 Proclamation). Federal defendants respectfully refer the Court to the text of President Eisenhower's Proclamation for its full and complete contents. Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

19.     In 1961, President John F. Kennedy listed five matters about which he directed Americans to explicitly pray, including "divine guidance in our efforts to lead our children in the ways of the truth." (Ex. 116).

> Response:  Disputed that President Kennedy's Proclamation "directed" anyone to do anything, as proclamations are entirely voluntary in nature.  A proclamation is merely "a public and official announcement."  The Random House Dictionary of the English Language, unabridged (2d ed. 1987).  As President Johnson recognized, the President may not proclaim that all Americans will pray on the National Day of Prayer.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation).  In his 2009 Proclamation, President Obama celebrated the freedom that Americans have "to worship or not to worship" as they see fit.  Ex. A (2009 Proclamation).  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

20.     In 1962, President Kennedy listed four items in his annual NDP Proclamation about which Americans were to pray, after expressing the idea that "Almighty God was a dominant power in the lives of our Founding Fathers; and . . . they expressed this faith in prayer." (Ex. 116).

> Response: Disputed to the extent plaintiffs' proposed finding of fact suggests that Americans were directed to pray by President Kennedy's proclamation.  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

21.     On Sept. 25, 1970, several months after ordering the invasion and bombing of Cambodia, President Richard Nixon, in his NDP Proclamation, specifically invited "all Americans to pray that the scourge of war be lifted from the earth."  (Ex. 116).

> Response:  Undisputed.  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116  (Presidential Prayer Proclamations 1952-2008).

22.     In 1979, President Jimmy Carter, in proclaiming Oct. 3, 1979 to be the National Day of Prayer, asked "all Americans to join with me on that day to recommit ourselves to God." (Ex. 116).

> Response:  Undisputed.  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

23.     In 1980, President Carter, in designating Oct. 6, 1980 as the National Day of Prayer, said: "I further ask that all who so desire make this a Day of Fast as well." (Ex. 116).

> Response:  Undisputed.  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

24.     In 1980, President Jimmy Carter's Presidential NDP Proclamation additionally made comments critical of unbelievers or Americans who do not pray or have a "close relationship" with a deity: "As a nation we cannot but hope that more of our citizens would, through prayer, come into a closer relationship with their maker."  (Ex. 116).

11

Response:  Disputed.  Plaintiffs mis-characterize President Carter's statement as critical of Americans who are unbelievers, who do not pray, or who do not have a close relationship with a deity.  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116  (Presidential Prayer Proclamations 1952-2008).

25.     In January 1983, President Ronald Reagan declared May 5 a National Day of Prayer, in an effort to "bring renewed respect for God."  (Ex. 58 at 1).

Response:  Undisputed subject to the clarification that plaintiffs are quoting from a <u>New York Times</u> article, "National Pray Day is Set," (Jan. 29, 1983), which includes this statement from President Reagan.  Pl. Ex. 58 (New York Times 1983 Article re: NDP).

26.     The 1983 NDP Proclamation by President Reagan belies the assertion that there has been an "unbroken" line of prayer Proclamations dating to the nation's inception.  President Reagan acknowledge[d] that a national day of prayer was "forgotten" for almost half a century, and then again for nearly a century until it was "revived as an annual observance by Congress in 1952." (Ex. 116).

Response: Disputed.  While there has not been an "unbroken" line of prayer Proclamations dating to the nation's inception, days of prayer and reflection had been named by Congress and the President for many years before the day was made official in 1952.  Pl. Ex. 55 (Harvard Research Report re: NDP, at 1); Pl. Ex. 56 (Encyclopedia Explanation of NDP, at 1); <u>Lynch v. Donnelly</u>, 465 U.S. 668, 675 n.2 (1984).  Federal defendants respectfully refer the Court to the text of President Reagan's Proclamation for

12

its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-
2008).

27.     Many Presidential NDP Proclamations have included scriptural references, as for
example in 1984 when President Reagan quoted II Chronicles 7:14 from the New Testament in
his NDP Proclamation: "If my people, who are called by my name, will humble themselves and
pray and seek my face and turn from their wicked ways, then I will hear from heaven and will
forgive their sin, and will heal their land."  (Ex. 116).

> Response:  Disputed that "many" presidential Proclamations have included scriptural
> references.  Plaintiffs quote from a single Proclamation and Federal defendants
> respectfully refer the Court to the text of the Presidential Proclamations from 1952-2009
> for their full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-
> 2008).

28.     Presidential Proclamations not infrequently have included Christian references, as
for example in 1986 when President Reagan's NDP Proclamation said: "Christ enjoins us to
'pray without ceasing.'" Ex. 116.

> Response:  Disputed as to the vagueness of the terms "not infrequently."  Plaintiffs quote
> from a single Proclamation and federal defendants respectfully refer the Court to the text
> of the Presidential Proclamations from 1952-2009 for their full and complete contents.
> Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

29.     The 1987 NDP Proclamation by President Ronald Reagan chided Americans for
"being too proud to make, or too prone to forget" an acknowledgment to deity. (Ex. 116).

Response:  Disputed as to use of the verb "chided."  President Reagan acknowledged that "times of distress, grief and war . . . impel us to acknowledgments we are often too proud to make, or to prone to forget, in periods of peace and prosperity."  Federal defendants respectfully refer the Court to the text of the Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

30.     In 1988, President Reagan in his NDP Proclamation said that the first step of the American government was "humble, heartfelt prayer."  (Ex. 116).

Response:  Disputed.  President Reagan did not say that the first step of the American government was "humble, heartfelt prayer," but rather that, "in the winning of freedom and in the living of life, the first step is prayer."  Defendants respectfully refer the Court to the text of the Presidential Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

## C.  Legislation in 1988 Intended to Facilitate Religious Organizing

31.     Prior to 1988, the President would call the nation to a day of prayer whenever he chose each year, with the exception of Sundays.  (Ex. 60 at 1).

Response:  Undisputed, subject to the clarification that the President does not "call the nation to a day of prayer," but instead issues proclamations.  See Pub. L. No. 82-324, 66 Stat. 64 (1952).

32.     Nonetheless, according to the National Prayer Committee, the National Day of Prayer was established by an Act of Congress in 1952 to encourage Americans to pray for our nation, its people, and its leaders. (Ex. 57 at 2).

14

Response:  Immaterial.  Undisputed subject to the clarification that this statement
represents only the National Prayer Committee's perception of the National Day of
Prayer.

33.    The National Prayer Committee exists to provide collective leadership to the
National Prayer Movement.

Response:  Immaterial.  Disputed to the extent that plaintiffs propose this fact as a neutral
view of the National Prayer Committee's role.  This characterization was retrieved from
the National Prayer Committee's website, and represents the organization's own
perception of its objectives for, and relevance to, the National Day of Prayer.  Pl. Ex. 51
(Web Page re: National Prayer Committee).

34.    The NDP Task Force is a project of the National Prayer Committee, the purpose
of which is to mobilize prayer.

Response:  Immaterial.  Undisputed.

35.    The National Prayer Committee and the first NDP Task Force Chairman, Vonette
Bright, directed the efforts leading in 1988 to President Reagan signing into law the requirement
that the first Thursday in May of each year be designated the National Day of Prayer.  (Ex. 60 at
1).

Response: Immaterial.  Disputed.  Plaintiffs point to no factual evidence indicating that
the NDP Task Force's efforts directly led President Reagan to sign into law the
requirement that the first Thursday in May be designated the National Day of Prayer.  In
the "Projects, Partners, and Strategic Alliances" section of its website, the National Prayer
Committee credits its members with successfully campaigning for the National Day of

15

Prayer to be designated on a particular day of the year.  Pl. Ex. 60 (National Prayer

Committee Web Page re: NDP Strategic Projects, at 1).

36.     Mrs. Vonette Bright promoted legislation for a Day of Prayer on a specific day

each year because she believed in the power of prayer; she believed that there should be a day in

this Country in which the Nation is covered in prayer; and she wanted to facilitate that, if

possible. (Ex. 123 at 31-32).

Response:  Immaterial.  Undisputed.

37.     Mrs. Bright, cofounder with Dr. Bill Bright of Campus Crusade for Christ, told

Shirley Dobson how the first Thursday in May amendment in 1988 came about: Mrs. Bright got

up at 5 a.m. one day to phone some Congressmen about setting aside a [specific] day for the

National Day of Prayer.  A committee was formed and the first Thursday of May change came

from that.  (Ex. 123 at 43-44).

Response:  Immaterial.  Undisputed to the extent that this excerpt represents the views of

Mrs. Bright as expressed to Shirley Dobson.

38.     The Campus Crusade for Christ website biography of Vonette Bright credits her

with the achievement of introducing legislation that was approved by both houses of Congress to

make the first Thursday of May a permanent date for The National Day of Prayer.  (Ex. 117 at 3).

Response:  Immaterial.  Undisputed.

39.     Congressman Tony P. Hall, while introducing the 1988 National Day of Prayer

bill on March 16, 1988, remarked that designating each first Thursday in May as the annual date

on which the National Day of Prayer is celebrated, would "help bring more certainty to the

16

scheduling of events related to the National Day of Prayer, and permit more effective long-range planning." (Ex. 118 at 2).

      Response:  Immaterial.  Undisputed.

40.      "The annual observance would be so much easier to celebrate if its occurrence was not subject to the issuance of an annual Proclamation.  The event has a tradition of some consequence for increasing our nation's awareness of the need for divine assistance," said Rev. Msgr. Joseph F. Rebman, Chancellor, Diocese of Wilmington, Delaware, in urging passage of the bill.  (Ex. 118 at 3).

      Response:  Immaterial.  Undisputed that Rev. Msgr. Joseph F. Rebman made the quoted statement.

41.      Pat Boone, Co-Chairman of the National Prayer Committee, complained that having a different day proclaimed each year "had offered little advance notice to adequately inform the grass roots constituencies.  I believe a definite date will allow millions of citizens within our nation who have explicit faith in a Prayer-hearing God to be informed about this significant day in our country." (Ex. 119 at 3).

      Response:  Immaterial.  Undisputed.

42.      S.1378, "An act to provide for setting aside the first Thursday in May as the date on which the National Day of Prayer is celebrated," was approved by the Senate on May 5, 1988, and signed into law by President Ronald Reagan on May 9, 1988.  (Ex. 120).

      Response:  Undisputed.

43.      After signing the 1988 law, President Reagan encouraged people of all faiths to participate in the National Day of Prayer. (Ex. 123 at 28-29).

Response:  Disputed.  This proposed factual finding paraphrases Shirley Dobson's view

of President Reagan's signing of the 1988 law.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009,

28:22-29:9).  Shirley Dobson was next asked to verify that the encouragement of all faiths

to participate was not part of the law that was signed.  She responded that she "didn't

remember what the law said" and would need someone to read it to her.  Pl. Ex. 123

(Dobson Tr., Nov. 10, 2009, 29:8-9).

44.    Groups like the NDP Task Force would have trouble mobilizing a National Day of

Prayer if it didn't know well in advance when it was going to take place.  (Ex. 123 at 29-30).

Response:  Immaterial.  Undisputed subject to the clarification that this proposed factual

finding paraphrases Shirley Dobson's view of the National Day of Prayer.  Ms. Dobson

was asked whether the NDP Task Force would have trouble mobilizing a National Day of

Prayer if it didn't know well in advance when it was going to take place.  She responded

that the statement was "correct."  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 29:18).  In

2009, however, the White House did not disclose President Obama's intention to issue a

Proclamation until earlier in the week of May 7th.  President Obama did not in fact issue

his NDP Proclamation until the afternoon of May 7th.  While the NDP Task Force did not

learn of the President's Proclamation until after 3:00 p.m., it was able to organize various

observances throughout the country, as well as its traditional breakfast in the Cannon

House Office Building on Capitol Hill.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 174:15-

175:6).

45.      The change in the law in 1988, to make predictable the Day of Prayer, on the first
Thursday in May, facilitated efforts by the NDP Task Force to organize prayer observances.  (Ex.
123 at 29).

Response:  Immaterial.  Undisputed subject to the clarification that this proposed factual
finding paraphrases Shirley Dobson's response to a deposition question.  As such, it
represents her viewpoint and/or opinion only.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009,
29:13).

46.      The law in 1988 mandating that the first Thursday in May of each year be
designated as a National Day of Prayer was more meaningful than the 1952 legislation because
people of faith wanted to have a day that they could know was going to be a day of prayer,
instead of just letting it be at the whim of the President.  (Ex. 123 at 163-64).

Response:  Immaterial.  Undisputed subject to the clarification that this proposed factual
finding paraphrases Shirley Dobson's response to a deposition question.  As such, it
represents her viewpoint and/or opinion only.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009,
163:22-164:13).

47.      Since the 1988 legislation mandating the designation of a specific day, the
National Day of Prayer is now even included on commercial calendars.  (Ex. 123 at 140 & 164).

Response:  Disputed.  This proposed factual finding paraphrases Shirley Dobson's
response to a deposition question.  Mrs. Dobson specifically stated that "National Day of
Prayer is put – is on many of our calendars in America."  It is not included on all
commercial calendars, as plaintiffs' phrasing suggests.  Pl. Ex. 123 (Dobson Tr., Nov. 10,
2009, 164:16).

19

48.     Groups like the NDP Task Force have been successful in mobilizing Christians to engage in prayer in part because it unifies people of faith and it is beneficial to have a central event that people can gather around.  (Ex. 123 at 85-86).

> Response: Immaterial.  Undisputed subject to the clarification that this proposed factual finding paraphrases Shirley Dobson's response to a deposition question.  As such, it represents her viewpoint and/or opinion only.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 85:1-86:6).

49.     Having a designated day of prayer, as adopted in 1988, was important to people of faith who wanted to have a day that they could predictably know was going to be a day of prayer, instead of just leaving it up to the President to choose.  (Ex. 123 at 164).

> Response:  Immaterial.  Undisputed subject to the clarification that this proposed factual finding paraphrases Shirley Dobson's response to a deposition question.  As such, it represents her viewpoint and/or opinion only.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 164:10-13).

**D.  Mrs. Dobson Is The Voice and Face Of The NDP Task Force**

50.     Campus Crusade for Christ of which Vonette Bright is a founder and still affiliated, boasts 25,000 employees and is a major international evangelical force.  Its purpose: "Helping to fulfill the Great Commission in the power of the Holy Spirit by winning people to faith in Jesus Christ, building them in their faith and sending them to win and build others; and helping the Body of Christ do evangelism and discipleship."

> Response:  Immaterial.  Undisputed that this statement represents the "purpose" of Campus Crusade for Christ as advertised on the organization's website.

20

51.     Campus Crusade for Christ uses a lot of their staff as part of the Task Force to promote the National Day of Prayer, according to Mrs. Dobson.  (Ex. 123 at 25).

Response:  Immaterial.  Undisputed.

52.     When Mrs. Bright asked Mrs. Dobson to become co-chair fo the NDP Task Force, Mrs. Dobson told her she would pray about it and talk to her husband and get back to her.  (Ex. 123 at 8-9).

Response: Immaterial.  Undisputed.

53.     Shirley Dobson's husband, James Dobson, is the founder of Focus on the Family. (Ex. 66 at 4).

Response:  Immaterial.  Undisputed.

54.     Once Shirley Dobson became chair of the NDP Task Force, Focus on the Family provided startup money for the NDP Task Force: $100,000 for the first year, $50,000 the second, $25,000 the third.  (Ex. 123 at 7-8).

Response:  Immaterial.  Undisputed.

55.     Shirley Dobson accepted Mrs. Bright's overture and became co-chairman of the NDP Task Force in 1989, and she has been the chairman since 1991.  (Ex. 123 at 42).

Response:  Immaterial.  Undisputed.

56.     Mrs. Dobson is now the recognized voice and the face of the National Day of Prayer.  (Ex. 123 at 42).

Response:  Disputed.  Mrs. Dobson's statement, "I'm the name, the face, and the voice," was made in response to a question regarding the circulation of the NDP Task Force's newsletter.  This indicates that Mrs. Dobson believes she is the "name, the face, and the

21

voice" for the organization, and not the National Day of Prayer itself. Moreover, Mrs. Dobson's statement that she is the "name, the face, and the voice" is purely her own opinion. Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 42:5-8).

**E. The NDP Task Force Uses the National Day of Prayer to Mobilize Prayer Activities**

57.    One of the goals of the NDP Task Force is to encourage prayer. (Ex. 2 at 4).

Response: Immaterial. Undisputed.

58.    The NDP Task Force promotes and encourages the role of prayer by mobilizing around the National Day of Prayer. (Ex. 123 at 10).

Response: Immaterial. Undisputed to the extent that this statement represents the views of Mrs. Dobson regarding the relationship between the NDP Task Force and the National Day of Prayer. Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 10:13-14).

59.    The National Day of Prayer is a rallying point, as a day for focusing on prayer, because it is declared as such by the President each year. (Ex. 123 at 62).

Response: Immaterial. Disputed. As an initial matter, this proposed finding states the opinion of Mrs. Dobson, as expressed in her deposition. It also mis-characterizes her statement. Mrs. Dobson stated that the "National Day of Prayer is a rallying point. It's a day when we're focusing on prayer for our country." Plaintiffs' counsel then asked, "And you know that because it's declared as such by the President each year," to which Mrs. Dobson responded, "[c]orrect." Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 62:23). Moreover, President Obama did not issue his NDP Proclamation until the afternoon of May 7, 2009. While the NDP Task Force did not learn of the President's Proclamation until after 3:00 p.m., it was able to organize various observances throughout the country,

22

as well as its traditional breakfast in the Cannon House Office Building on Capitol Hill. Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 174:21-175:6).  However, the Proclamation was issued too late in the day to be used by the Cannon House observance, NDP Task Force coordinators, or "anyone else."  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 174:21-175:6). According to Mrs. Dobson, even if the NDP statute were struck down, the NDP Task Force may still be able to coordinate prayer events on the first Thursday in May of each year and call it the National Day of Prayer.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 175:14-19).

60.     The National Day of Prayer is a rallying point for the NDP Task Force in focusing on prayer for the country.  (Ex. 123 at 62).

Response: Immaterial.  Undisputed to the extent that this proposed finding states the opinion of Mrs. Dobson, as expressed in her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 62:18-20).

61.     The National Day of Prayer is set aside by Congress, so it's a day when Americans pray for their country and for its leaders, and a day that symbolizes the country, which is why the NDP Task Force chose to make the American flag a prominent part of its logo.  (Ex. 123 at 47).

Response:  Immaterial. Disputed.  This statement represents the opinion of Mrs. Dobson, as expressed in her deposition.  Ex. 123 (Dobson Tr., Nov. 10, 2009, 47:7-10). Moreover, as President Johnson recognized, the President may not proclaim that all Americans will pray on the National Day of Prayer.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation).  President Obama's

23

Proclamation emphasized the freedom that Americans have "to worship or not to worship" as they see fit.  Ex. A (2009 Proclamation).  It is immaterial but undisputed that the NDP Task Force chose to make the American Flag a prominent part of its logo.

62.    Mrs. Dobson's initial understanding of the National Day of Prayer was that it is a special day set aside specifically for prayer.

Response:  Immaterial.  Undisputed to the extent that this proposed finding states the opinion of Mrs. Dobson, as expressed in her deposition.

**F.  The NDP Task Force is Exclusively Christian In Perspective.**

63.    The NDP Task Force was created by the National Prayer Committee for the express purpose of organizing and promoting prayer observances conforming to a Judeo-Christian system of values.  (Ex. 44 at 1).

Response:  Immaterial.  Undisputed.

64.    The Judeo-Christian expression of the National Day of Prayer involves praying to the God of the Bible.  (Ex. 123 at 67).

Response:  Immaterial.  Undisputed to the extent that this proposed finding states the opinion of Mrs. Dobson, as expressed in her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 67:10-14).

65.    The NDP Task Force expression of the National Day of Prayer is based on the Bible, which says that God is the one and only, and his son, Jesus Christ, is the way to salvation, which is the belief of the Christian church.  (Ex. 123 at 69).

Response:  Immaterial.  Undisputed to the extent that this proposed finding states the opinion of Mrs. Dobson, as expressed in her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 69:6-10).

66.     Mrs. Dobson understands the National Day of Prayer to involve proclaiming reliance on an Almighty God in calling Americans to come before Him on behalf of the Nation. (Ex. 123 at 121-22).

Response:  Immaterial.  Undisputed to the extent that this proposed finding states the opinion of Mrs. Dobson, as expressed in her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 121:18-21).

67.     The NDP Task Force's annual theme, including in 2009, represents an effort to point Americans to the eternal source of encouragement and help, i.e., the God of the Bible (Ex. 123 at 121-22).

Response:  Immaterial.  Undisputed to the extent that this proposed finding states the opinion of Mrs. Dobson as to the NDP Task Force's annual theme, as expressed in her deposition.  Pl. Ex. 123 Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 121:18-21).

## G.     Presidential Proclamations Are Integral To Prayer Rallies.

68.     The official Proclamation issued by the President is an integral part of the yearly national observance.  (Ex. 13 at 1).

Response:  Disputed.  Plaintiffs are stating as fact the opinion of Mrs. Dobson, which she expressed in a letter to President Obama.  The official Proclamation is not an integral component of the NDP Task Force's observance.  In 2009, for example, President Obama did not issue his NDP Proclamation until the afternoon of May 7, 2009.  While the NDP

25

Task Force did not learn of the President's Proclamation until after 3:00 p.m., it was able

to organize various observances throughout the country, as well as its traditional breakfast

in the Cannon House Office Building on Capitol Hill.  Pl. Ex. 123 (Dobson Tr., Nov. 10,

2009, 174:21-175:6).  Moreover, according to Mrs. Dobson, even if the NDP statute were

struck down, the NDP Task Force may still be able to coordinate prayer events on the

first Thursday in May of each year and call it the National Day of Prayer.  Pl. Ex. 123

(Dobson Tr., Nov. 10, 2009, 175:17-19).

69.     The President's support for the National Day of Prayer serves a crucial role in

calling Americans to prayer.  (Ex. 14 at 1).

Response:  Disputed.  Plaintiffs are stating as fact the opinion of Mrs. Dobson, which she

expressed in a letter to President Bush.  As President Johnson indicated, the President

"cannot proclaim that all Americans will pray" on the National Day of Prayer.  Pl. Ex.

116 (Presidential Proclamations 1952-2009); Ex. R (Johnson Proclamation).  President

Obama's 2009 Proclamation recognized the right of all Americans to "worship or not

worship according to the dictates of their conscience."  Ex. A (2009 Proclamation).

70.     Because the President is the leader of the Country, and the people look to the

President as the moral leader, and sometimes even the spiritual leader of the Nation, Mrs.

Dobson would like to see the President encourage people of all faiths to pray.  (Ex. 123 at 92).

Response:  Immaterial.  Undisputed to the extent that this paragraph represents the

opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123 (Dobson Tr.,

Nov. 10, 2009, 92:11-17).

71.     The NDP Task Force actually offers draft Proclamations for the President to

26

consider. (Ex. 14 at 1-2).

     Response:  Undisputed.

72.    Mrs. Dobson would like for the President to encourage prayer and she believes that Congress encourages prayer by designating a National Day of Prayer (Ex. 123 at 82-83).

     Response:  Immaterial.  Undisputed to the extent that this proposed finding of fact represents the opinion of Mrs. Dobson, as expressed during her deposition.

73.    Most recently, Mrs. Dobson was pleased with the NDP Proclamation issued by President Obama, which encouraged people to pray. (Ex. 123 at 91).

     Response: Undisputed that Mrs. Dobson was pleased with the NDP Proclamation issued by President Obama, and that she believes that President Obama's NDP Proclamation encouraged people to pray.  However, President Obama's 2009 proclamation expressly recognized a person's right "to worship or not worship."  Ex. A (2009 Proclamation). The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a proclamation that was "inclusive of all Americans."  Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).  The federal defendants refer to President Obama's proclamation for its full and complete contents.  See Ex. A (2009 Proclamation).

74.    It is important to the NDP Task Force that the President sign a Proclamation because he is the leader of the nation and many people look to the President as the moral and spiritual leader of the country, and since Congress has set aside the National Day of Prayer, and

because the President is the leader of the American people, the NDP Task Force likes to see the President encourage people of all faiths to pray.  (Ex. 123 at 92).

>   Response: Immaterial.  Undisputed to the extent that this proposed finding of fact
>   represents the opinion of Mrs. Dobson as expressed during her deposition. Pl. Ex. 123
>   (Dobson Tr., Nov. 10, 2009, 92:11-17).

75.     Mrs. Dobson acknowledges that the intended audience for Proclamations by the President is the people of the Nation, and in the case of Proclamations by governors, the people of each state.  (Ex. 123 at 134).

>   Response: Immaterial.  Undisputed to the extent that this proposed finding of fact
>   represents the opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123
>   (Dobson Tr., Nov. 10, 2009, 134:23).

## H.  Participation By Government Officials Is Key

76.     Mrs. Dobson understands the National Day of Prayer to be about calling Americans to come before Almighty God.  (Ex. 123 at 106).

>   Response:  Immaterial.  Undisputed to the extent that this proposed finding of fact
>   represents the opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123
>   (Dobson Tr., Nov. 10, 2009, 106:8-20).

77.     NDP Proclamations by state governors also lend support to the National Day of Prayer.  (Ex. 123 at 107).

>   Response:  Immaterial. Undisputed to the extent that this proposed finding of fact
>   represents the opinion of Mrs. Dobson, as expressed during her deposition. Pl. Ex. 123
>   (Dobson Tr., Nov. 10, 2009, 107:9-10).

28

78.     Support by the nation's leaders is critical to the NDP Task Force's efforts.  (Ex. 123 at 108-109).

Response:  Immaterial.  Undisputed to the extent that this proposed finding of fact represents the opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 108:2-109:10).

79.     People look to their leaders in giving them direction, so it is critical that the leaders support the National Day of Prayer because they are role models.  (Ex. 123 at 109).

Response:  Immaterial.  Undisputed to the extent that this proposed finding of fact represents the opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 109:4-8).

80.     The NDP Task Force, therefore, hopes that the leaders of the country will call the nation to prayer, including by issuing Proclamations.  (Ex. 123 at 110).

Response:  Immaterial.  Undisputed.

## I.     The NDP Task Force Promotes Active Christian Prayer

81.     The NDP Task Force promotes the National Day of Prayer as a means to encourage prayer, which involves establishing a relationship with God.  (Exs. 45-47).

Response: Immaterial.  Undisputed to the extent this statement reflects the views of the NDP Task Force.

82.     The NDP Task Force represents the Judeo-Christian expression of the national observance, based on the belief that this country was birthed in prayer and in reverence for the God of the Bible.  (Ex. 44 at 1).

Response:  Immaterial.  Undisputed.

83.     According to Mrs. Dobson, the United States was founded on the Judeo-Christian system of values, and birthed in prayer, and founded on the God of the Bible. (Ex. 123 at 11).

Response: Immaterial.  Undisputed to the extent that this statement represents the opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 11:7-8).

84.     The NDP Task Force promotes only a Judeo-Christian expression of the National Day of Prayer.  (Ex. 123 at 11-12, 14, 67).

Response:  Immaterial.  Undisputed.

85.     The NDP Task Force believes that for true Christians, prayer is communion with God, through which individuals actually experience a relationship with God.  (Ex. 47 at 1).

Response:  Immaterial.  Undisputed.

86.     The NDP Task Force chooses an annual theme for each year's National Day of prayer.  (Ex. 123 at 56).

Response:  Disputed.  The NDP Task Force chooses an annual theme for itself.  It does not choose an annual theme for the President or any governor.  To that end, President Obama did not incorporate the NDP Task Force's proposed theme into his 2009 Proclamation.  See Ex. A (2009 Proclamation).

87.     The NDP Task Force chooses an annual theme purportedly as a way to bring "unity to the Nation."  (Ex. 123 at 61).

Response:  Immaterial.  Undisputed.

88.     The NDP Task Force desires that its annual theme and supporting scripture be incorporated into official Proclamations by government officials.  (Ex. 25-39).

Response: Immaterial.  Undisputed.

89.     Shirley Dobson supposedly goes before the Lord every year in prayer, and asks him what is in his heart for our nation, and through prayer God usually gives Mrs. Dobson a theme for that year.  (Ex. 123 at 56-57).

Response:  Immaterial.  Undisputed to the extent that this statement represents the opinion of Mrs. Dobson, as expressed during her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 56:24-25).

90.     The Bible is the handbook of the NDP Task Force.  (Ex. 123 at 64).

Response: Immaterial.  Disputed.  According to her deposition testimony, Mrs. Dobson indicated that the Christian Bible was the handbook of Christianity, not of the NDP Task Force.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 64:20-22).

91.     Prayer from the perspective of the NDP Task Force is related to the relationship with the God of the Bible.  (Ex. 123 at 64).

Response:  Immaterial.  Undisputed.

92.     The supporting scripture for each National Day of Prayer theme is exclusively chosen from the Bible, a source that is readily recognizable.  (Ex. 123 at 57).

Response: Disputed.  The NDP Task Force chooses an annual theme for itself.  It does not choose an annual theme for the President or any governor.  To that end, President Obama did not incorporate the NDP Task Force's proposed theme into his 2009 Proclamation.  See Ex. A (2009 Proclamation).  Undisputed that the NDP Task Force's theme and supporting scripture is chosen from the Bible, and that the Bible is readily recognizable.

**J. Presidential Proclamations Promote Active Prayer**

93.     Presidential Proclamations advance the cause of prayer and inspire others to get involved.  (Ex. 15 at 2).

> Response:  Disputed.  Plaintiffs propose as fact the opinion of Shirley Dobson, expressed to President Bush in a letter offering a draft Presidential Proclamation.  Moreover, according to the statute establishing the National Day of Prayer, "the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis added).  According to the Interfaith Alliance, the National Day of Prayer was established so that Americans could "both pray and meditate in what ever way was appropriate for them."  Ex. 0 (Letter to President Barack Obama from Interfaith Alliance).  President Johnson acknowledged that he could not, of course, require anyone to pray on the National Day of Prayer, nor would he want to.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation).  Most recently, President Obama recognized the right of individuals to "worship or not worship according to the dictates of their conscience."  Ex. A (2009 Proclamation).

94.     The NDP Task Force solicits Proclamations from the President, which are then read by some 40,000 Task Force coordinators at events around the country, and the presidential Proclamations "underscore the need for corporate and personal intercession [that] will lend tremendous prestige and credibility to these gatherings."  (Ex. 15 at 1).

> Response: Undisputed that the NDP Task Force solicits Proclamations from the President, but disputed that these Proclamations are read at events around the country.

32

The 2009 Presidential Proclamation was issued on the afternoon of May 7, 2009. According to Mrs. Dobson, "it was too late to be used by the Cannon House observance and by our coordinators and by anyone else."  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 175:3-5).

95.     In his 1991 official NDP Proclamation, President George H.W. Bush told all Americans, including all unreligious Americans that "we owe constant praise to God."  Bush added: "Giving humble thanks for His mercy, let us vow to fulfill not only our responsibility but also our potential as one Nation under God.  Most important let us make our prayers pleasing to Him . . ." (Ex. 116).

Response:  Disputed.  There is no evidence of how many Americans retrieved President Bush's 1991 Proclamation, much less that "all Americans" and "all unreligious Americans" did so.  Federal defendants respectfully refer the Court to the 1991 Proclamation for its full and complete contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

96.     President George W. Bush in his NDP public comments lauded the Dobson's and the NDP Task Force and promoted the role of prayer at exclusive annual NDP prayer observances in the East Room of the White House.  (Ex. 63 at 1-4).

Response:  Undisputed.  Federal defendants respectfully refer the Court to plaintiffs' Exhibit 63 for a full and complete account of President Bush's statements.

97.     Mrs. Dobson has attended ten White House prayer services for the National Day of Prayer and she has spoken at eight of these events.  (Ex. 123 at 72 and 74).

Response:  Undisputed.

33

98.    Mrs. Dobson, as Chairman of the NDP Task Force, even received personal "thank-you's" from President George W. Bush as a result of the Task Force's NDP observances in Washington.  (Ex. 40 at 1-2).

Response:  Undisputed.

99.    The NDP Task Force bound all the state National Day of Prayer Proclamations by governors into a presentable package and presented it as a unique gift to President Bush on the National Day of prayer.  (Ex. 123 at 52).

Response:  Undisputed.

100.    The NDP Proclamation by President Bush in 2001 expressly included the NDP Task Force annual theme and supporting scriptural reference.  "The theme of the 2001 National Day of Prayer is 'One Nation under God.'  In a prayer written specially for the occasion, Americans are asked to pray for 'a moral and spiritual renewal to help us meet the many problems we face.'  Special observances are scheduled for all 50 States, with local volunteers planning a variety of activities including prayer breakfasts, concerts, rallies, and student gatherings." (Ex. 10 at 1-3).

Response:  Undisputed.

101.    In his 2004 NDP Proclamation, President Bush used the NDP Task Force scriptural theme, "the Lord is near to all who call upon Him . . . He also will hear their cry, and save them."  (Ex. 116).

Response:  Undisputed.  Federal defendants respectfully refer the Court to the
Proclamation for its full and complete contents.

102.    In 2008, President Bush also adopted the NDP Task Force theme and scripture

verse: "This year's theme, 'Prayer! America's Strength and Shield,' is taken from Psalm 28:7,

"The Lord is my strength and my shield; my hea[r]t trusts him, and I am helped.'" (Ex. 10, at 1-

3).

> Response:  Undisputed.  Federal defendants respectfully refer the Court to the
>
> Proclamation for its full and complete contents.

103.    President Obama's 2009 NDP Proclamation concluded with a "call upon

Americans to pray in thanksgiving for our freedoms and blessings and to ask for God's continued

guidance, grace, and protection for this land that we love.'" (Ex. 12 at 2-3).

> Response:  Undisputed.  Federal defendants respectfully refer the Court to the 2009
>
> Proclamation for its full and complete contents.

104.    The Presidential Proclamation is an important symbol and affirmation of the

annual National Day of Prayer observance, which the NDP Task Force incorporates into its

promotional materials.  (Ex. 30 at 1).

> Response: Disputed.  The exhibit plaintiff cites merely reflects the NDP Task Force's
>
> belief that "for many Americans, the presidential proclamation is an important symbol
>
> and affirmation of this cherished annual observance," and indicates that the NDP Task
>
> Force "would very much like to incorporate" the President's proclamation into its
>
> promotional materials.  Pl. Ex. 30 (NDP Task Force letter to George W. Bush, at 1).  The
>
> exhibit does not indicate that the NDP Task Force is always able to incorporate the
>
> President's proclamation into its promotional materials.  For example, President Obama's
>
> 2009 Presidential Proclamation was issued on the afternoon of May 7, 2009.  President
>
> Obama did not host any public ceremonies at the White House relating to the National

Day of Prayer.  Ex. J (May 5 2009 White House Press Briefing Transcript, at WH0053-WH00054).  While the NDP Task Force did not learn of the President's Proclamation until after 3:00 p.m., it was able to organize various observances throughout the country, as well as its traditional breakfast in the Cannon House Office Building on Capitol Hill. Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 174:15-175:6).  According to Mrs. Dobson, however, "[the Proclamation] was too late to be used by the Cannon House observance and by our coordinators and by anyone else."  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 175:3-5).

**K.**   **The NDP Task Force Coordinates a Christian Celebration of the National Day of Prayer.**

105.   The National Day of Prayer stands as a memorial to our nation's supposed Christian heritage.  (Exs. 33-34).

Response:  Disputed.  This characterization of the National Day of Prayer was borrowed from the NDP Task Force's October 22, 2004 letter to Senator Bill Frist, inviting him to the organization's observance celebration.  The letter reflects the NDP Task Force's view that the National Day of Prayer "is a memorial to our Christian heritage."  Pl. Ex. 33 (S. Dobson 2004 letter to Sen. Frist).  By contrast, the Report to Accompany H.J. Res. 382 to create a National Day of Prayer Statement deemed it "appropriate" if, pursuant to presidential proclamations, the people united in a day of prayer "each in accordance with his own religious faith."  Pl. Ex. 53 (S. Rep. No. 82-389 (1952)) (emphasis added).

106.   The NDP Task Force considers "foundational to our country the understanding that God is the Source of freedom," including the Christian God of the Bible."  (Ex. 35 at 1).

36

Response:  Immaterial.  Undisputed.

107.     A tremendous outpouring of prayer and repentance encompasses the nation at the time of the National Day of Prayer as hands join together to cry out to God and hearts are allegedly changed and hope restored.  (Ex. 36 at 1).

Response:  Immaterial.  Disputed.  Plaintiffs propose as fact a characterization of the National Day of Prayer put forth by the National Day of Prayer Task Force in a letter to Chaplain Barry Black.  The nature of the National Day of Prayer is voluntary.  According to the statute establishing the National Day of Prayer, "the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis added).  According to the Interfaith Alliance, the National Day of Prayer was established so that Americans could "both pray and meditate in what ever way was appropriate for them."  Ex. 0 (Letter to President Barack Obama from Interfaith Alliance).  In the most recent NDP Proclamation, President Obama celebrated the right of individuals to "worship or not worship according to the dictates of their conscience."  Ex. A (2009 Proclamation).

108.     The NDP Task Force hopes that its annual theme and supporting scripture will draw Americans closer to God.  (Ex. 37 at 1).

Response:  Immaterial.  Undisputed.

109.     The NDP Task Force promotes, publicizes and provides resources to "constituents" to help them celebrate the National Day of Prayer.  (Ex. 123 at 16).

Response: Immaterial.  Undisputed.

110.     The NDP Task Force limits participation by coordinators and volunteers to

persons holding a Judeo-Christian perspective.  (Ex. 44 at 1).

Response:  Immaterial.  Undisputed.

**L.      Governors Issue Proclamations In Conjunction With the National Day of Prayer.**

111.    The NDP Task Force, led by Mrs. Dobson writes to each state governor on an annual basis requesting a prayer Proclamation, while referencing the NDP Task Force annual theme and supporting scriptural reference.  (Exs.  21-24).  (Ex. 123 at 21, 23, 50, 58, 115, and 121).

Response: Immaterial.  Undisputed.

112.    Letters written by the NDP Task Force to governors requesting Proclamations are signed by Shirley Dobson, who reviews such letters before signing them.  (Ex. 123 at 23 and 148).

Response:  Immaterial.  Undisputed.

113.    The NDP Task Force requests state governors to designate the same day as the day set aside by the President for the National Day of Prayer.  (Ex. 123 at 28).

Response:  Immaterial.  Undisputed.

114.    The NDP Task Force considers it desirable if governors incorporate the NDP Task Force's annual theme and scriptural reference in their official Proclamations.  (Ex. 123 at 86).

Response:  Immaterial.  Undisputed.

115.    All state governors issued NDP Proclamations in 2009, including Proclamations from the Governors of Arkansas, Florida, Iowa, Idaho, Indiana, Kentucky, Louisiana, Massachusetts, Mississippi, Nebraska, New Mexico, South Dakota, Texas, Utah, Virginia,

Wisconsin, and Wyoming, which all included references to the NDP Task Force annual theme and supporting scripture.  (Ex. 3 at 1-17).

      Response:  Immaterial.  Undisputed.

      116.    All state governors also issued NDP Prayer Proclamations in 2008, including Proclamations by the governors of Colorado, Florida, Idaho, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Missouri, Nebraska, New Jersey, Utah, Virginia, Wisconsin, and Wyoming, which Proclamations included the NDP Task Force annual theme and supporting scripture.  (Ex. 4 at 1-14).

      Response:  Immaterial.  Undisputed.

      117.    All state governors likewise issued NDP Prayer Proclamations in 2007, including Proclamations by the governors of Colorado, Florida, Idaho, Illinois, Indiana, Iowa, Kentucky, Massachusetts, Nebraska, Utah, Virginia, Wisconsin, and Wyoming, which included the NDP task Force annual theme and supporting scripture.  (Ex. 5 at 1-16).

      Response:  Immaterial.  Undisputed.

      118.    All state governors issued NDP Prayer Proclamations in 2006, including Proclamations by the governors of Arkansas, Colorado, Florida, Idaho, Illinois, Indiana, Louisiana, Nebraska, Utah, Wisconsin and Wyoming which included the NDP Task Force annual theme and supporting scripture.  (Ex. 6 at 11).

      Response:  Immaterial.  Undisputed.

      119.    All state governors issued NDP Prayer Proclamations in 2005, including Proclamations by the governors of Arkansas, Colorado, Florida, Idaho, Illinois, Indiana, Kentucky, Louisiana, Massachusetts, Missouri, Nebraska, North Carolina, Texas, Utah, Virginia,

and Wisconsin, which included the NDP Task Force annual theme and supporting scripture.  (Ex. 7 at 1-17).

Response:  Immaterial.  Undisputed.

120.    All state governors issued NDP Prayer Proclamations in 2004, including Proclamations by the governors of Arkansas, Colorado, Florida, Idaho, Illinois, Louisiana, Massachusetts, Missouri, Nebraska, New York, North Carolina, Texas, Virginia, Wisconsin, and Wyoming, which included the NDP Task Force annual theme and supporting scripture.  (Ex. 8 at 1-15).

Response:  Immaterial.  Undisputed.

121.    Annual NDP Proclamations by Wisconsin Governor James Doyle for 2004-2009 included the NDP Task Force annual theme and/or scriptural reference.  (Ex. 11 at 1-6).

Response:  Immaterial.  Undisputed.

122.    The NDP Task Force considers it especially vital to enlist the support and affirmation of national leaders, including Proclamations by state governors.  (Ex. 16 at 1).

Response: Immaterial.  Undisputed.

123.    The NDP Task Force considers it "critical" to garner the support of our nation's leaders for the NDP efforts, including by obtaining the written Proclamations from governors. (Ex. 17 at 1).

Response: Immaterial.  Undisputed.

**M.    Recalcitrant Governors Pressured.**

124.    If governors do not issue Proclamations, the NDP Task Force asks coordinators to

set up an appointment at the governor's office and follow up, as well as inviting all governors to actively participate in the National Day of Prayer observance, most appropriately on the steps of the Capitol Buildings to give visibility to the National Day of Prayer.  (Exs. 17-20).

> Response: Immaterial.  Undisputed.

125.    In 2007, pressure was put on New York Governor Eliot Spitzer, to issue a NDP Proclamation.

> Response: Immaterial.  Disputed as to vagueness of the term "pressure."  Undisputed that
>
> Governor Spitzer was lobbied to issue an NDP Proclamation.

126.    James Dobson, head of Focus on the Family, and husband of Shirley Dobson, Chairman of the NDP Task Force, was instrumental in publicly pressuring Governor Spitzer to issue a NDP Proclamation.  (Ex. 64 at 1, 3 and 5-6; Ex. 123 at 54).

> Response: Immaterial.  Disputed as to vagueness of the term "pressuring."  Undisputed
>
> that James Dobson publicly lobbied Governor Spitzer to issue an NDP Proclamation.

127.    Minnesota Governor Jesse Ventura was criticized in 1999 for refusing to issue a NDP Proclamation.  (Ex. 65 at 1).

> Response: Immaterial.  Undisputed subject to the clarification that Governor Ventura was
>
> criticized by the Minnesota Family Council, the state affiliate of Family Research Council
>
> "the leading proponent of a Christian conservative 'family values' agenda inside the
>
> Beltway." Pl. Ex. 65 (Article re: Pressure on Governor Ventura, at 1).

## N.    The National Day of Prayer Succeeds With Official Participation By Government Officials.

128.    The NDP Task Force considers it significant that all fifty governors issue NDP

41

Proclamations.  (Ex. 61 at 1).

    Response:  Immaterial.  Undisputed.

    129.    The State NDP Proclamations acknowledge the federal designation of the Day of

Prayer by Congress and the President in their own Proclamations.  (Exs. 3-9).

    Response: Immaterial.  Disputed.  Not all state NDP proclamations acknowledge the

    federal designation of the Day of Prayer by Congress and the President in their own

    proclamations.  Federal defendants respectfully refer the Court to the State NDP

    Proclamations at Plaintiffs' Exhibits 3-9 for their full and complete contents.  Pl. Exs. 3-9

    (State NDP Proclamations).

    130.    Millions of individuals participate in the NDP call to prayer by the NDP Task

Force, supported by 30-40,000 NDP Task Force volunteers across the country.  (Ex. 62).

    Response:  Immaterial.  Undisputed that 30-40,000 NDP Task Force volunteers

    participate in National Day of Prayer observances across the country.  Disputed that

    "millions of individuals" observe the National Day of Prayer.  While one article claims

    that "3 million Americans" were expected to participate in 2002, Pl. Ex. 62 (Articles re:

    Magnitude of NDP Observances), another stated that "tens of thousands of people" would

    take part in 2008. Pl. Ex. 62 (Articles re: Magnitude of NDP Observances).

    131.    Mrs. Dobson is pleased when governors use the theme of the NDP Task Force

because it was given to her by the Lord.  (Ex. 123 at 58).

    Response:  Immaterial.  Undisputed that Mrs. Dobson is pleased when governors use the

    theme of the NDP Task Force.  The remainder of this proposed finding is undisputed to

the extent that it represents Mrs. Dobson's view that the theme of the NDP Task Force is given to her by the Lord.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 58:23-25).

132.    Support for the National Day of Prayer by governors helps further efforts to call the nation to prayer.  (Ex. 24 at 1).

Response: Immaterial.  Disputed to the extent that this proposed finding of fact is based upon a form letter to state governors from the NDP, requesting their participation in the National Day of Prayer.  This letter represents the opinion of the organization only.  Pl. Ex. 24 (S. Dobson 2005 Letter to State Governors, at 1).

133.    The NDP Task Force holds a prayer service in the Caucus Room of the Cannon Office Building each year on the National Day of Prayer as an observance, which is attended by many federal officials and seeks their annual participation.  (Exs. 25-28, 31, 33-39, and 41-43).

Response:  Disputed as to vagueness of the term "many."  The remainder of the paragraph is undisputed.

134.    The Cannon Office Building observance by the NDP Task Force is symbolic of thousands of others that take place throughout the country, and overflow crowds each year fill the Cannon Caucus Room and adjoining Hallways.  (Ex. 25 at 5).

Response:  Disputed to the extent that this description is one offered by the NDP Task Force in its promotion of the Cannon House Office Building Observance to Father Daniel P. Coughlin, Chaplain of the House of Representatives.  It represents the perspective of the NDP Task Force only.  Pl. Ex. 25 (S. Dobson Letters to Federal Officials Requesting Participation, at 5).

135.    The use of the Cannon Office Building for an annual NDP service is free to the

NDP Task Force and is approved yearly by the Speaker of the House.  (Ex. 123 at 81-82).

      Response: Undisputed.

      136.    The Cannon Office Building is chosen in particular because it represents the seat of government and provides easy access to Congressmen.  (Ex. 123 at 77).

      Response:  Disputed.  This proposed finding of fact represents the opinion of Mrs. Dobson, as expressed during her deposition.  Furthermore, Mrs. Dobson's statements are inaccurately summarized, as she stated that the observance is held in the Cannon House Office Building "because it's a nice room," and that "it's in Washington, D.C., and we feel that's the seat of our government."  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 77:9-12).

      137.    God TV now webcasts the Cannon Office Building NDP event.  (Ex. 123 at 80).

      Response:  Undisputed.

      138.    Representatives of all three branches of government are invited to attend the Cannon Office Building event.  (Ex. 123 at 77-78).

      Response:  Undisputed.

      139.    The federal representatives attend a prayer service, and are invited to speak and often do speak; invited speakers have included members of the judiciary.  (Ex. 123 at 78).

      Response:  Undisputed.

      140.    The NDP Task Force requests that federal officials speaking at the Task Force observance in Washington include a description of the significant role that prayer has played in their personal and professional lives.  (Ex. 26 at 1-2).

      Response:  Undisputed.

141.    More Republicans than Democrats typically attend the Cannon Building prayer service conducted by the NDP Task Force, which says something about their prayer life, jokes Mrs. Dobson.  (Ex. 123 at 124-125).

Response: Immaterial.  Undisputed subject to the clarification that this proposed finding represents the views and observations of Shirley Dobson, as expressed during her deposition.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 124:24-125:5).

142.    Participation in NDP Task Force observances of the National Day of Prayer by federal officials is viewed by Mrs. Dobson as "partnering in calling the nation to prayer."  (Ex. 25 at 4).

Response:  Immaterial.  Undisputed.

143.    The NDP Task Force values the participation of leaders and dignitaries in National Day of Prayer activities.  (Exs. 25-39).

Response:  Immaterial.  Undisputed.

144.    Official statements from the President and governors constitute statements of support of the NDP Task Force observance.  (Ex. 29 at 1).

Response:  Disputed.  Plaintiffs mis-characterize a statement made by the NDP Task Force in a letter to South Dakota's Governor Mike Rounds.  The letter stated that "each year the National Day of Prayer Task Force receives official statements of support from the President of the Untied States as well as governors of the 50 states, Puerto Rico, and the U.S. Virgin Islands."  Pl. Ex. 29 (S. Dobson 2005 Letter to S. D. Governor, at 1). President Obama, however, has issued no such statement of support, and his 2009 Proclamation recognized Americans' freedom to "worship or not to worship."  President

45

Obama also chose to discuss the Golden Rule rather than incorporating the NDP Task

Force's proposed theme.  Ex. A (2009 Proclamation).  His directive had a similarly

secular purpose: "Let us also use this day to come together in a moment of peace and

goodwill.  Our world grows smaller by the day, and our varied beliefs can bring us

together to feed the hungry and comfort the afflicted; to make peace where there is strife;

and to lift up those who have fallen on hard times."  Ex. A (2009 Proclamation).  The

Interfaith Alliance, which had urged President Obama to "open the [National Day of

Prayer] to believers of all religions, as well as those who profess no religion," later

praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O

(Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance

Praises President's NDP Proclamation).  Federal defendants respectfully refer the Court

to the text of Presidential Proclamations from 1952-2008 for their full and complete

contents.  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

145.    The NDP Task Force has students gather around flagpoles on the National Day of

Prayer, including little children.  (Ex. 123 at 85-86).

Response:  Immaterial.  Undisputed.

146.    The NDP Task Force even has a school prayer event guide put together by a

prayer warrior.  (Ex. 123 at 167).

Response:  Immaterial.  Undisputed.

147.    Regional coordinators may also ask mayors, city council members or school board

members to participate in the National Day of Prayer.  (Ex. 123 at 24).

Response:  Immaterial.  Undisputed.

148.    The mission of the NDP Task Force is to encourage personal repentance and prayer, while mobilizing the Christian community.  (Ex. 44 at 1).

Response:  Immaterial.  Undisputed.

149.    Mrs. Dobson considers the National Day of Prayer important in part because she believes before the founding fathers came over here, they prayed, and so did people who came over here from every land, and when they landed safely the first thing they did was pray again. (Ex. 123 at 11-12).

Response: Immaterial.  Undisputed.

150.    Participation in NDP Task Force observances by public officials is noteworthy and the participants in such observances number in the millions.  (Exs. 49 and 61-62).

Response: Dispute vagueness of characterization of public officials as "noteworthy" but do not dispute that public officials do participate in NDP Task Force observances. Dispute that "participants" in such observances number in the millions due to vagueness of language.  Certainly, millions of public officials do not participate in NDP Task Force observances.  The NDP Task Force does reach out to millions of Americans to participate, however.  Pl. Ex. 49 (NDP Taskforce Description of 2008 Observance); Pl. Ex. 61 (April 2008 Article re All Governors Sign Proclamations); Pl. Ex. 62 (Articles re: Magnitude of NDP Observances).

151.    The NDP Task Force organizes between 30,000 to 40,000 prayer gatherings across the Nation in conjunction with the National Day of Prayer.  (Ex. 123 at 26).

Response: Immaterial.  Undisputed.

152.    The Alliance Defense Fund has used the present lawsuit challenging the National

Day of Prayer as a vehicle to solicit donations, including via a video presentation.  (Ex. 94 at 1).

Response: Immaterial.  Undisputed.

153.    The NDP Task Force, for its part also seeks "generous contributions to extend its efforts to bring the name of Christ out from behind church walls and into the public front-lines in all fifty states." (Ex. 52 at 1).

Response: Immaterial.  Undisputed.

**O.    The National Day of Prayer is Highly Divisive.**

154.    The National Day of Prayer, however, is highly divisive, amid concerns that it has been hijacked by fundamentalist Christians, including the NDP Task Force.  (Exs. 66-92).

Response:  Disputed.   In his 2009 Proclamation, President Obama recognized Americans' freedom to "worship or not to worship," and discussed the Golden Rule rather than incorporating the NDP Task Force's proposed theme.  Ex. A (2009 Proclamation).  His directive had a similarly secular purpose, emphasizing a sense of commonality: "Let us also use this day to come together in a moment of peace and goodwill.  Our world grows smaller by the day, and our varied beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace where there is strife; and to lift up those who have fallen on hard times."  Ex. A (2009 Proclamation).  The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

155.    The participation of public officials in NDP observances, including at public

government buildings in Washington D.C., and State Capitol buildings throughout the nation,

fuels the perception that the National Day of Prayer is intended to promote and encourage

religion.  (Exs. 66-92).

> Response: Disputed that there is a perception that the National Day of Prayer is intended
>
> to promote and encourage religion.  Lyndon B. Johnson, when signing the 1965
>
> Proclamation, stated, "I cannot proclaim that all Americans will pray on October 20th.
>
> Nor would I do so even if I could."  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-
>
> 2008); Ex. R (Johnson Proclamation).  In his 2009 Proclamation, President Obama
>
> recognized Americans' freedom to "worship or not to worship," and discussed the
>
> Golden Rule rather than incorporating the NDP Task Force's proposed theme.  Ex. A
>
> (2009 Proclamation).  His directive had a similarly secular purpose: "Let us also use this
>
> day to come together in a moment of peace and goodwill.  Our world grows smaller by
>
> the day, and our varied beliefs can bring us together to feed the hungry and comfort the
>
> afflicted; to make peace where there is strife; and to lift up those who have fallen on hard
>
> times."  Ex. A (2009 Proclamation).  The Interfaith Alliance, which had urged President
>
> Obama to "open the [National Day of Prayer] to believers of all religions, as well as those
>
> who profess no religion," later praised him for issuing a Proclamation that was "inclusive
>
> of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance);
>
> Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

**P.    The NDP Task Force is Particularly Exclusionary.**

156.    The NDP Task Force subscribes to the Lausanne Covenant, which was adopted by

fundamentalists and other Evangelical Protestants from over 150 nations during the International Congress on World Evangelization at Lausanne, Switzerland in 1974.  (Ex. 50 at 3).

Response:  Immaterial.  Undisputed.

157.    The Lausanne Covenant includes such beliefs as the inspiration and inerrancy of the Bible, the Trinity, the Second Coming of Jesus Christ, the Anti-Christ, etc.  (Ex. 50 at 3 and 66 at 4-55).

Response:  Immaterial.  Undisputed.

158.    The adherence of the NDP Task Force to the Lausanne Covenant has the effect of excluding even traditional Jewish groups, or any other non-Christian organization or inter-faith groups.  (Ex. 50 at 3 and Ex. 66 at 5).

Response:  Immaterial.  Disputed to the extent plaintiffs have failed to define "excluding" such that it is unclear from what events or organizations, if any, individuals are being excluded.

159.    The NDP Task Force, in effect, is an exclusively Evangelical Christian non-profit organization recognizing only those NDP events which are organized by Evangelical groups. (Ex. 50 at 3).

Response: Immaterial.  Undisputed.

160.    The NDP Task Force prays to the God of the Bible, who is perceived as the only "correct God."  (Ex. 123 at 15).

Response: Immaterial.  Undisputed.

161.    The current budget of the NDP Task Force is about $1.2 million.  (Ex. 123 at 45).

Response: Immaterial.  Undisputed.

**Q.     Nonreligious Are a Significant Part of the Nation Excluded By the National Day of Prayer.**

162.    The nonreligious are the fastest-growing segment of the United States population. (Ex. 97).

Response:  Immaterial. Undisputed subject to the clarification that this proposed finding of fact is based upon a 2001 American Religious Identification Survey.  Pl. Ex. 97 (FFRF Report re: Growing Number of Non-believers).

163.    Nonbelievers today are reported to represent a significant part of the American population, constituting approximately 15 percent or thirty-four million Americans, in a recent American Religious Identification Survey.  (Ex. 97).

Response: Immaterial.  Undisputed.

**R.  The Plaintiffs Have Had Exposure to Presidential Proclamations, Which Have Caused Particularized Harm the FFRF Has Long Opposed.**

164.    The Plaintiff, Anne Gaylor, learned about the National Day of Prayer from publicity in newspapers and/or on television, making it pretty hard to avoid knowing about the National Day of Prayer.  (Ex. 1 at 2).

Response:  Undisputed subject to the clarification that Anne Gaylor contends that "it would be pretty hard to avoid knowing about the National Day of Prayer." Pl. Ex. 1 (Plaintiffs' Responses to Defendants President Barack Obama and Robert L. Gibbs' First Set of Interrogatories, No. 3, at 2) ("Interrogatory Answers").  This statement is not factual but instead represents Anne Gaylor's opinion.  In fact, FFRF members actively monitor the news and internet for NDP presidential proclamations and observances.

51

(Interrogatory Answers No. 4-6, at 8-12).  When asked how she learned of the 2009

Presidential Proclamation, for example, Annie Laurie Gaylor responded: "I did retrieve it.

I was waiting for it, of course.  We were very – of course we needed to see what he was

going to be saying because we were suing him for it.  So naturally we needed to see it."

Gaylor Tr., Nov. 24, 2009, 94:14-94:21.

165.     Anne Gaylor also knew about the NDP from complaints by members who phoned

FFRF when they picked up on violations of the separation of church and state.  (Ex. 1 at 2).

   Response: Undisputed subject to the clarification that FFRF exists to correct violations of

   the separation between church and state.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 3).

   Since 1990, Anne Gaylor has encouraged FFRF members actively to monitor and protest

   celebrations of the National Day of Prayer .  Ex. F (Protest National Day of Prayer,

   Freethought Today, April 1990, at 16).  Federal defendants dispute use of the term

   "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as

   expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory

   Answers, No. 3, at 3).

166.     The National Day of Prayer was and is truly shocking to Anne Gaylor, who grew

up at a time when state/church separation was really respected.  One did not expect to find people

praying in government meetings or on government property, much less having the government

telling people to pray, according to Mrs. Gaylor.  (Ex. 1 at 2-3).

   Response: Immaterial.  Undisputed that this represents Anne Gaylor's feelings, but

   disputed to the extent the National Day of Prayer statute has been in existence since 1952.

   See Pub. L. No. 82-324, 66 Stat. 64 (1952).

167.    Annie Laurie Gaylor has known and been concerned about the National Day of Prayer since at least shortly after 1976, when she, at age 21, with her mother Anne Gaylor, co-founded the Freedom From Religion Foundation as a regional group dedicated to work for state/church separation in Madison, Wisconsin.  (Ex. 1 at 3).

Response:  Undisputed.

168.    Annie Laurie Gaylor has served as a volunteer, an officer, a Board Member, and/or staff member since the group went national in 1978, and she became Co-President in 2004. (Ex. 1 at 3).

Response: Undisputed.

169.    Annie Laurie Gaylor joined the staff as editor of FFRF's newspaper, in 1985. Freethought Today not only reports on FFRF actions but chronicles state/church violations around the country, as well as the views and activism of FFRF membership toward prayer, religion, and religion in government.  (Ex. 1 at 3).

Response: Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 3).  The remainder of the paragraph is undisputed.

170.    Annie Laurie Gaylor has regularly reported on the National Day of Prayer, federal state or local incidents, as well as reporting on activism by members over the National Day of Prayer and government-sponsored prayer.  She has also highlighted violations in articles she has written or edited.  (Ex. 1 at 3).

Response:  Federal defendants dispute use of the term "violations" as this is a legal

53

conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 3).  The remainder of the paragraph is undisputed.

171.    FFRF exists to correct violations of the separation between church and state, so it hears complaints about NDP violations yearly, says Annie Laurie Gaylor.  (Ex. 1 at 3).

Response:  Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 3).  The remainder of the paragraph is undisputed subject to the clarification that since 1990, Anne Gaylor has encouraged FFRF members actively to monitor and protest celebrations of the National Day of Prayer.  Ex. F. (Protest National Day of Prayer, Freethought Today, April 1990, at 16).

172.    FFRF's office has received phone calls about violations each year since at least 1978. Since 1988, after the change in the law making the first Thursday in May the annual National Day of Prayer, complaints by members have increased.  (Ex. 1 at 3).

Response: Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 3). The remainder of the paragraph is undisputed subject to the clarification that FFRF members "greatly enjoy fighting back" against what they perceive to be Establishment Clause violations.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 12).   For example, FFRF members have attended National Day of Prayer or related prayer breakfast events in order to

monitor them.  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 7).  FFRF members have also

picketed National Day of Prayer events held on courthouse steps or at municipal

buildings.  Pl. Ex. 1 (Interrogatory Answers, No. 8, at 44).

173.    The complaints FFRF receives each year about the NDP have made Annie Laurie

Gaylor very aware of how much division and controversy the Proclamations create, and how so

many FFRF members have wished FFRF to take action against the practice.  (Ex. 1 at 3).

Response: Disputed.  This proposed finding of fact is based upon the opinion of Annie

Laurie Gaylor as expressed in her answer to defense counsel's interrogatories.  Each year,

Annie Laurie Gaylor waits for presidential NDP proclamations to be issued.  When asked

about retrieving the 2009 Presidential Proclamation from the White House Website,

Annie Laurie Gaylor responded, "I was waiting for it, of course.  We were very – of

course we needed to see what he was going to be saying because we were suing for it.  So

naturally we needed to see it."  Gaylor Tr., Nov. 24, 2009, 94:14-94:21.  Furthermore,

FFRF encourages its members to monitor and protest celebrations of the National Day of

Prayer.  Ex. F (Protest National Day of Prayer, Freethought Today, April 1990, at 16).  In

fact, President Obama's 2009 Proclamation was neither divisive nor controversial. The

President recognized Americans' freedom to "worship or not to worship," and discussed

the Golden Rule rather than incorporating the proposed NDP Task Force's proposed

theme.  Ex. A (2009 Proclamation).  His directive had a similarly secular purpose: "Let us

also use this day to come together in a moment of peace and goodwill.  Our world grows

smaller by the day, and our varied beliefs can bring us together to feed the hungry and

comfort the afflicted; to make peace where there is strife; and to lift up those who have

fallen on hard times." Ex. A (2009 Proclamation). The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

174.     FFRF members and members of the public are in continual contact with the FFRF office over countless violations of the Establishment Clause. Prominent violations and federal violations, such as enactment of the 1952 law establishing the NDP, are of special concern to FFRF members. (Ex. 1 at 3-4).

Response: Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories. Pl. Ex. 1 (Interrogatory Answers, No. 3, at 3-4). Federal defendants specifically dispute that the enactment of the 1952 law establishing the NDP is a violation of the Establishment Clause as this is a legal conclusion and the ultimate issue of law to be resolved by this Court. The remainder of the paragraph is undisputed subject to the clarification that FFRF's purpose is to work for the separation of state and church and to educate the public on matters of non-atheism. Its members "greatly enjoy fighting back" against what they perceive to be Establishment Clause violations. Pl. Ex. 1 (Interrogatory Answers, No. 6, at 12); Ex. B. (Welcome to the Freedom from Religion Foundation webpage); Ex. C (Freedom From Religion Pamphlet). Some FFRF members, however, do ignore the National Day of Prayer with no consequence whatsoever. See Gaylor Tr. 102:8-15.

175.    Paul Gaylor, FFRF member for 33 years, volunteer, longtime Board member, and former Officer, read about the NDP in the newspapers so long ago he doesn't recall the first time. (Ex. 1 at 4).

Response:  Undisputed subject to the clarification that Paul Gaylor has been on a "Focus on the Family" mailing list since sometime in the late 1980s or early 1990s in order to monitor the National Day of Prayer.  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 6).

176.    Dan Barker heard of the NDP before the 1980s, when he was a minister, but he distinctly remembers seeing or hearing something on television (probably a news story) in the early 1980s when President Ronald Reagan signed one of the NDP Proclamations.  (Ex. 1 at 4).

Response:  Undisputed subjected to the clarification that Dan Barker now actively monitors National Day of Prayer observances.  For example, he visited the NDP Task Force's website in 2008 to determine what wording they were recommending for National Day of Prayer Proclamations.  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 7). Dan Barker learned by telephone from FFRF staff that President Bush issued a National Day of Prayer Proclamation in 2008, and then searched the internet to determine whether President Bush had incorporated the NDP Task Force's proposed theme into his Proclamation.  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 7).

177.    Jill Dean became aware of the National Day of Prayer over time by hearing news accounts, although she cannot recall the very first time she heard or saw such a report.  (Ex. 1 at 4).

Response: Undisputed.

178.    Ms. Dean was distinctly aware of the National Day of Prayer in 2008, prompted

by news accounts of an NDP prayer breakfast sponsored by the Burnett County Sheriff, in

Wisconsin, at which event Wisconsin's newly elected Supreme Court Justice, William

Gableman, appeared as the key note speaker.

Response: Undisputed.

179.    Ms. Dean has been a volunteer worker for the Freedom From Religion Foundation

since her retirement, in part because opposing governmental endorsement of religion is an

important, but unpopular cause.  (Ex. 1 at 4).

Response: Undisputed subject to the clarification that "opposing endorsement of religion

is an important, but unpopular cause" represents Ms. Dean's opinion as stated in answers

to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 4).

180.    Ms. Dean considers opposition to the establishment of religion to be important

because events like the National Day of Prayer send a message that some citizens are better than

others; such events like the National Day of Prayer categorize and distinguish between

individuals who are supposedly better than others, while making no reference or

acknowledgment of non-believers.  (Ex. 1 at 5).

Response:  Undisputed subject to the clarification that this proposed finding represents

the opinion of Ms. Dean only, as expressed in her answers to defense counsel's

interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).

181.    According to Ms. Dean, events like the National Day of Prayer essentially make

nonreligious person invisible, which both saddens and angers Ms. Dean.  (Ex. 1 at 5).

Response:  Undisputed subject to the clarification that this proposed finding represents the opinion of Ms. Dean only, as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).

182.    The government sends a message through events like the National Day of Prayer that if a person doesn't pray, then they are un-American; such persons are devalued and made to feel like they are outside the norm of good citizenship, according to Ms. Dean. (Ex. 1 at 5).

Response:  Undisputed subject to the clarification that this proposed finding represents the opinion of Ms. Dean only, as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).

183.    Ms. Dean also is quite concerned that promotions like the National Day of Prayer send a message about religion that is untrue.  (Ex. 1 at 5).

Response:  Immaterial.  Undisputed subject to the clarification that this proposed finding represents the opinion of Ms. Dean only, as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).

184.    The premise of government officials who promote religion is that the Untied States is a Christian nation, defined by a very conservative variety of Christianity, according to Ms. Dean.  (Ex. 1 at 5).

Response:  Immaterial.  Undisputed subject to the clarification that this proposed finding represents the opinion of Ms. Dean only, as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).

185.    That depiction of the United States as a conservative Christian nation is

historically inaccurate, according to Ms. Dean, who notes that many of the immigrants to the United States left their home countries because of religious intolerance, while the United States now ironically tries to define itself as a Christian nation characterized by religious intolerance. (Ex. 1 at 5).

> Response:  Immaterial.  Undisputed subject to the clarification that this proposed finding represents the opinion of Ms. Dean only, as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).

186.    Ms. Dean, in short, is aware of and personally opposed to government promotion of religion, such as through the National Day of Prayer, because it has the effect of disenfranchising non-religious persons, like Ms. Dean, while favoring religious conservatives.

> Response:  Undisputed subject to the clarification that this proposed finding represents the opinion of Ms. Dean only, as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 3, at 5).  Disputed to the extent the PFF can be read to assert that the National Day of Prayer has the effect of disenfranchising non-religious persons while favoring religious conservatives.  Lyndon B. Johnson, in signing the 1965 Proclamation, stated, "I cannot proclaim that all Americans will pray on October 20th.  Nor would I do so even if I could."  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson Proclamation).  In his 2009 National Day of Prayer Proclamation, President Obama did not use the phrase "all Americans," and explicitly recognized the right of individuals to "worship or not worship according to the dictates of their conscience."  Ex. A (2009 Proclamation).  He asked Americans to "remember the one law that binds all great religions together: the Golden Rule, and its

call to love one another; to understand one another; and to treat with dignity and respect those with whom we share a brief moment on this Earth." Ex. A (2009 Proclamation). His directive had a secular purpose: "Let us also use this day to come together in a moment of peace and goodwill. Our world grows smaller by the day, and our varied beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace where there is strife; and to lift up those who have fallen on hard times." Ex. A (2009 Proclamation). The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

187.    The 2008 NDP Proclamation by President Bush was brought to Anne Gaylor's attention by her daughter, Annie Laurie Gaylor, because FFRF has monitored this activity, while putting up with it for so many years.  (Ex. 1 at 6).

Response: Undisputed that Anne Gaylor learned of President Bush's 2008 National Day of Prayer Proclamation from her daughter, Annie Laurie Gaylor. Disputed that FFRF has monitored this activity "while putting up with it for so many years." Rather, FFRF monitors the news under Annie Laurie Gaylor's direction, and looks for updates regarding the National Day of Prayer at the White House website, NDP Task Force website, and various governor websites. This is because FFRF's purpose is to work for the separation of state and church and to educate the public on matters of nontheism. Pl. Ex. 1

61

(Interrogatory Answers, No. 6, at 12 -13); Ex. B (Welcome to the Freedom from Religion

Foundation webpage); Ex. C (Freedom From Religion Pamphlet).

188.    Annie Laurie Gaylor reports on Establishment Clause violations to Anne regularly

since Anne is the principal founder and president emeritus of the national state/church watchdog

FFRF, and Anne is still officially a consultant with the Foundation, and remains on the Board of

Directors.  (Ex. 1 at 6).

Response:  Undisputed.

189.    Annie Laurie Gaylor first learned about the 2008 Proclamation from the National

Day of Prayer Taskforce website before the event itself, which she has routinely monitored in the

spring for many years.  (Ex. 1 at 6).

Response:  Undisputed.

190.    Annie Laurie Gaylor also corroborated the 2008 Proclamation at the White House

website.  (Ex. 1 at 6).

Response: Undisputed subject to the clarification that Annie Laurie Gaylor's usual

practice is to corroborate National Day of Prayer Proclamations at the White House

website.  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 6).

191.    Annie Laurie Gaylor routinely has also checked the NDP Taskforce website every

year to see how many governors capitulate to the NDP Taskforce, and what the NDP Taskforce

dictates for the annual theme and selected Bible verse.  (Ex. 1 at 6).

Response: Disputed as to vagueness of the term "capitulate."  Undisputed subject to the

clarification that the NDP Task Force can suggest, but not dictate, themes to be

incorporated into proclamations.  See Ex. A (2009 Proclamation) (rejecting the NDP Task

Force's proposed theme).

192.    Annie Laurie Gaylor has reported on governors who refused to issue

Proclamations in the past, such as Connecticut Governor Lowell Weicker (1991-1995), and

Minnesota Governor Jesse Ventura.  (Ex. 1 at 6).

Response:  Undisputed.

193.    Annie Laurie Gaylor was also aware of the public pressure put on New York

Governor Eliot Spitzer to issue an NDP Proclamation in 2007.  (Ex. 1 at 6).

Response: Disputed as to vagueness of the term "pressure."  Undisputed that Annie

Laurie Gaylor was aware of the lobbying of Governor Spitzer to issue an NDP

Proclamation in 2007.

194.    Dan Barker, while working at FFRF, also has been watching the NDP for years.

(Ex. 1 at 7).

Response:  Undisputed.

195.    In early 2008, Barker anticipated President Bush's signing and had been to the

National Day of Prayer Taskforce website to see what wording they were recommending.  (Ex. 1

at 7).

Response:  Undisputed.

196.    Barker was at Harvard University for a debate on April 22, 2008, and on that day

or the next, April 23, he heard by telephone from FFRF staff, including co-president Annie

Laurie Gaylor, that President Bush had issued the Proclamation.  (Ex. 1 at 7).

Response:  Immaterial that Dan Barker was at Harvard University for a debate on April 22, 2008.  Undisputed that Dan Barker learned by telephone from FFRF staff that President Bush issued a National Day of Prayer Proclamation in 2008.  This proposed finding is subject to the clarification that Dan Barker then searched the internet to determine whether President Bush had incorporated the NDP Task Force's theme "Prayer! America's Strength and Shield."  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 7).

197.    On April 22 or 23, 2008, Barker learned, and soon after confirmed by looking on the internet, that President Bush had incorporated the "Prayer! America's Strength and Shield" (Ex. 1 at 7).

Response:  Undisputed.

198.    Annie Laurie Gaylor monitored both the White House website and the National Day of Prayer Taskforce in advance of the 2009 Proclamation.  (The NDP Taskforce website was stripped of much of its archives and did not do its usual detailed announcements prior to the event.) (Ex. 1 at 7-8).

Response: Undisputed.  The language in parenthesis is immaterial.

199.    Annie Laurie Gaylor learned that President Obama would be issuing a Proclamation from numerous prominent national news stories in the Washington Post and over the wire, which reported extensively on the expected Proclamation.  (Ex. 1 at 7-8).

Response: Undisputed subject to the clarification that Annie Laurie Gaylor also learned that President Obama would be issuing a Proclamation through her active monitoring of the White House website in advance of the 2009 National Day of Prayer.  Pl. Ex. 1 (Interrogatory Answers, No. 4-5, at 7-8).  When asked about retrieving the 2009

64

Presidential Proclamation from the White House Website, Annie Laurie Gaylor

responded, "I was waiting for it, of course.  We were very – of course we needed to see

what he was going to be saying because we were suing for it.  So naturally we needed to

see it."  Gaylor Tr., Nov. 24, 2009, 94:14-94:21.

200.    Annie Laurie Gaylor was also able to verify the wording of Obama's

Proclamation at the White House official website by the first Thursday in May 2009.  (Ex. 1 at

8).

Response:  Undisputed subject to the clarification that Annie Laurie Gaylor's usual

practice is to corroborate National Day of Prayer Proclamations at the White House's

website.  Pl. Ex. 1 (Interrogatory Answers, No. 4, at 6).

201.    Barker learned by watching the news on the internet on May 7 or 8, 2009, that

President Obama had issued a NDP Proclamation on May 7.  (Ex. 1 at 8).

Response: Undisputed subject to the clarification that Dan Barker monitored the internet

for updates on the National Day of Prayer and has been "watching the NDP for years."

Pl. Ex. 1 (Interrogatory Answers, No. 4, at 7).

**S.    The Plaintiffs Have Acted On Their Sincere Objection To The National Day of
Prayer.**

202.    Anne Gaylor picketed the First Annual Wisconsin Prayer Breakfast, outside the

Concourse Hotel in Madison, Wis., Friday, March 20, 1992, where she leafleted 600 participants

and passerby.  (Ex. 1 at 9).

Response:  Undisputed.

203.    The first-ever "Wisconsin Prayer Breakfast" event in 1992 was an offshoot of the

National Day of Prayer.  (Ex. 1 at 9).

> Response:  Immaterial.  Disputed.  The interrogatory answer to which plaintiffs refer
>
> states that the first-ever "'Wisconsin Prayer Breakfast' event was <u>considered</u> an offshoot
>
> of the National Day of Prayer," Pl. Ex. 1 (Interrogatory Answers, No. 6, at 9), but does
>
> not identify who "considered" it to be an "offshoot."

204.    Anne Gaylor also formally protested the misuse of the Great Seal of the State of
Wisconsin by the Madison Kiwanis-West, who were the private sponsors of the prayer breakfast,
but who advertised and promoted the event as the "Wisconsin Prayer Breakfast" using the state
seal of Wisconsin.  (Ex. 1 at 9).

> Response: Disputed to the extent the term "misuse" involves a legal conclusion;
>
> otherwise undisputed.

205.    The main guest speaker at the prayer breakfast in 1992 was U.S. Senate Chaplain
Rev. Richard C. Halverson, who had previously denied FFRF and its staff member (now
President) Dan Barker, an ordained minister, the ability to present a message to open the U.S.
Senate instead of a prayer.  (Ex. 1 at 9).

> Response:  Immaterial.  Undisputed.

206.    During the picketed prayer breakfast, Halverson made such attacks as: "Atheism
has no room for human rights."  In speaking about the dissolution of the Soviet Union, Halverson
said, "It was not the failure of politics or economics but it was because of atheism."

> Response:  Immaterial.  Undisputed.

207.    Anne Gaylor has talked with innumerable FFRF members from 1978 until her

66

retirement in 2004, which members have called to see if there was something as an organization that FFRF could do about the NDP.  (Ex. 1 at 10).

Response:  Undisputed.

208.    FFRF has responded in various ways, over the years, including by contacting various offending public officials; by promoting secular Proclamations for government officials to make; by publicizing violations after FFRF began publishing a newspaper in 1983 ten times a year; by periodically alerting members to ongoing violations; and by encouraging and publicizing efforts to protest the National Day of Prayer and local and regional off-shoots.  (Ex. 1 at 10).

Response:  Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 10).  The remainder of the paragraph is undisputed.

209.    Anne Gaylor has studied the NDP Proclamations by various public officials, and contacted officials to protest the violation of a basic constitutional principle, sometimes releasing a statement to media.  (Ex. 1 at 11).

Response:  Federal defendants dispute use of the term "violation" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 11).  The remainder of the paragraph is undisputed.

210.    In case of the picket of the Wisconsin Prayer Breakfast in 1992, Anne Gaylor

carried a sign, helped compose a press release and leaflet, phoned area members to interest other

protesters, and contacted media about FFRF's counterpicket and complaint about the misuse of

the Great Seal of Wisconsin.  (Ex. 1 at 11).

Response: Federal defendants dispute use of the term "misuse" as this is a legal

conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to

defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 11).  The

remainder of the paragraph is undisputed.

211.    Anne Gaylor has been contacted by various media for comment about the NDP

Proclamations and government-fostered prayer over the many years.  (Ex. 1 at 11).

Response:  Undisputed subject to the clarification that whether the National Day of

Prayer fosters prayer represents Anne Gaylor's view as expressed in her answers to

defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 11).

212.    Since 1978, when Anne Gaylor was asked to take FFRF national, as an

organization, she received countless complaints from FFRF members and members of the public

about NDP-related violations, including comments by public officials, use of public facilities,

and prayer breakfasts that had the appearance of public sponsorship.

Response:  Federal defendants dispute use of the term "violations" as this is a legal

conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to

defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 11).  The

remainder of the paragraph is undisputed subject to the clarification that FFRF's purpose

is to work for the separation of state and church and to educate the public on matters of

nontheism.  Its members "greatly enjoy fighting back" against what they perceive to be

68

Establishment Clause violations.  Pl Ex. 1 (Interrogatory Answers, No. 6, at 12); Ex. B

(Welcome to the Freedom from Religion Foundation webpage); Ex. C (Freedom From

Religion Pamphlet).

213.    As president of FFRF, in November 1993, Anne Gaylor authorized the filing of a

lawsuit in Denver, Colorado, with the FFRF Denver chapter, to enjoin the mayor's office from

cosponsoring a National Day of Prayer.  As a result, Judge John N. McMullen, District Court,

enjoined the mayor from "any further endorsement, promotion, sponsorship, or support of the

Day of Prayer."  FFRF v. Wellington Webb, Mayor of Denver, Case No. 93 CV 6056, District

Court, City and County of Denver, Colo.) (Ex. 1 at 11).

Response:  Undisputed.  Federal defendants respectfully refer the Court to the opinion for

its full and complete contents.

214.    Anne Gaylor's many activities include writing press releases and letters, as well

as being quoted in Freethought Today and by other media, about her objections to the National

Day of Prayer and related violations.  (Ex. 1 at 12).

Response:  Federal defendants dispute use of the term "violations" as this is a legal

conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to

defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 12).  The

remainder of the paragraph is undisputed.

215.    Prior to the National Day of Prayer each year, the Freethought Radio show has

included commentary about the NDP, promoted a National Day of Reason, played part of the

song by Dan Barker "Nothing Fails Like Prayer," and also provided other timely commentary on

government prayer throughout the year.  (Ex. 1 at 12).

Response:  Undisputed subject to the clarification that Annie Laurie Gaylor and Dan

Barker host "Freethought Radio," the weekly radio show of the Freedom from Religion

Foundation.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 12).

216.   FFRF also monitors published news under Annie Laurie Gaylor's direction, and

looks for updates at the White House website, NDP Task Force website and various governor

websites.  The National Day of Prayer violations occur every year, and therefore, they are not

hard to find referenced, according to Annie Laurie Gaylor.  (Ex. 1 at 13).

Response: Undisputed that FFRF monitors published news under Annie Laurie Gaylor's

direction, and looks for updates at the White House website, NDP Task Force website

and various governor websites.  Federal defendants dispute plaintiffs' characterization of

National Day of Prayer observances as "violations" that are "not hard to find referenced,"

as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in

her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers No. 6,

at 13).

217.   FFRF has also issued news releases critical of National Day of Prayer activities,

sometimes asking for secular alternatives aimed at expressing the point of view of FFRF

members and in some instances, asking members to take action.  (Ex. 1 at 13-14).

Response:  Undisputed.

218.   Annie Laurie Gaylor has been responsible for writing and disseminating press

releases from 1985 to present. [Citations to FFRF press releases omitted].

Response: The federal defendants do not dispute that Annie Laurie Gaylor was

responsible for writing and disseminating the press releases referenced in plaintiffs'

70

statement of facts.

219.    "Prayer Proclamations by public officials convey to nonreligious Americans that we are expected to believe in a god, and in the suspension of the natural laws of the universe through wishful thinking," according to Foundation co-president Annie Laurie Gaylor.  (Ex. 1 at 14).

Response:  Undisputed that this statement represents the opinion of FFRF co-president Annie Laurie Gaylor.

220.    Annie Laurie Gaylor has reported on National Day of Prayer violations in Freethought Today, from January 1985 to present, and on the FFRF website.  (Ex. 1 at 14).

Response:  Undisputed that Annie Laurie Gaylor has reported on what she perceives to be National Day of Prayer violations from January 1985 to present.  Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 6 at 14)

221.    Annie Laurie Gaylor has written, solicited, edited, typeset (and, for at least 7 years, pasted up) many articles regarding prayer and government. [Citations to articles omitted].

Response: The federal defendants do not dispute that Annie Laurie Gaylor was responsible for writing and disseminating the articles regarding prayer and government referenced in plaintiffs' statement of facts.

222.    Annie Laurie Gaylor has tirelessly observed and participated in protesting the

NDP by monitoring violations, often reporting on violations or FFRF protests of the violations, writing press releases or letters of complaint and urging members to protest violations at local, regional, or national levels.  (Ex. 1 at 37).

> Response:  Undisputed that Annie Laurie Gaylor has observed and participated in protesting what she perceives to be NDP violations.  Federal defendants dispute use of the term "violations" as this is a legal conclusion, as well as the opinion of Annie Laurie Gaylor as expressed in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers No. 6, at 37).

223.    Paul Gaylor participated in and took photographs and was security for the "first annual Wisconsin prayer breakfast" counterpicket, at the Concourse Hotel, 1 W. Dayton St., Madison, Wis., Friday, March 20, 1992.  (Ex. 1 at 37).

> Response:  Undisputed.

224.    As an FFRF volunteer, Paul Gaylor also helped to open the heavy volume of mail for FFRF for at least 10 years, and he encountered letters or clippings related to complaints about the National Day of Prayer and governmental prayer and prayer breakfasts, etc., and he discussed these violations and strategies to deal with them with his wife, Anne Gaylor, and other members of the FFRF Executive Council and Board of Directors.  (Ex. 1 at 37).

> Response: The content of this paragraph is undisputed.  Federal defendants dispute plaintiffs' characterization of these actions and events as "violations" of the Establishment Clause, as this is an opinion and legal conclusion.

225.    Dan Barker too has opposed the National Day of Prayer, in written comments that have been published over the years.  (Ex. 1 at 38).

Response:  Undisputed.

**T.  The National Day of Prayer is Exclusionary of the Plaintiffs.**

226.    Phyllis Rose, for her part, has become aware that the National Day of Prayer

occurs every year, at which time the President issues a Proclamation encouraging all citizens to

pray.  (Ex. 1 at 38).

Response:  Undisputed that Phyllis Rose has become aware that the National Day of

Prayer occurs every year, and that she views presidential proclamations as encouraging all

citizens to pray.  The federal defendants respectfully refer to the presidential

proclamations for their full and complete contents.  See Pl. Ex. 116 (Presidential Prayer

Proclamations 1952-2008).  The remainder is disputed:  According to the Interfaith

Alliance, the National Day of Prayer was established so that Americans could "both pray

and meditate in what ever way was appropriate for them."  Ex. 0 (Letter to President

Barack Obama from Interfaith Alliance).  Lyndon B. Johnson, in signing the 1965

Proclamation, stated, "I cannot proclaim that all Americans will pray on October 20th.

Nor would I do so even if I could."  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-

2008); Ex. R (Johnson Proclamation).  In his 2009 National Day of Prayer Proclamation,

President Obama did not use the phrase "all Americans."  Instead, he explicitly

recognized the right of individuals to "worship or not worship according to the dictates of

their conscience."  Ex. A (2009 Proclamation).  Finally, according to the statute

establishing the National Day of Prayer, "the people of the United States <u>may</u> turn to God

in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119

(West 2008) (emphasis added).

73

227.    Ms. Rose is offended and disturbed by the government asking persons to pray.

(Ex. 1 at 38).

Response: Undisputed that Ms. Rose is offended and disturbed by what she perceives as

the government asking persons to pray.  The federal defendants respectfully refer to the

presidential proclamations for their full and complete contents.  See Pl. Ex. 116

(Presidential Prayer Proclamations 1952-2008).  The remainder is disputed:  According to

the Interfaith Alliance, the National Day of Prayer was established so that Americans

could "both pray and meditate in what ever way was appropriate for them."  Ex. 0 (Letter

to President Barack Obama from Interfaith Alliance).  Lyndon B. Johnson, in signing the

1965 Proclamation, stated, "I cannot proclaim that all Americans will pray on October

20th.  Nor would I do so even if I could."  Pl. Ex. 116 (Presidential Prayer Proclamations

1952-2008); Ex. R (Johnson Proclamation).  In his 2009 National Day of Prayer

Proclamation, President Obama did not use the phrase "all Americans."  Instead, he

explicitly recognized the right of individuals to "worship or not worship according to the

dictates of their conscience."  Ex. A (2009 Proclamation).  Finally, according to the

statute establishing the National Day of Prayer, "the people of the United States may turn

to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A.

§ 119 (West 2008) (emphasis added).

228.    Ms. Rose is offended by the government taking a position regarding religion,

including the position that Americans are a better people because of their religious convictions.

(Ex. 1 at 38).

Response:  Undisputed that Ms. Rose is offended by what she perceives to be the

government taking a position regarding religion.  The federal defendants respectfully refer

to the presidential proclamations for their full and complete contents.  See Pl. Ex. 116

(Presidential Prayer Proclamations 1952-2008).  The remainder is disputed:  President

Obama recognized the right of individuals to "worship or not worship according to the

dictates of their conscience."  Ex. A (2009 Proclamation).  He asked Americans to

"remember the one law that binds all great religions together: the Golden Rule, and its

call to love one another; to understand one another; and to treat with dignity and respect

those with whom we share a brief moment on this Earth."  Ex. A (2009 Proclamation).

His directive had a secular purpose: "Let us also use this day to come together in a

moment of peace and goodwill.  Our world grows smaller by the day, and our varied

beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace

where there is strife; and to lift up those who have fallen on hard times."  Ex. A (2009

Proclamation).  Finally, according to the statute establishing the National Day of Prayer,

"the people of the United States may turn to God in prayer and meditation at churches, in

groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis added).

229.    Ms. Rose, in fact, began volunteering with the Freedom From Religion

Foundation because she found the government's promotion of religion to be harder and harder to

ignore.  (Ex. 1 at 38).

Response:  Immaterial.  Undisputed to the extent that this proposed finding of fact

expresses only the personal feelings that prompted Ms. Rose to volunteer with FFRF. The

federal defendants respectfully refer to the presidential proclamations for their full and

complete contents.  <u>See</u> Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).  The remainder is disputed:  President Obama recognized the right of individuals to "worship or not worship according to the dictates of their conscience."  Ex. A (2009 Proclamation). He asked Americans to "remember the one law that binds all great religions together: the Golden Rule, and its call to love one another; to understand one another; and to treat with dignity and respect those with whom we share a brief moment on this Earth."  Ex. A (2009 Proclamation).  His directive had a secular purpose: "Let us also use this day to come together in a moment of peace and goodwill.  Our world grows smaller by the day, and our varied beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace where there is strife; and to lift up those who have fallen on hard times." Ex. A (2009 Proclamation).  Finally, according to the statute establishing the National Day of Prayer, "the people of the United States <u>may</u> turn to God in prayer and meditation at churches, in groups, and as individuals." 36 U.S.C.A. § 119 (West 2008) (emphasis added).

230.    Ms. Rose is opposed to the government's promotion of religion and the false insinuation that Americans are better because of prayer.  (Ex. 1 at 38).

Response: Undisputed to the extent that Ms. Rose is opposed to what she perceives to be the government's promotion of religion and what she perceives to be the government's insinuation that Americans are better because of prayer.  The federal defendants respectfully refer to the presidential proclamations for their full and complete contents. <u>See</u> Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).  The remainder is disputed: The government has celebrated Americans' freedom to "worship or not worship

according to the dictates of their conscience." Ex. A (2009 Proclamation).  In addition, President Obama exalted the Golden Rule in his most recent Proclamation.  Ex. A (2009 Proclamation).  He asked that Americans "come together in a moment of peace and goodwill.  Our world grows smaller by the day, and our varied beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace where there is strife; and to lift up those who have fallen on hard times."  Ex. A (2009 Proclamation).  The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

231.    Ms. Rose believes that her views regarding the separation of church and state are not being represented in government.  (Ex. 1 at 38-39).

Response:  Undisputed to the extent that this proposed finding represents the opinion of Ms. Rose only.

232.    The assumption that the United States is a better country and that individuals are better persons as a result of prayer is not shared by Ms. Rose.  (Ex. 1 at 39).

Response:  Undisputed that Ms. Rose believes that there is an assumption that the United States is a better country and that individuals are better persons as a result of prayer.  The federal defendants respectfully refer to the presidential proclamations for their full and complete contents.  See Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).  The remainder is disputed:  President Obama explicitly recognized the uniqueness of a nation

where "people of all faiths can worship or not worship according to the dictates of their conscience." Ex. A (2009 Proclamation).  The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

233.    The superiority of prayerfulness seems to have become mainstream view in the United States government, however, as reflected by the National Day of Prayer, according to Ms. Rose.  (Ex. 1 at 39).

Response:  Immaterial.  Undisputed to the extent that this proposed finding represents the opinion of Ms. Rose only.

234.    Ms. Rose feels that persons who profess religious beliefs are, in fact, accorded greater political influence.  (Ex. 1 at 39).

Response:  Immaterial.  Undisputed to the extent that this proposed finding represents the opinion of Ms. Rose only.

**U.    FFRF Devotes Substantial Resources to Combat National Day of Prayer.**

235.    Staff time and staff efforts have been dedicated by FFRF opposing the National Day of Prayer, including by individual plaintiffs, as well as by staff attorney, Rebecca Kratz. (Ex. 1 at 39-40).

Response: Undisputed subject to the clarification that FFRF has no documents sufficient to disclose expenditures made by FFRF regarding the National Day of Prayer.  Pl. Ex. 1

(Interrogatory Answers, No. 7, at 39).  Because FFRF's purpose is to work for the

separation of state and church and to educate the public on matters relating to nontheism,

any such expenditures were made pursuant to FFRF's overall mission.  Ex. B. (Welcome

to the Freedom From Religion Foundation Webpage).  See also Ex. K (Gaylor Tr., Nov.

24, 2009, 48:2-10) (stating that the NDP lawsuit advanced FFRF's educational mission

and broader policy goals).

236.    In Anne Gaylor's 28 years as president of FFRF, the repetition of National Day of

Prayer violations, along with the accelerating local and regional violations and increased

publicity about them all, and increased pressure by the religious right to involve public officials

at all levels and to dictate the content of prayer Proclamations, made Anne's work harder.  (Ex. 1

at 40).

Response:  Disputed.  This proposed finding of fact represents the opinion of Anne

Gaylor as expressed in her answer to defense counsel's interrogatories.  FFRF does not

have any expenditures relating to the National Day of Prayer that are delineated by

specific budgetary line items.  Pl. Ex. 1 (Interrogatory Answers, No. 7, at 39).  FFRF has

no documents sufficient to disclose expenditures made by FFRF regarding the National

Day of Prayer.  Ex. I (Plaintiffs' Responses to Federal Defendants' First Request for

Production of Documents No. 4, at 2).  Moreover, because FFRF's purpose is to work for

the separation of state and church and to educate the public on matters relating to

nontheism, any such expenditures were made pursuant to FFRF's overall mission.  Ex. B.

(Welcome to the Freedom From Religion Foundation Webpage).  See also Ex. K (Gaylor

Tr., Nov. 24, 2009, 48:2-10) (stating that the NDP lawsuit advanced FFRF's educational

mission and broader policy goals).  Finally, federal defendants dispute use of the terms
"violations," "pressure," and "dictate," as these are vague, undefined, and may constitute
legal conclusions; they are also merely the opinion of Annie Laurie Gaylor as expressed
in her answers to defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No.
7, at 40).

237.    One cannot separate church and state when the highest office holder in the
country is telling everybody to pray, according to Anne Gaylor.  (Ex. 1 at 40).

Response:  Immaterial.  Disputed that the highest office holder in the country is "telling
everybody to pray" on the National Day of Prayer.  According to the Interfaith Alliance,
the National Day of Prayer was established so that Americans could "both pray and
meditate in what ever way was appropriate for them."  Ex. 0 (Letter to President Barack
Obama from Interfaith Alliance).  Lyndon B. Johnson, in signing the 1965 Proclamation,
stated, "I cannot proclaim that all Americans will pray on October 20th.  Nor would I do
so even if I could."  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R
(Johnson Proclamation).  In his 2009 National Day of Prayer Proclamation, President
Obama did not use the phrase "all Americans."  Instead, he explicitly recognized the right
of individuals to "worship or not worship according to the dictates of their conscience."
Ex. A (2009 Proclamation).  Furthermore, the President issues Proclamations calling
upon Americans to celebrate various days throughout the year.  These proclamations,
such as that recognizing Columbus Day, are often ignored, despite similar language
calling upon Americans to observe.  Ex. K (Gaylor Tr., Nov. 24, 2009, 130:14-132:25).

238.    State and local officials imitating the NDP Proclamation and events have made

the work of FFRF all the harder.  (Ex. 1 at 40).

      Response:  Immaterial.  Disputed.  This proposed finding of fact represents the opinion of

      Anne Gaylor as expressed in her answer to defense counsel's interrogatories.  (Pl. Ex. 1 at

      40).  FFRF does not have any expenditures relating to the National Day of Prayer that are

      delineated by specific budgetary line items.  Ex. 1 (Interrogatory Answers, No. 7, at 39).

      FFRF has no documents sufficient to disclose expenditures made by FFRF regarding the

      National Day of Prayer.  Def. Ex. 1 (Plaintiffs' Responses to Federal Defendants' First

      Request for Production of Documents No. 4, at 2).  Moreover, because FFRF's purpose is

      to work for the separation of state and church and to educate the public on matters

      relating to nontheism, any such expenditures were made pursuant to FFRF's overall

      mission.  Ex. B. (Welcome to the Freedom From Religion Foundation Webpage).  See

      also Gaylor Tr., Nov. 24, 2009, 48:2-10 (stating that the NDP lawsuit advanced FFRF's

      educational mission and broader policy goals).

239.    FFRF's membership has urged FFRF to continue to protest the National Day of

Prayer, and the members expect FFRF to show leadership and represent the views of the

nonreligious who are excluded by NDP Proclamations and events.  (Ex. 1 at 40).

      Response: Undisputed subject to the clarification that some FFRF members ignore the

      National Day of Prayer altogether.  See Gaylor Tr., Nov. 24, 2009, 102: 8-15.  FFRF also

      encourages its members to monitor and protest celebrations of the National Day of

      Prayer.  Ex. F (Protest National Day of Prayer, Freethought Today, April 1990, at 16).

      FFRF members have attended National Day of Prayer or related prayer breakfast events in

      order to monitor them.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 44).  FFRF members

have also picketed National Day of Prayer events held on courthouse steps or at

municipal buildings.  Pl. Ex. 1  (Interrogatory Answers, No. 9, at 44).  FFRF members

"greatly enjoy fighting back" against what they perceive to be Establishment Clause

violations.  Pl. Ex. 1 (Interrogatory Answers, No. 6, at 12).  Disputed that the views of the

nonreligious are excluded by NDP Proclamations and events.  President Obama's 2009

Proclamation explicitly acknowledged the non-religious who are entitled to "worship or

not worship" as they wish.  Ex. A (2009 Proclamation).   The Interfaith Alliance, which

had urged President Obama to "open the [National Day of Prayer] to believers of all

religions, as well as those who profess no religion," later praised him for issuing a

Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack

Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP

Proclamation).

240.    The National Day of Prayer law weakens the Establishment Clause, creates a bad

example, and encourages public officials to promote their personal religious convictions on

public time and dime with their imprimatur of support.  (Ex. 1 at 41).

Response:  Immaterial, as this statement involves opinions and legal conclusions, rather

than material facts.  Disputed.  In his 2009 Proclamation, President Obama discussed the

Golden Rule rather than incorporating the NDP Task Force's proposed theme.  Ex. A

(2009 Proclamation).  His directive had a secular purpose: "Let us also use this day to

come together in a moment of peace and goodwill.  Our world grows smaller by the day,

and our varied beliefs can bring us together to feed the hungry and comfort the afflicted;

to make peace where there is strife; and to lift up those who have fallen on hard times."

Ex. A (2009 Proclamation).  The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

241.    The National Day of Prayer law clearly has produced countless similar violations, which the Proclamations are intended to do, according to Anne Gaylor.  (Ex. 1 at 41-42).

> Response:  Immaterial.  Disputed as to vagueness of the phrase "similar violations."
> Federal defendants further dispute this proposed finding of fact as it involves legal
> conclusions and represents the opinion of Anne Gaylor as expressed in answers to
> defense counsel's interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 41-42).

242.    Because the purpose of FFRF is state/church separation, it is destructive to its organization to have an illegal and unconstitutional law promoted year after year all across the country by public employees and politicians, notes Anne Gaylor.  (Ex. 1 at 42).

> Response:  Immaterial.  Disputed.  This statement involves only opinions and legal
> conclusions, rather than material facts.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 41-42).

243.    It has been a continual burden on FFRF just replying to complaints about the National Day of Prayer, dealing with members who are impatient and urging FFRF to do something about it.  (Ex. 1 at 43).

> Response: Disputed.  FFRF's purpose is to work for the separation of state and church
> and to educate the public on matters relating to nontheism Ex. B (Welcome to the
> Freedom From Religion Foundation Webpage).  Any expenditures and advocacy efforts

regarding the National Day of Prayer have been made pursuant to FFRF's overall

mission.  Ex. B. (Welcome to the Freedom From Religion Foundation Webpage).  See

also Ex. K (Gaylor Tr., Nov. 24, 2009, 48:2-10) (stating that the NDP lawsuit advanced

FFRF's educational mission and broader policy goals).  Furthermore, FFRF members are

encouraged to monitor and protest celebrations of the National Day of Prayer.  Ex. F

(Protest National Day of Prayer, Freethought Today, April 1990, at 16).

244.    According to Annie Laurie Gaylor, the 1952 law establishing a National Day of

Prayer has long impeded the ability of the Freedom From Religion Foundation to protect the

constitutional principle of the separation between church and state.  (Ex. 1 at 43).

Response:  Immaterial.  Disputed.  This proposed finding of fact represents the opinion of

Anne Gaylor as expressed in answers to defense counsel's interrogatories.  Pl. Ex. 1

(Interrogatory Answers, No. 9, at 41-42).  In addition, FFRF's purpose is to work for the

separation of state and church and to educate the public on matters relating to nontheism.

Ex. B. (Welcome to the Freedom From Religion Foundation Webpage).  In fact,

according to Annie Laurie Gaylor, this lawsuit advances FFRF's educational mission and

broader policy goals.  See also Ex. K (Gaylor Tr., Nov. 24, 2009, 48:2-10).

245.    When FFRF members have phoned the office, irate over the existence of the

National Day of Prayer, Annie Laurie Gaylor, as a co-founder, Board Member, longtime staff

member, and now co-president and officer, has felt her hands were tied in addressing the fallout

from the National Day of Prayer Law, given the apparent government sanction of the event.  (Ex.

1 at 43-44).

Response:  Immaterial. Undisputed to the extent "the event" refers to the issuing of

Presidential NDP Proclamations.  Disputed to the extent that "the event" refers to private or local events, including events sponsored by the NDP Task Force.  President Obama did not issue his NDP Proclamation until the afternoon of May 7, 2009.  While the NDP Task Force did not learn of the President's Proclamation until after 3:00 p.m., it was able to organize various observances throughout the country, as well as its traditional breakfast in the Cannon House Office Building on Capitol Hill.  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 174:3-175:6).  The Proclamation was issued too late in the day to be used by the Cannon House observance, NDP Task Force coordinators, or "anyone else."  Pl. Ex. 123 (Dobson Tr., Nov. 10, 2009, 175:3-6).  Moreover, plaintiffs have other recourses available, including filing lawsuits regarding local events.  See, e.g., Ex. K (Gaylor Tr., Nov. 24, 2009, 142:11-143:16).

246.    It is clear to Annie Laurie Gaylor that the 1952 law has spawned a whole host of other violations, at the national, state and local levels around the country.  These violations include the National Prayer Breakfast (put on by a private Christian fundamentalist entity, but attracting almost every member of Congress, the President and international dignitaries every February and ample media coverage).  The violations also include annual gubernatorial Proclamations.  They include NDP involvement by many mayors and county executives and other public officials, including sheriffs, who make Proclamations or host official prayer breakfasts or who allow prayer breakfasts to use their official position in the title.  In fact, there are now many state or local prayer breakfasts spawned by the National Day of Prayer.  (Ex. 1 at 44).

Response:  Immaterial.  Disputed.  Plaintiffs cannot demonstrate causation because they

refer to independent acts by third parties.  Furthermore, federal defendants dispute

plaintiffs' characterization of these actions and events as "violations" of the

Establishment Clause, as this is a legal conclusion as well as the opinion of Annie Laurie

Gaylor as expressed in answers to defense counsel's interrogatories.  Pl. Ex. 1

(Interrogatory Answers, No. 9, at 44).

247.     FFRF members have attended NDP or related prayer breakfast events to monitor

them, have written letters to public officials about such events, have sometimes picketed events

held on courthouse steps or municipal buildings, but it is impossible to get to the heart of the

problem – that it is unconstitutional and unconscionable for a public official to direct "the

religious exercise of his constituents" (in Thomas Jefferson's words).  (Ex. 1 at 44).

Response: Immaterial.  Undisputed that FFRF members have attended NDP or related

prayer breakfast events to monitor them, have written letters to public officials about such

events, and have sometimes picketed events held on courthouse steps or municipal

buildings.   Federal defendants dispute the remainder of the paragraph as it is not factual,

but instead reflects an opinion as well as a characterization of the National Day of Prayer

put forth by Anne Gaylor in answers to defense counsel's interrogatories.   Pl. Ex. 1

(Interrogatory Answers, No. 9, at 44).  Federal defendants also dispute plaintiffs' use of

the word "directed," as proclamations are entirely voluntary in nature.  A proclamation is

merely "a public and official announcement."  The Random House Dictionary of the

English Language, unabridged (2d ed. 1987).  As President Johnson recognized, the

President may not proclaim that all Americans will pray on the National Day of Prayer.

Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson

Proclamation).  President Obama celebrated the freedom that Americans have "to

worship or not to worship" as they see fit.  Ex. A (2009 Proclamation).

**V.      FFRF Members Suffer Injury As Result of National Day of Prayer.**

248.      FFRF members also are injured when the President and the Governors order them

to pray, or tell them to pray, or even simply suggest that they and all other citizens ought to pray.

(Ex. 1 at 45).

Response:  Disputed.  Plaintiffs have not been exposed to Presidential National Day of

Prayer Proclamations in a direct and unwelcome manner.  Pl. Ex. 1 (Interrogatory Answer

Nos. 4 & 5, at 6-8).  Moreover, the President does not order citizens to pray or otherwise

tell them to pray.  Lyndon B. Johnson, in signing the 1965 Proclamation, stated, "I cannot

proclaim that all Americans will pray on October 20th.  Nor would I do so even if I

could."  Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008); Ex. R (Johnson

Proclamation).  In his 2009 National Day of Prayer Proclamation, President Obama did

not use the phrase "all Americans," and explicitly recognized the right of individuals to

"worship or not worship according to the dictates of their conscience."  Ex. A (2009

Proclamation).  The Interfaith Alliance, which had urged President Obama to "open the

[National Day of Prayer] to believers of all religions, as well as those who profess no

religion," later praised him for issuing a Proclamation that was "inclusive of all

Americans."  Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P

(Interfaith Alliance Praises President's NDP Proclamation).

249.    Annie Laurie Gaylor does not believe in a god.  She does not believe that prayer can suspend the natural laws of the universe.  She considers the very concept of prayer to be absurd.  This intellectual aversion to prayer is shared by the membership of the Freedom From Religion Foundation and by rationalists, who by definition reject the idea of the supernatural. (Ex. 1 at 45).

Response:  Undisputed.

250.    When the President proclaims a National Day of Prayer, Annie Laurie Gaylor and other FFRF members feel excluded, disenfranchised, affronted, offended , and deeply insulted.

Response:  Disputed.  Plaintiffs have not been exposed to Presidential National Day of
Prayer Proclamations in a direct and unwelcome manner.  Pl. Ex. 1 (Interrogatory
Answers Nos. 4 & 5, at 6-8).  Moreover, FFRF members are encouraged to monitor and
protest NDP observances.  They choose to ignore other presidential Proclamations that
often include similar directives.  For example, on Columbus Day 2009, the President
"call[ed] upon" all Americans to "observe this day with appropriate ceremonies and
activities."  Ex. S (Columbus Day Proclamation).  Annie Laurie Gaylor admits that she
does not observe Columbus Day and is neither offended by the federal holiday nor the
President's commemoration of it in his annual Proclamation.  Ex. K (Gaylor Tr., Nov. 24,
2009, 130:3-132:25).  Some FFRF members similarly ignore the National Day of Prayer
with no consequence whatsoever.  See Gaylor Tr., Nov. 24, 2009, 102:8-15; Ex. T (FFRF
Survey Response).

251.    When the President tells "all" Americans to pray, as most of them have exhorted in their Proclamations since 1952, this admonishment disenfranchises "all" who do not pray or

believe in prayer or believe in a deity who answers prayer.  (Ex. 1 at 45).

Response:  Disputed.  Plaintiffs have not been exposed to Presidential National Day of Prayer Proclamations in a direct and unwelcome manner.  Pl. Ex. 1 (Interrogatory Answers Nos. 4-5, at 6-8).  Moreover, Presidential Proclamations often address all Americans, but are ignored or disregarded by those citizens who choose not to observe. For example, on Columbus Day 2009, the President "call[ed] upon" all Americans to "observe this day with appropriate ceremonies and activities."  Ex. S (Columbus Day Proclamation).  Annie Laurie Gaylor admits that she does not observe Columbus Day and is neither offended by the federal holiday nor the President's commemoration of it in his annual Proclamation.  Ex. K (Gaylor Tr., Nov. 24, 2009, 130:3-132:25).  Finally, the last Presidential National Day of Prayer Proclamation did not use the phrase "all Americans," and explicitly recognized the right of individuals to "worship or not worship according to the dictates of their conscience."  Ex. A (2009 Proclamation).  The Interfaith Alliance, which had urged President Obama to "open the [National Day of Prayer] to believers of all religions, as well as those who profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

252.    Annie Laurie Gaylor feels as excluded as most Christians would feel if the President or their Governor were to issue a prayer Proclamation to Allah, pointing out that Mohammed is his Prophet, or as they would feel if Vishnu were referenced, or Jehovah.  (Ex. 1 at 45).

Response:  Immaterial.  Disputed.  Plaintiffs have not been exposed to Presidential

National Day of Prayer Proclamations in a direct and unwelcome manner.  Pl. Ex. 1

(Interrogatory Answers No. 4 & 5, at 6-8).  Moreover, this proposed finding of fact is

only Annie Laurie Gaylor's opinion as expressed in an answer to defense counsel's

interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 45).

253.    No so-called civil religion or prayer to a deity can possibly include atheists,

agnostics, and other self-identified "nonreligious."  (Ex. 1 at 45).

Response:  Immaterial.  Disputed.   This statement is not grounded in fact, but rather is

merely Annie Laurie Gaylor's opinion as expressed in an answer to defense counsel's

interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 45).

254.    Annie Laurie Gaylor feels deeply embarrassed by governmental displays of faith,

religion, or worship, but when they are directed at her, the feeling of being coerced and told how

to think about religion is magnified.  (Ex. 1 at 45).

Response:  Immaterial.  Disputed.  This statement is not grounded in fact, but rather is

merely Annie Laurie Gaylor's opinion, as expressed in an answer to defense counsel's

interrogatories.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 45).  Moreover,

"governmental displays" on the National Day of Prayer are not "directed at" Annie Laurie

Gaylor.  First, plaintiffs have not been exposed to Presidential National Day of Prayer

proclamations in a direct and unwelcome manner.  Pl. Ex. 1 (Interrogatory Answers Nos.

4 & 5, at 6-8).  In addition, President Obama's 2009 Proclamation celebrated the freedom

that Americans have "to worship or not to worship" as they see fit.  Ex. A (2009

Proclamation).  He discussed the Golden Rule rather than incorporating the NDP Task

Force's proposed annual theme, Ex. A (2009 Proclamation), and asked Americans to "use this day to come together in a moment of peace and goodwill. Our world grows smaller by the day, and our varied beliefs can bring us together to feed the hungry and comfort the afflicted; to make peace where there is strife; and to lift up those who have fallen on hard times." Ex. A (2009 Proclamation).

255.    Annie Laurie Gaylor considers being told to pray, or even being encouraged to pray, by a President or Governor to be a tyrannical act, which robs her of freedom of conscience. (Ex. 1 at 46).

Response:  Immaterial.  Undisputed that this proposed finding of fact is Annie Laurie Gaylor's personal opinion, as expressed in an answer to defense counsel's interrogatories. Pl. Ex. 1 (Interrogatory Answers, No. 9, at 46).

256.    Reading the 2008 Proclamation, by President Bush, Dan Barker was told by his President that "America trusts in the abiding power of prayer and asks for the wisdom to discern God's will in times of joy and of trial.  As we observe this National Day of Prayer, we recognize our dependence on the Almighty, we thank Him for the many blessings He has bestowed upon us, and we put our country's future in His hands."  (Ex. 1 at 46).

Response:  Undisputed subject to the clarification that Plaintiffs have not been exposed to Presidential National Day of Prayer Proclamations in a direct and unwelcome manner. Pl. Ex. 1 (Interrogatory Answers, Nos. 4 & 5, at 6-8).  Federal defendants respectfully refer the Court to the text of the 2008 Proclamation for its full and complete contents.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 46); Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

257.     It appeared to Mr. Barker that President Bush was assuming that he, as an American, was also "observing," "recognizing," and "thanking God."  (Ex. 1 at 46).

Response:  Undisputed subject to the clarification that Plaintiffs have not been exposed to Presidential National Day of Prayer Proclamations in a direct and unwelcome manner. Pl. Ex. 1 (Interrogatory Answers, Nos. 4 & 5, at 6-8).  Furthermore, this statement represents Mr. Barker's perception of the 2008 Proclamation.  Federal defendants respectfully refer the Court to the text of the 2008 Proclamation for its full and complete contents.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 46); Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).

258.     Reading further, Mr. Barker was informed that President Bush asked "the citizens of our nation to give thanks . . . for God's continued guidance, comfort, and protection."  (Ex. 1 at 46).

Response: Undisputed that this was Mr. Barker's perception of the 2008 Proclamation. Federal defendants refer the Court to the text of the 2008 Proclamation for its full and complete contents.  Pl. Ex. 1 (Interrogatory Answers, No. 9, at 46); Pl. Ex. 116 (Presidential Prayer Proclamations 1952-2008).  Federal defendants reiterate that Mr. Barker was not exposed to Presidential National Day of Prayer Proclamations in a direct and unwelcome manner.  Pl. Ex. 1 (Interrogatory Answers, Nos. 4 & 5, at 6-8).

259.     Mr. Barker is a citizen of the United States, but he does not believe in "God" or any god, so he felt excluded by that wording and concluded that President Bush considered only believers to be part of "we, the people."  (Ex. 1 at 46-47).

Response:  Undisputed that this proposed finding of fact is Mr. Barker's personal

opinion, as expressed in an answer to defense counsel's interrogatories.  Pl. Ex. 1

(Interrogatory Answers No. 9, at 46-47).

260.     Similar to President Bush the year before, Mr. Barker read that President Obama

called upon "Americans to pray in thanksgiving for our freedoms and blessings and to ask for

God's continued guidance, grace, and protection for this land that we love."  (Ex. 1 at 47).

Response:  Undisputed subject to the clarification that Plaintiffs have not been exposed to

Presidential National Day of Prayer Proclamations in a direct and unwelcome manner.

Pl. Ex. 1 (Interrogatory Answers, Nos. 4 & 5, at 6-8).  Federal defendants respectfully

refer the Court to the text of the 2009 Proclamation for its full and complete contents.  Pl.

Ex. 1 (Interrogatory Answers, No. 9, at 47); Ex. A (2009 Proclamation).

261.     Because Mr. Barker does not believe in God, or pray, he wondered how his

president could as him, an American, to "ask for God's guidance."  Mr. Barker felt excluded, like

a second-class American.  (Ex. 1 at 47).

Response:  Undisputed subject to the clarification that Plaintiffs have not been exposed to

Presidential National Day of Prayer Proclamations in a direct and unwelcome manner.

Pl. Ex. 1 (Interrogatory Answers, Nos. 4 & 5, at 6-8).  Moreover, this proposed finding of

fact is Mr. Barker's personal opinion.  In fact, President Obama expressly included

Americans who do not believe in God in his Proclamation when he stated that Americans

are free to "worship or not to worship according to the dictates of their conscience."  Ex.

A (2009 Proclamation).  The Interfaith Alliance, which had urged President Obama to

"open the [National Day of Prayer] to believers of all religions, as well as those who

93

profess no religion," later praised him for issuing a Proclamation that was "inclusive of all Americans." Ex. O (Letter to President Barack Obama from Interfaith Alliance); Ex. P (Interfaith Alliance Praises President's NDP Proclamation).

**W.    FFRF Responds To Pervasive National Day of Prayer Observances.**

262.    The FFRF office has received countless complaints over the years by members, and members of the public, critical of the National Day of Prayer, at the federal, state, or local level.  (Ex. 1 at 47).

Response:  Undisputed.

263.    FFRF has had several major campaigns to encourage public officials to balance NDP Proclamations and religious Proclamations with secular Proclamations.  They are identified at FFRF's website:  http://ffrf.org/timely/Proclamations.  (Ex. 1 at 48).

Response:  Undisputed.

264.    To balance or respond to the National Day of Prayer and its related spawns, FFRF and its members have asked governors, mayors and county executives to issue "Celebrate State/Church Separation Month,"  "Freethought Week," and Give Thanks for State/Church Separation Week."  (Ex. 1 at 48).

Response:  Undisputed.

265.    FFRF has also suggested a "National Day of Reason" for the first Thursday in May (2005 news release).  (Ex. 1 at 48).

Response:  Undisputed.

266.    FFRF, in the late 1980s, also sent letters to all mayors of cities of 30,000 or more, asking them not to issue religious Proclamations and suggesting secular alternatives.  (Ex. 1 at

94

48).

Response:  Undisputed.

267.    In 2005, the Freedom from Religion Foundation wrote to each of the State governors complaining about the public observance of the National Day of Prayer and requesting issuance of secular Proclamations.  (Ex. 98).

Response:  Undisputed.

268.    FFRF has been actively involved in opposing the establishment of religion by government, including long opposition to the National Day of Prayer.  (Exs. 98-114).

Response:  Undisputed.

269.    In 2008, FFRF vigorously opposed an NDP Prayer Breakfast hosted by the Sheriff of Burnett County in Wisconsin, to which observance the Sheriff invited participants on his official letterhead.  (Ex. 103).

Response:  Undisputed subject to the clarification that plaintiffs have not sued the Burnett

County Sheriff.  Ex. K (Gaylor Tr., Nov. 24, 2009, 85:24-86:2).

270.    The Burnett County NDP observance featured newly-elected Wisconsin Supreme Court Justice Michael  Gableman, who espoused a creationist philosophy and the need for public prayer.  (Ex. 103 at 3-4).

Response:  Immaterial.  Undisputed.

**X.    The Dedicated National Day of Prayer Detrimentally Affects FFRF Goal Achievement.**

271.    Media coverage of local governmental observances of the National Day of Prayer have become pervasive and they have been opposed by FFRF.  (Exs. 103-105).

Response: Immaterial.  Disputed as to the vagueness of the term "pervasive."  Federal

defendants do not dispute that the media does cover National Day of Prayer observances,

and that the coverage has been opposed by FFRF.

272.    The exposure to, awareness of, and reactions of FFRF members to the National

Day of Prayer are reported in many of their survey comments.  (Ex. 126).

Response:  Undisputed subject to the clarification that the survey was sent to FFRF

members to establish standing for this lawsuit, and that survey respondents were not

provided with an opportunity to indicate that they were exposed to Presidential National

Day of Prayer Proclamations in a direct and unwelcome manner.  Ex. K (Gaylor Tr., Nov.

24, 2009,106:3-108:5; 109:23-110:8); Ex. Q (FFRF Survey Summary).

273.    The Freedom From Religion Foundation is an educational group working for the

separation of church and state; its purposes are to promote the constitutional principle of

separation of church and state and to educate the public on matters of nontheism.  (Ex. 112 at 3)

(Ex. 122).

Response:  Undisputed.

274.  FFRF tries to fulfill its purpose by acting on violations of separation of church and

state on behalf of members and the public, including by filing successful law suits that have

ended a variety of First Amendment violations.  (Ex. 113 at 1) (Ex. 122).

Response:  Undisputed that one of FFRF's functions is to file lawsuits to correct what the

organization perceives to be violations of the Establishment Clause.  Ex. B (Welcome to

the Freedom From Religion Foundation webpage).

275.    FFRF also publishes the only freethought newspaper in the United States, Free

Thought Today; sponsors annual high school and college Free Thought essay competitions with cash awards; conducts annual national conventions; promotes freedom from religion with educational products, bumper stickers, literature, etc.; publishes useful free thought books; provides speakers for events in debates; and has established a free thought book collection at the University of Wisconsin Memorial Library.  (Ex. 113 at 1 and Ex. 122).

Response:  Undisputed.

276.     FFRF's challenge to the National Day of Prayer in this court action is merely referenced as one of many activities of the Foundation in its 2008 Year in Review.  (Ex. 114).

Response: Undisputed.

277.     FFRF's opposition to the National Day of Prayer via the pending litigation does not represent the Foundation's first public opposition, which has been a constant in FFRF actions; FFRF has publicly expressed its objection to the National Day of Prayer for many years. (Ex. 103-111).

Response: Undisputed.

**Y.     FFRF Members Are Widely Exposed To And Affected By National Day of Prayer**

278.     FFRF recently surveyed its members regarding their exposure to and reaction to the National Day of Prayer.  (Ex. 124)**.**

Response:  Undisputed subject to the clarification that the survey did not provide respondents with an opportunity to show that they were exposed to Presidential NDP Proclamations in a direct and unwelcome manner.  Ex. K (Gaylor Tr., Nov. 24, 2009, 109:23-110:8); Ex. Q (FFRF Survey Summary).

97

279.    Nearly 1,500 respondents indicated they were exposed to media coverage of local or National Day of Prayer events and nearly 600 respondents reported exposure via participation by local or state officials in National Day of Prayer events.  (Ex. 125).

Response:  Undisputed subject to the clarification that FFRF has 14,000 members, meaning that less than a quarter of the people who were sent the survey responded to it. Ex. K (Gaylor Tr., Nov. 24, 2009, 103:7-13).  Moreover, the survey did not provide respondents with an opportunity to show that they were exposed to Presidential NDP Proclamations in a direct and unwelcome manner.  Ex. K (Gaylor Tr., Nov. 24, 2009, 109:23-110:8).

280.  Over 1,500 respondents also reported that the message conveyed by national Day of Prayer Proclamations constitutes religious endorsement and that as non-believers they are outsiders.  (Ex. 125).

Response:  Undisputed subject to the clarification that FFRF has 14,000 members, meaning that less than a quarter of the people who were sent the survey responded to it. Ex. K (Gaylor Tr., Nov. 24, 2009, 103:7-13).  Moreover, the survey did not provide respondents with an opportunity to show that they were exposed to Presidential NDP Proclamations in a direct and unwelcome manner.  Ex. K (Gaylor Tr., Nov. 24, 2009, 109:23-110:8).

281.    The exposure to, awareness of, and reactions of FFRF members to the National Day of Prayer are reported in many of their survey comments.  (Ex. 126).

Response:  Undisputed subject to the clarification that FFRF has 14,000 members, meaning that less than a quarter of the people who were sent the survey responded to it.

98

Ex. K (Gaylor Tr., Nov. 24, 2009, 103:7-13).  Moreover, the survey did not provide

respondents with an opportunity to show that they were exposed to Presidential NDP

Proclamations in a direct and unwelcome manner.  Ex. K (Gaylor Tr., Nov. 24, 2009,

109:23-110:8).

282.    FFRF raises national awareness of the need to keep state and church separate,

including by generating "significant publicity through its legal and educational challenges, free

thought activities and the accomplishments of individual members."  (Ex. 112 at 5).

Response:  Undisputed.

283.    Rep. J. Randy Forbs, R-VA, head of the Congressional Prayer Caucus, describes

the National Day of Prayer as a "monumental religious event."  (Ex. 127 at 2).

Response:  Immaterial.  Undisputed.

284.    FFRF members, including the individual plaintiffs, and also other members, are

exposed to, and have opposed, the National Day of Prayer activities, including Linda Allewalt, in

Kentucky.  (Allewalt Declaration).  Ms. Allewalt specifically has objected to Kentucky Governor

Beshear's Proclamations which offend her and make her feel like an outsider as a result of her

non-belief.  (Allewalt Declaration).

Response: Disputed.  Ms. Allewalt did not demonstrate that she was exposed to

Presidential NDP Proclamations (or any other proclamations or activities) in a direct and

unwelcome manner.  The federal defendants respectfully refer the Court to the Allewalt

Declaration for its full and complete contents.  (Allewalt Declaration, Dkt. No. 101,

12/10/2009).  Moreover, FFRF's survey of its members did not provide those members

with an opportunity to indicate that they were exposed to Presidential National Day of

Prayer Proclamations in a direct and unwelcome manner.  Ex. K (Gaylor Tr., Nov. 24,

2009,106:3-108:5; 109:23-110:8); Ex. Q (FFRF Survey Summary).  The federal

defendants refer to their proposed findings of fact, as well as their responses to plaintiffs'

proposed findings of fact, regarding the named plaintiffs. Undisputed that Ms. Allewalt

has objected to Kentucky Governor Beshear's proclamations and that Ms. Allewalt

opposes the National Day of Prayer.

Dated: January 21, 2010                              Respectfully submitted,

                                                     TONY WEST
                                                     Assistant Attorney General

                                                     JOHN R. GRIFFITHS
                                                     Assistant Branch Director

                                                       /s/ Brad P. Rosenberg
                                                     BRAD P. ROSENBERG (DC Bar 467513)
                                                     Trial Attorney
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     Tel: (202) 514-3374
                                                     Fax: (202) 616-8460
                                                     brad.rosenberg@usdoj.gov

                                                     Mailing Address:
                                                     Post Office Box 883
                                                     Washington, D.C.  20044

                                                     Courier Address:
                                                     20 Massachusetts Ave., N.W.
                                                     Washington, D.C. 20001

                                                     COUNSEL FOR DEFENDANTS
                                                     PRESIDENT BARACK OBAMA AND
                                                     WHITE HOUSE PRESS SECRETARY
                                                     ROBERT L. GIBBS